# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

```
FILED

Mar 18 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ JenniferS          DEPUTY
```

Civil Action No.    18-cv-02290-GPC-KSC

JASON BROOKS

Plaintiff,

v.

TARSADIA HOTELS,

5ᵗʰ ROCK, LLC,

MKP ONE, LLC,

GASLAMP HOLDING, LLC,

TUSHAR PATEL,

B. U. PATEL,

GREGORY CASSERLY,

PLAYGROUND DESTINATION PROPERTIES, INC.,

DOES 1-50,

Defendants.


## FIRST AMENDED VERIFIED COMPLAINT FOR MONEY DAMAGES

## JURY TRIAL DEMANDED

## PARTIES

1.      Plaintiff Jason Brooks is incarcerated in the Colorado Department of Corrections. He is currently housed at the Sterling Correctional Facility, P.O. Box 6000, Sterling, Colorado 81215. His DOC # is 150014.

2.      Defendant Tarsadia Hotels is a California corporation with its headquarters in Newport Beach, California and the ultimate parent corporation of other corporate entities that are Developer Defendants. Upon information and belief, in 2011 Tarsadia Hotels apparently split into three additional entities; Tarsadia Investments, Evolution Hospitality, and T2 Development. Tarsadia Hotels (and of each of these entities, which will be named as "Tarsadia") are located at 520 Newport Center Drive, Newport Beach, CA 92660. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

3.      Defendant 5th Rock, LLC is a Delaware limited liability company, the seller of condominium-hotel Units in the hard Rock & Condominiums project in San Diego, California, the owner of the Hard Rock Hotel San Diego, and is headquartered at 620 Newport Center Drive, Newport Beach, CA 92660. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

4.      Defendant MKP One, LLC is a California limited liability company, the managing member of 5th Rock, LLC, and is headquartered at 620 Newport Center Drive, Newport Beach, CA 92660. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

5.      Defendant Gaslamp Holding, LLC is a California limited liability company, owns the land underlying the Hard Rock Hotel & Condominium project in San Diego and is headquartered at 620 Newport Center Drive, Newport Beach, CA 92660. This agents of service

of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

6.      Defendant Tushar Patel was Chairman of Tarsadia Hotels and, on information and belief, now runs Tarsadia Investments and is a resident of the State of California. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

7.      Defendant B. U. Patel is Vice-Chairman and founder of Tarsadia Hotels and, on information and belief, is a resident of the State of California. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

8.      Defendant Gregory Casserly was President of Tarsadia Hotels and, on information and belief, is now President of Tarsadia Investments and a resident of the State of California. This agents of service of process is Paracorp Incorporated, located at 2804 Gateway Oaks Drive #100, Sacramento, CA 95833.

9.      Defendant Playground Destination Properties, Inc. is a Washington corporation and a real estate brokerage licensed by the DRE. The address of this defendant is currently unknown to the Plaintiff. This agents of service of process is CSC Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

10.      Upon information and belief, Tarsadia is the majority and dominating owner of defendants 5th Rock, MKP and Gaslamp. Defendant Tarsadia is liable for the acts of these defendants alleged in this complain as their alter ego. Recognition of the privilege of separate corporate existence would promote injustice because defendant Tarsadia, upon information and belief, in bad faith, dominated, controlled, and otherwise failed to adequately capitalize these defendants.

11.     The true names and capacities of the Defendant, DOES 1 through 50, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sue said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believe, and therefore allege, that each of the DOE Defendants is, in some manner, responsible for the events and happening herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged. All references to "Defendants" in the Complaint include DOE Defendants.

12.     Plaintiff is informed and believes, and on that basis allege, that each Defendant named in this action, including each of the DOE defendants, was the agent, ostensible agent, aider and abettor, co-conspirator, partner, joint venture, representative and/or associate of each of the other Defendants, and was at all times relevant herein acting within the course and scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venture, representative and/or associate, and with knowledge, authorization, consent, permission, and/or ratification of the other Defendant. Upon information and belief, all actions of each Defendant alleged herein were ratified and approved by the officers and/or managing agents of each other Defendant, whether DOE or otherwise.

## JURISDICTION

13.     Plaintiff inadvertently filed this lawsuit in the District of Colorado on December 29, 2017. Despite over 50 motions and rulings being filed and made in the case and the United States Marshalls serving Tarsadia Defendants at the wrong address, the District of Colorado dismissed the lawsuit against Defendant Playground Destination Properties on the basis of

improper venue without prejudice on September 14, 2018. See *Brooks v. Tarsadia Hotels*, 2018
U.S. Dist. LEXIS 157102 (D.Colo).

## STATUTE OF LIMITATIONS

14.     Plaintiff was a putative class member who opted out of a class action settlement
in order to file an independent action in this case. See *Beaver v. Tarsadia Hotels*, 2017 U.S. Dist.
LEXIS 160214, *46 (S.D. Cal. 2017); therefore, all claims raised in this action should "relate
back" to the filing of the original suit in that case, which was May 18, 2011. See *Beaver v.
Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1303 (S.D. Cal. 2014)("[t]he Complaint in this case was
filed on May 18, 2011 in San Diego Superior Court"); *see also*, Fed. R. Civ. P. Rule 15(c)( a new
claim or defense relates back if it "arose out of the conduct, transaction, or occurrence se out-or
attempted to be set out—in the original pleading").

15.     The time it took Plaintiff to file this suit after opting out of the class action should
also be equitably tolled. "This tolling rule has also been extended to include putative class
members who later seek to file independent actions." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d
524, 535-36 (9th Cir. 2011)(*citing Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54
(1983). The Supreme Court "has allowed equitable tolling in situations where the claimant has
actively pursued his judicial remedies by filing a defective pleading during the statutory period."
*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)(citing *Burnett v. New York Central R.
Co.*, 380 U.S. 424, 13 L. Ed. 2d 941, 85 S. Ct. 1050 (1965) (plaintiff timely filed complaint in
wrong court); *Herb v. Pitcairn*, 325 U.S. 77, 89 L. Ed. 1483, 65 S. Ct. 954 (1945) (same);
*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974)
(plaintiff's timely filing of a defective class action tolled the limitations period as to the

individual claims of purported class members). Precluding Plaintiff from raising all claims listed

in this complaint without relating them back to the original complaint pursuant to Rule 15(c)

would otherwise deprive Plaintiff of a pre-existing cause of action. *See also Beaver v. Tarsadia*,

816 F.3d 1170, 1188 (9th Cir. 2016). Furthermore, since this case will be determined under

California law, Cal. Civ. Proc. Code § 352.1 provides for the tolling of a statute of limitations for

a period of up to two years based on the disability of imprisonment. *See Jones v. Blanas*, 393

F.3d 918, 927-28 (9th Cir. 2004). Congress has also determined that gaps in federal claims should

be filled by state law, as long as that law is not inconsistent with federal law. *See Hardin v.*

*Straub*, 490 U.S. 536 (1989). This two year reprieve from the disability of imprisonment should

effectively force the Court to consider the effective filing of all claims Plaintiff has raised—at the

latest—to being May 24, 2009, the date Plaintiff has remained incarcerated.


## BACKGROUND OF THE CASE

16.     In or about 2005, the Developer Defendants, through 5th Rock, began to develop a

residential condominium call the "Hard Rock Hotel & Condominium" project (the "Hard

Rock"), located at 205 Fifth Avenue in the City of San Diego, California. This project was to

consist of 420 Units, including 244 studios, 159 Hard Rock Suites, and 17 Rock Star Suites.

Defendants and each of them, by and through the Internet, marketing material, brochures, and

verbal statements, and utilizing the mails, telephone and other means, marketed Units at the Hard

Rock through instruments of interstate commerce.

17.     This lawsuit involves the Plaintiff excluding himself from a class action

settlement on August 24, 2017, which involved the purchase and sale of a condominium-hotel

Unit (Number 1042) at the Hard Rock Hotel & Condominiums project. In connection with these

sales, Defendants violated the Interstate Land Sales Full Disclosures Act, 15 U.S.C. §§ 1701 *et seq.* ("ILSA"), California Corporations Code §§ 25401, 25501, 25504.1 ("CCC"), Rule 10b of the 1934 Securities Exchange Act ("Rule 10b"), and California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. ("UCL") by failing to disclose and intentionally concealing that buyers had an absolute right to rescind their purchase contracts within two years of the date of signing under ILSA and marketing materials containing misstatements that furthered Developer Defendants scheme.

18.     On March 10, 2016, the Ninth Circuit Court of Appeals affirmed the California District Courts granting of summary judgment to Plaintiffs on their UCL claim, determining that, "ILSA's disclosure requirements apply to the condominium units purchased by Plaintiffs. Since Defendants concede that they have failed to comply with those disclosure requirements, the district court properly granted summary judgment to Plaintiffs on their UCL claim." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1188 (9th Cir. March 10, 2016); *U.S. Supreme Court certiorari denied by Tarsadia Hotels v. Beaver*, 2016 U.S. LEXIS 4763 (U.S., Oct. 3, 2016).

19.     Due to the significant injury that has resulted to Plaintiff as a direct result of the Defendant's actions, Brooks was not willing to settle as a member of the class, which gives rise to this action.

20.     This Complaint brings causes of action against the following "developers," and/or agents thereof, within the meaning of the ILSA, as well as persons whom violated CCC § 25401: 5th Rock, LLC (5th Rock" or "Seller"), the Seller identified in the standardized purchase contracts signed by Brooks; MKP One, LLC ("MKP"), the managing member of the 5th Rock and the party that signed these contracts on behalf of 5th Rock; Tarsadia Hotels ("Tarsadia"), the parent corporation of the 5th Rock and MKP; three principals of Tarsadia (Tushar Patel, its Chairman;

B.U. Patel, its Vice Chairman and founder; and Gregory Casserly, its President); and Gaslamp

Holdings, LLC ("Gaslamp"), an affiliate of 5th Rock that owns the land underlying the Hard

Rock (collectively "Developer Defendants"). Playground Destination Properties, Inc.

("Playground"), the real estate broker for the Hard Rock, acted as an "agent" of the Developer

Defendants as that term is defined under ILSA.

      21.     Plaintiff does not know the specific date as to when he signed his purchase

contract, however, upon information and belief, beginning in some time after May 2006, Plaintiff

and his co-purchaser, Brian Thielen, and Defendant 5th Rock executed a pre-printed, standardized

Purchase Contract and Escrow Instructions ("Contract") prepared by Defendants for the purchase

of unit 1042 at the Hard Rock. Plaintiff had been induced to purchase the property because he

understood that Developer Defendants would ultimately be managing the property through the

Rental Management Agreement ("RMA").

      22.     While Plaintiff read the disclaimers explaining the purchase of the condo was not

an investment, the economic and practical realities that formed the transaction unequivocally

establishes that the transaction was an investment and constituted the sale of a security.

Defendants cannot circumvent anti-fraud statutes by requiring purchasers to sign disclaimers that

supposedly abrogate buyers protected rights.

      23.     Plaintiff was required to execute three writings that formed the core of the

agreement with Defendants: (1) the Contract, (2) Unit Maintenance and Operating Agreement

("OA"), and (3) the RMA. Playground and Developer Defendants, however, misrepresented that

Defendant Tarsadia's RMA was not mandatory and not a condition of ownership, when in reality,

the RMA was a mandatory condition of ownership, as was the OA.

      24.     Developer Defendants had Playground prepare a document entitled "Tarsadia's

Optional Rental Management Program FAQ" ("FAQ"). Defendants represented that investors were not required to participate in Tarsadia's RMA and that the decision was entirely up to investors. This representation was false and untrue in that purchasers were mandated to participate in the RMA as a matter of fact.

25.     In addition to making these false representations, Defendants intentionally separated the OA and RMA from the sales Contract and offered them as independent documents. The Defendants used this deceptive technique to further conceal the fact that the sale of the property constituted a security, as Defendant were intentionally attempting to subvert federal and state anti-fraud statutes. The offer of the Contract, the OA, and the RMA were in essence a single package, as they could not be separated from one another under the requirement of the agreements themselves. These three writings formed a single contract and will be known as the "Sales Agreements" and collectively induced Plaintiff into buying the condominium.

26.     Defendant furthered there scheme by having Playground create closing materials that included further misstatements which threatened Plaintiff with the loss of his deposit if he did not close on time ("Closing Notice").

27.     Plaintiff reluctantly closed escrow in the late summer or fall of 2007. Due to Plaintiffs incarceration, he does not have specific dates of these happenings, which will be uncovered through discovery; however, a copy of the standardized Contract that was signed by Brooks can be found at ECF Doc. 17-3, pgs. 35-49 and is incorporated herein by reference. Upon information and belief, this is the same form Contract entered into by all other purchasers of the Hard Rock Units.

28.     This case arises as a result of Defendant's failure to comply with their disclosure obligation under ILSA, giving rise to Plaintiffs' rescission rights. Further, Defendants

affirmatively mislead Plaintiff about the rescission rights he possessed and intentionally failed to disclose that they were selling a security to skirt numerous federal and state anti-fraud statutes.

### VIOLATIONS OF CALIFORNIA CORPORATIONS CODE §§ 25401, 25501, AND RULE 10b OFTHE 1934 SECURITIES EXCHANGE ACT

29.     Defendants 5th Rock, LLC had filed for an exemption with the California Department of Corporations ("DOC"), but when Defendants made a public offering of the Contracts, they did not complete the exemption filing with the DOC—another fact that was concealed.

30.     The Defendants did not want the Sales Agreements to be reviewed by federal and state investment regulators. The Defendants knew the Securities Exchange Commission ("SEC") Corporate Finance Division would review, from the point of view of investors, the investment features of the Sales Agreement to determine if the investor agreements contained material misrepresentations or omitted facts needed to make those stated not misleading.

31.     Upon information and belief, the Defendants also believed the DOC would not issue a permit for development of the Hard Rock if the DOC determined the Sales Agreements were not fair, just, and equitable. In order to avoid this scrutiny of the Sales Agreement, Defendants elected to disregard their legal duties to submit the Sales Agreement to the federal and state investment regulators.

32.     The Defendants imputed the risk of their own investment in the project through the Sales Agreement, which then placed all the risk upon the buyers of the condos. Whether investors made money on their condo purchase under the Sales Agreement was dependent on the managerial efforts of the Defendants.

33.     Because Defendants did not allow this investment to be reviewed by the federal

and state investment regulator, Defendants were able to avoid detailed accounting transparency with their investors and were emboldened to make material misstatements and threats in violation of federal and state investor protections in order to lessen their own risk in the project. The Sales Agreements were used as artifices of deception, devised to be used by Defendants to shift all substantial risk to the buyers, such as Plaintiff.

34.     To address the issues of priority concerning which hotels rooms would be rented first, Defendants represented to Plaintiff that the hotel management system:

> "…distributes reservation within each suite category on a rotational basis, taking into consideration Owner use, complimentary occupancy, guest special requests and maintenance down-time amongst other variables with the primary goal being to rent all suites equitably."

Despite Defendants' representations that they would position their hotel guests into a consistent "rotational" system, there was no feasible way to live up to this representation and this false claim, in part, induced Plaintiff to purchase the condominium.

35.     In order for Defendants to situate their hotel guests in any kind of consistent "rotational" system, Defendants would have been required to rent the less desirable rooms to guests even when more desirable (e.g. ocean view) rooms were available. Instead of rotating the rental of the suites on a constant rotational basis, Defendants, under control of Patel Defendants and Casserly, rented those rooms that generated the most income to the Hard Rock. Defendants had no reliable system to ensure that Defendants would "rent all suites equitably."

36.     Defendant's legal duty was to register and qualify the Sales Agreements—a process that would have caused Defendants to disclose the material information required by those investor protection agencies explaining how Defendants organized the investment to

achieve its objectives.

37.     Had Defendants complied with their legal duties, they would have been required to file a registration statement with the SEC describing in detail the Hard Rock Sales Agreements. The Hard Rock Registration Statement would have had two principal parts: Part I is the prospectus, the legal offering or "selling" document. In the prospectus, Defendants would have been required, as the issuers of the Sales Agreements, to describe the important facts about the Defendants' business operation, financial condition, and management. Defendants would have also been required to provide the Prospectus to Plaintiff.

38.     The SEC Division of Corporation Finance's mission would have reviewed the Hard Rock's registration statement information in order to make an informed investment decision to buy the property. SEC staff would have examined the registration statement for compliance with disclosure requirements. Those parts of the filing that appeared incomplete or inaccurate would have been identified in a letter to Defendants from SEC staff. Defendants would have been required to file a correcting or clarifying amendment to the Hard Rock Registration Statement.

39.     During this process, Defendants would have been required to disclose the essential financial information and mode of operations. Most importantly, Defendants could not have demanded a "deposit" that they claimed was non-refundable under the guise of a real estate transaction. Additionally, Playground could not have made material misstatements in the Closings Notices threatening buyers with loss of this deposit if they did not close.

40.     Defendant failed to comply with their legal duty to register the Sales Agreement with the SEC as described above. Similarly, Defendants neglected to qualify the investment with the DOC.

41.     The Sales Agreement constituted the sale of a security in an issuer transaction that was never qualified under the California Corporations Code § 25501 ("CCC"). Defendant 5th Rock admitted it was an issuer and that it was selling securities, consisting of membership interest in an October 28, 2004 Notice of Transaction that was filed with the California Commissioner of Corporations.

42.     Plaintiffs purchase of his unit was required to be, but never was, qualified under security investment protection laws in California and under federal law. Under CCC § 25501, Defendants violated CCC § 25401 and Rule 10b of the 1934 Securities Exchange Act by means of untruthful information and thus are liable to Plaintiff.

## VIOLATION OF THE INTERSTATE LAND SALES FULL DISCLOSURE ACT

43.     This case also arises out of Defendants failure to comply with their disclosure obligation under ILSA, giving Plaintiff's rescission rights under the statute. Further, Defendants affirmatively mislead Plaintiff about the rescission rights he possessed and went so far as having Defendant Playground develop marketing materials that threated taking Plaintiff's $50,000 deposit if he did not close on his unit in order to further Developer Defendants scheme.

44.     ILSA was enacted by Congress in 1968 to protect consumers from fraud and abuse in the sale of subdivided lots, including condominium units, marketed in interstate commerce using a common promotional scheme. ILSA provides broad protections to purchasers of condominium units such as those the Defendant sold. The protections are analogous to those provided under federal securities law and obligate developers and their agents to comply with registration and disclosure requirements prescribed by ILSA.

45.     Developers and their agents are required to comply with ILSA unless they fall

under an ILSA exemption. As discussed below, no exemptions apply to the Hard Rock. ILSA prohibits developers of non-exempt projects and their agents from making false or misleading statements of material fact or omitting material facts from sales agreements and other disclosure documents required under this statutory scheme. If developers and their agents fail to make the required disclosures, or they make false or misleading statement, ILSA provides purchasers with automatic rescission rights, equitable relief and/or damages.

46.    At its most basic level, ILSA requires a developer to register a project governed by the ILSA with the U.S. Department of housing and Urban Development ("HUD") and to provide buyers with an ILSA property report that discloses material facts regarding the sales transaction.[1] Where a developer chooses not to obtain an ILSA property report to be distributed to buyers before they sign their purchase contracts (or in the alternative, in California, where a developer fails to provide buyers with an ILSA-compliant public report issued by the DRE), ILSA imposes an absolute two-year right to rescind from the date of contract for the benefit of buyers where this right to rescind must be disclosed in the purchase contract. 15 U.S.C. § 1703(c).

47.    Here, Defendants failed to obtain an ILSA property report from HUD and purposefully chose to obtain a public report from the DRE that was not ILSA-compliant. Defendants also failed to disclose the resulting two-year rescission right in the Contract, which only disclose a three-day rescission right from date of signing. In other words, Defendants made

---

[1] On July 21, 2011, the newly formed Consumer Financial Protection Bureau took over enforcement of ILSA from HUD. Pub.L. 111-203, Section 1061 (b) (7); however, at all times relevant to the events underlying this dispute, California was a HUD-certified state. Pursuant to HUD regulation 24 C.F.R. § 1710.506(c), when a developer obtained a Final Subdivision Public Report from the California Department of Real Estate ("DRE") and said report was filed with HUD pursuant to the certification program, it would "automatically be effective as the Federal Statement of Record and Property Report..."

a calculated business decision to intentionally omit their disclosure obligations under ILSA in order to deny buyers certain rights otherwise imposed by ILSA and securities fraud statutes, as alleged herein.

48.     Additionally, as described herein, under 15 U.S.C. § 1703(d)(2) of ILSA, a developer is required to include in the purchase contract written notice of a 20-day opportunity for the buyer to remedy default or breach of contract. Should the developer omit this notice provision, then a buyer is afforded an absolute, two-year right to rescind his purchase agreement from the date he signed it. Here, Developer Defendants chose not to give Plaintiff any notice of an opportunity to remedy default or breach in the contract. As a result, Plaintiff was entitled to an automatic, two-year right to rescind the Contract.

49.     Prior to signing the Contract, Plaintiff received the "Final Subdivision Public Report, File No. 120249LA-F00" concerning the Hard Rock (the "Public Report"), which was issued by the DRE on April 4, 2006 and can be found at ECF Doc. 17-3, pgs. 50-65 and incorporated herein by reference. This report did not disclose buyers' federal rescission right imposed by ILSA and otherwise failed to include notice of any rescission right whatsoever.

50.     In failing to comply with their disclosure obligations under ILSA, and in concealing the resulting two-year rescission right that arises under ILSA, Defendants engaged in a scheme to defraud Plaintiff in violation of § 1703(a)(2)(A) of ILSA. Alternatively, Defendants obtained money from the Plaintiff by means of omitting from the Contract and the Public Report this two-year rescission right, which information was necessary to make the representations concerning rescission made in the Contract, Public Report and other communications not misleading, in violation of § 1703(a)(2)(B) of ILSA. Defendants otherwise engaged in a practice or course of business that operated as a fraud upon Plaintiff in violation of § 1703(a) (2) (C) of

ILSA.

51.     By failing to disclose this two-year rescission right and actively concealing it, Defendants' conduct constituted continuing violations of 15 U.S.C.  §§ 1703(a) (2) (A)-(C) through the expiration of their duty to disclose (May 18, 2008 at the earliest) because Defendants had an affirmative, continuing obligation to disclose this rescission right.

52.     Plaintiff had no reason to suspect that the representation made by Defendants in the Sales Agreements, Public Report, Closing Notice, FAQ, and other communications concerning his recession rights were false, misleading, or intending to mislead.

53.     In taking these action, Defendants denied Plaintiff his legal right to rescind, which resulted in Plaintiff involuntarily quit-claimed the deed of the property to his co-purchaser, Brian Theilen, in January 2008.

54.     Plaintiff was eventually sent to prison, was defrauded his interest in the property, and has remained incarcerated since May, 24, 2009. In June 2017, Plaintiff was notified that he was a member of a class action lawsuit involving these exact claims and was unaware of any violations alleged herein until that time. Summary Judgment was affirmed on appeal. _Beaver v. Arcadia Hotels_, 816 F.3d 1170 (9th Cir. 2016), *US Supreme Court certiorari denied by* _Arcadia Hotels v. Beaver_, 2016 U.S. LEXIS 4763 (U.S., Oct. 3, 2016). Plaintiff timely opted-out of the class action settlement. *See* ECF Doc. 17-3, pgs. 66-68.

55.     As a result of the Defendants' violation of ILSA, Plaintiffs is entitled to equitable rescission of his Contract and/or damages under § 1790 of ILSA and comparable provisions of California law.

A.     **Sales of subdivided parcels of land are governed by state and federal law.**

56.     The development at the Hard Rock was regulated by ILSA. 15 U.S.C. §§ 1701 *et seq*. ILSA applies to the sale of condo units and at all times relevant to this action was administered by HUD. ILSA has three basic components. First, it includes anti-fraud provisions which are contained in 15 U.S.C. § 1703(a)(2); second, it requires certain consumer-friendly disclosures in the purchase and sale agreements, as set forth in 15 U.S.C. §§ 1703(d)(1)-(3); and third, it requires the developer to register property with HUD and to give detailed Property Report to a buyer before a contract is signed, as set forth in 15 U.S.C. §§ 1703(a)(1), 1704-1707.

57.     Pursuant to 15 U.S.C. § 1701(5), a "developer" is "any person[2] who, directly or indirectly, sells or leases, or offers to sell or lease, or advertise for sale or lease any lots in a subdivision." ILSA defines "agent" as "any person who represents, or acts for or on behalf of, developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consist solely of rendering legal services[.]"15 U.S.C. § 1701(6). Pursuant to 15 U.S.C. § 1712, compliance with ILSA cannot be waived by contract.

B.     **California developers register projects with HUD using a DRE Public Report.**

58.     California is one of four states certified under ILSA by HUD. Under this certification program, a developer registers a California property with HUD by submitting to HUD the "Final Subdivision Public Report" issued by the DRE in lieu of a separate registration. Under the agreement between HUD and the DRE, an ILSA-compliant public report must include

---

[2] ILSA defines "person" as "an individual, or an unincorporated organization, partnership, association, corporation, trust or estate [.]"15 U.S.C. §§ 1701(2).

the buyers' federal rescission rights imposed by ILSA. When a developer in California obtains a California Final Subdivision Public Report *and* said report is filed with HUD pursuant to the certification program, it "will automatically be effective as the Federal Statement of Record and [ILSA] Property Report..." 24 C.F.R. § 1710.506(c). Contrariwise, if a Final Subdivision Report obtained from the DRE is not file with the HUD (and no separate HUD Property Report is obtained), then there is no Federal Statement of Record or Federal Property Report in effect.

59.     Although a California Final Subdivision Report properly filed with HUD under the certification program eliminates the need for developers to file a full Statement of Record and Property Report with HUD, the developers is otherwise required to fully comply with the requirements of ILSA. *See* 24 C.F.R. § 1710.500(a). Federal regulations provide that HUD has the same authority over California developers who follow the streamlined certification program as it has over those who file directly with HUD. 24 C.F.R. § 1710.500.

60.     In issuing a Final Subdivision Public Report, the DRE authorizes the sale of lots within a subdivision pursuant to the terms disclosed in said report under Bus. & Prof. Code § 11018, which requires that this report "contain the data obtained in accordance with Section 11010 and which the commissioner determined are necessary to implement the purposes of this article." Section 11010, in turn, requires, in part, "[a] trues statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used." Bus. & Prof. Code § 11010(b) (5).

61.     The developer and/or its agent shall give each prospective purchaser a copy of the Final Subdivision Public Report "prior to the execution of a binding contract or agreement for the sale or lease of any lot or parcel in a subdivision." Bus. & Prof. Code § 11018.1(a). Thus, under the ILSA certification program, Defendants were required by ILSA to include in the Public

Report a true statement of the terms and conditions relevant to the sale of condominiums at the Hard Rock, including the buyers' federal rescission rights imposed by ILSA, and to provide Plaintiff with this report before Plaintiff entered into their standardized Contracts to purchase Units at the Hard Rock.

**C.**      **Defendants chose not to comply with ILSA in developing the Hard Rock to make the terms of the resulting Contract favor the Developer Defendants.**

62.      On or before early 2005, the Developer Defendants retained counsel from the Santa Monica, California office of the law firm of Greenberg Traurig, LLP ("Greenberg Traurig") for the purpose of handling the application for public reports to be obtained from the DRE and to liaison with the DRE as the "Single Responsible Party" in connection with the development and sales of Units at the Hard Rock. Greenberg Traurig has long marketed itself as a firm specializing in ILSA. The firm's website had this to say on its industry-specific webpage related to the "Hospitality" industry:

> "We have wide-ranging experience with the federal Interstate Land Sales Disclosure Act ILSDA), as well as the individual state land sales acts and regulations, and the associated advertising and registration requirements that apply under the federal and state acts. We efficiently evaluate the spectrum of requirements and restrictions that apply to a particular project and design and implement as effective sales and marketing program that complies with the multitude of federal and state laws. We prepare detailed public offering statements under ILSADA and applicable state laws, and the application and implementation of available exemptions, according to jurisdiction. We also assist clients in training and monitoring sales staff to manage the risk associated with Internet and other marketing initiatives within the structure of a meaningful legal sales and marketing campaign."

63.     On or about March 25, 2005, Greenberg Traurig submitted to the DRE on behalf of the Developer Defendants a Preliminary Public Report Application, which is the first step in ultimately obtaining a Final Subdivision Public Report.

64.     On or about November 2005, Greenberg Traurig submitted to the DRE on behalf of the Developer Defendants a "Notice of Intention (Common Interest)," DRE Form RE 624 Part III, which is a DRE form application that the Developer Defendants used to apply for both a Conditional Public Report and a Final Subdivision Public Report (*i.e.*, the Public Report attached ecf). In this form application, one of the questions asks whether the applicant intends to file the resulting Final Subdivision Public Repots "with the HUD office of Consumer and Regulatory Affairs, Interstate Land Sales/RESPA Division (HUD-OCRA)." In response to this question, the Developer Defendants checked "No." Had they checked yes, they would have been required to submit to the DRE a copy of the Contract with the "HUD-OCRA required provisions underlined in red." By checking "No," Developer Defendants were informing the DRE that they were not applying for an ILSA-compliant Final Subdivision Public Report.

65.     The Developer Defendants had two options in developing the Hard Rock as a project that was not exempt from ILSA. They could register the Hard Rock directly with HUD and obtain as ILSA property report, or they could obtain an ILSA-compliant public report issued by the DRE to be submitted to HUD in lieu of separately registering with HUD. They chose to do neither and attempted to draft the Contract to make it appear exempt from complying with ILSA by having the Contract state that construction would be complete within two years of the date of contract. However, as demonstrated below, the two-year exemption under ILSA only applies where the developer has a binding obligation under the purchase contract to complete construction within two years and buyers have the right to seek specific performance. Here, the Developer Defendants are not obligated to complete construction within two years. By ignoring

their obligations under ILSA and anti-fraud provisions, Defendants were able to draft the Contract to include terms that robbed buyers of contractual rights they were entitled to under ILSA.

66.     For instance, to comply with ILSA, the Developer Defendants were required to provide buyers with written notice in the Contract of a 20-day opportunity to remedy default or breach. 15 U.S.C. § 1703(d) (2). No such notice is included in the Contract. Similarly, under ILSA, a developer must include in the purchase contract a right to revoke the contract for at least seven days and up to two years after date of signing, depending on whether the developer has otherwise complied with certain disclosure obligation. 15 U.S.C. § 1703(b)-(d). No such right is included in the Contract. Instead, the Contract stated buyers at the Hard Rock had three days to cancel their "offer" after signing the Contract.

67.     Lastly, in California, a developer can sell units while the property is only governed by a Conditional Subdivision Public Report, provided that a Final Subdivision Public Report is timely obtained before close of escrow, and provided the Final Subdivision Public Report does not differ in a material manner from the Conditional Subdivision Public Report. However, under the HUD certification program, developers cannot sell units until an ILSA-compliant Final Subdivision Public Report has been obtained from the DRE and submitted to HUD.

68.     The law presumes that the Developer Defendants knew what their disclosure obligations were under ILSA. The law firm that Developer Defendants retained to act as their Single Responsible Party with the DRE specializes in assisting developers in complying with state and federal laws related to such developments. The Seller's real estate broker at the Hard Rock, defendant Playground, is a subsidiary of Intrawest Holdings, Inc. This entity and Playground, in conjunction with their affiliates, have been developing and marketing

condominium-hotel units in the United States for more than a decade and have registered multiple condo-hotel projects with HUD. Upon information and belief, Playground itself is well-versed in the disclosure obligations under ILSA, as well as being cognizant of the anti-fraud provisions of state and federal law.

### D. Plaintiff had an absolute right under ILSA to rescind his Contract for two years from the date of signing.

69. Pursuant to 15 U.S.C. § 1703(c):

> "In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this title [15 USCS §§ 1701 et seq.] and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right."[1]

70. The Developer Defendants never obtained an ILSA property report. Nor did these Defendants obtain an ILSA-compliant public report from the DRE to be submitted to HUD in lieu of obtaining an ILSA property report. The Public Report was never submitted to HUD by Developer Defendants and there is no mention in the Public Report of any rescission right imposed by ILSA. In fact, the Public Report fails to disclose any rescission right afforded buyers.

71. Defendants' standardized Contract includes the following language in Section 20(i) on page 12: "BUYER MAY CANCEL BUYER'S OFFER TO PURCHASE THE UNIT

---

[1] As discussed below, the Hard rock was not exempt from complying with the requirements of ILSA.

AND THE CONTRACT RESULTING FROM SELLER'S ACCEPTANCE OF BUYER'S OFFER, AND RECEIVE A FULL REFUND OF BUYER'S INITIAL DEPOSIT UNTIL MIDNIGHT OF THE THIRD (3rd) CALENDAR DAY AFTER THE DAY ON WHICH THE BUYER SIGNS THIS CONTRACT, BY NOTIFYING SELLER IN THE MANNER PROVIDED IN THIS CONTRACT."

72.     Given Defendants' failure to obtain an ILSA property report or an ILSA-compliant Final Subdivision Public Report for the Hard Rock, Plaintiff had an absolute, two-year right to rescind under ILSA that was not disclosed to him in the Defendants' form Contract as required under 15 U.S.C. § 1703(c).

73.     Similarly, pursuant to 15 U.S.C. § 1703(d)(2):

"Any contract or agreement which is for the sale or lease of a lot not exempt under section 1403 [15 USCS § 1702] and which does not provide—(2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice…may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement."[2]

74.     Under § 1703(d) (2), a buyer has an absolute 2-year right to rescind if the contract does not contain the referenced 20-day cure provision. In this case, the standardized Contract does not provide buyers with written notice of an opportunity to remedy default or breach within 20 days, and instead includes the following language:

---

[2] As discussed below, the Hard Rock was not exempt from complying with the requirements of ILSA.

"Except as otherwise set forth herein, Buyer's failure to perform within the time or in the manner required under any of the provisions of this Contract shall constitute a default. In the event of any default, Seller shall be entitled to terminate this Contract, cancel the Escrow and pursue any available remedy at law or in equity against Buyer, or if Seller and Buyer have initiated Section 9(a) below titled 'Liquidated Damages', Seller shall be entitled to retain the sum set forth in said section as Liquidated Damages for default."

*See* Contract, § 8 (ECF Doc. 17-3 at pg. 41).

75.     The only "notice" to be provided to buyer regarding default under the terms of the Contract is found in Section 9(a)(iii) under the heading "Payment of Liquidated Damages," which likewise does not comport with ILSA. Section 9(a) (iii) provides as follows:

"Liquidated damages shall be remitted to seller according to the following procedures: Seller may give written notice to escrow holder and to buyer, in the manner prescribed by section 116.340 of the code of civil procedure for service in a small claims action, of seller's determination that buyer is in default, and demand that escrow holder disburse the liquidated damages to seller ('Seller's Demand'). Within seven (7) days after buyer's receipt of seller's demand, buyer may deliver a written notice to escrow holder instructing escrow holder not to disburse such funds to seller. ('Buyer's Objection'). If buyer does not deliver buyers objection to escrow holder within the seven (7) day time period, (1) Escrow holder shall release the liquidated damages to seller, and remit the balance of funds in escrow, if any, to buyer, and (2) buyer shall be deemed to have waived buyer's right to recover damages, if any[.] Upon the receipt of the buyer's objection, escrow holder shall immediately notify seller and the controversy regarding the disposition of the escrow deposit shall be resolved in accordance with the provisions herein."

76.     In summary, because the standardized Contract failed to give buyer written notice

of an opportunity to remedy default or breach within 20 days of receipt of notice of same, under the ILSA, Defendants were required to provide notice to the Plaintiff in the Public Report that they had a federal statutory two-year right to rescind their Contracts from the date of signing.

**E.     The Public Report fails to disclose to Plaintiff their two-year right to rescind in violation of ILSA and Defendants had a continuing obligation to disclose this two-year rescission right.**

77.     At the time, under HUD regulation 24 C.F.R. § 1710.105(c), the first page of an ILSA Property Report is required to include the following disclosure:

"This Report is prepared and issued by the developer of this subdivision. It is *not* prepared or issued by the Federal Government. [¶] Federal law requires that you receive this Report prior to your signing a contract or agreement to buy or lease a lot in this subdivision. However, NO FEDERAL AGENCY HAS JUDGED THE MERITS OR VALUE, IF ANY, OF THIS PROPERTY. [¶] If you received this Report prior to your signing a contract or agreement, you may cancel your contract or agreement by giving notice to the seller any time before midnight of the seventh day following the signing of the contract or agreement. [¶] If you did not receive this Report before your signed your contract or agreement, you may cancel the contract or agreement any time within two years from the date of signing." (Emphasis in orig.)

78.     In California, a Final Subdivision Public Report issued by the DRE is provided to buyers by Seller in place of an ILSA Property Report otherwise required under 15 U.S.C. § 1707(a). The formatting of a DRE Public Report does not allow for the placement of the above notice on the first page of the report, but the notice must still appear somewhere in the Public Report under HUD's agreement with the DRE. It must also be included in the Public Report because a rescission rights is a material fact under ILSA.

79.     However, at the time, under 24 C.F.R § 1710.105(d)(2)(iii)-(iv), where a purchase

contract does not provide buyer with written notice of a 20-day opportunity to remedy default or breach, the developer is required to replace all rescission language in an ILSA Property Report (here the Public Report) with the following language: **"Under Federal law you may cancel your contract or agreement of sale any time within two years from the date of signing."** (Emphasis added.)

80.     The Public Report found at ECF Doc. 17-3, pgs. 50-65, does not include *any* rescission language. Nowhere in the Public Report is Plaintiff provided notice of his two-year right to rescind his Contract.

81.     The Developer Defendants failed to register the Hard Rock project with HUD. Even had they done so, the Public Report provided does not disclose Plaintiff's two-year right to rescind. The resulting violations of ILSA are not the end of the story, however, because Defendants had an ongoing obligation to disclose this two-year rescission right.

82.     "After a developer is effectively registered with the Secretary through a certified state, the Secretary has the same authority over that developer as the Secretary has over developers who file directly with the Secretary." 24 C.F.R § 1710.500(c).

83.     At the time, HUD regulations implementing ISLA prohibited the use of a Property Report (here a DRE Public Report) that omits a material fact required to be stated therein. 24 C.F.R § 1710.29. On its face, the front page of the Public Report states that "[s]ome material changes may require amendment of the Public Report; which Amendment must be obtained and used in lieu of this report." ECF Doc. 17-3, pg. 51

84.     Given the ability of the Developer Defendants to amend the Public Report, the failure of the Public Report to disclose Plaintiffs' two-year rescission right in violation of HUD regulations and the fact that Defendants fall under the authority of HUD despite having obtained a DRE Public Report versus an ILSA Property Report, Defendants had an ongoing obligation to

amend the Public Report to disclose this two-year recession right and failed to do so.[3]

85.     As discussed below, a two-year rescission right is a material fact under ILSA because a reasonable purchaser would consider a two-year right from the Public Report and the Contract, and by otherwise failing to disclose this right, Defendants violated ILSA.

86.     As previously discussed, the report must contain a true statement of the terms and conditions of the transaction. *See* Bus. & Prof. Code § 11010(b) (5). By failing to disclose this two-year rescission right in the Public Report, Defendants violated the ILSA.

**F.     Plaintiffs' Contract uniformly failed to disclose the two-year right to rescind despite an obligation under the HUD regulations implementing ILSA to do so.**

87.     At the time, under HUD regulation 24 C.F.R § 1710.559(a)(1), all contracts or agreements governed by ILSA must disclose a seven day rescission right where the buyer receives an ILSA Property Report before signing a purchase contract. However, "[i]f the purchaser is entitled to a longer revocation period by operation of State law or [ILSA], that period becomes the Federal revocation period and the contract or agreement must reflect the longer period, rather than the seven days." 24 C.F.R § 1710.559(a) (2).

88.     Here, the standardized Contract includes the following language in Section 20(i) on page 12: "BUYER MAY CANCEL BUYER'S OFFER TO PURCHASE THE UNIT AND THE CONTRACT RESULTING FROM SELLER'S ACCEPTANCE OF BUYER'S OFFER, AND RECEIVE A FULL REFUND OF BUYER'S INITIAL DEPOSIT UNTIL MIDNIGHT OF

---

[3] Defendants' ongoing obligation to amend the Public Report to include a two-year rescission right as required by 24 C.F.R § 1710.105(d)(2)(iii)-(iv) is also demonstrated  by a HUD regulation implementing ILSA. HUD regulation 24 C.F.R § 30.55 concerns the imposition of civil  money penalties for violations of ILSA or the regulations set forth in 24 C.F.R part 1710, among others, and orders issued pursuant to these authorities. Under 24 C.F.R § 30.55(b), entitled "Continuing Violations," [e]ach day that a violation continues shall constitute a separate violation." *Id.*

THE THIRD (3rd) CALENDAR DAY AFTER THE DAY ON WHICH THE BUYER SIGNS

THIS CONTRACT, BY NOTIFYING SELLER IN THE MANNER PROVIDED IN THIS

CONTRACT."

89.     Thus, the Contracts failed to disclose Plaintiffs' two-year right to rescind despite

a legal obligation under the HUD regulation implementing ILSA.


**G.     This statutory two-year right to rescind was a "material" fact that had to be disclosed.**

90.     The materiality standard under ILSA is drawn from federal securities

jurisprudence. Under ILSA, a "fact stated or omitted is material if there is a substantial

likelihood that a reasonable purchase or seller of a security (1) would consider the fact important

in deciding whether to buy or sell the security or (2) would have viewed the total mix of

information made available significantly altered by disclosure of the fact." *Burns v. Duplin Land*

*Development, Inc.*, 621 F. Supp. 2d 292, 308 (E.D.N.C. 2009) (internal citations and quotes

omitted). Any reasonable buyer would consider the existence of a two-year right to rescind as an

important fact in deciding whether to enter into a contract to buy a condo at the Hard Rock

because it would give the buyer a guaranteed way to escape any liability for two years from the

date of signing the Contract. The CCC also provides that material misstatements and omissions

in the sale of a security—like the federally mandated two year right to rescind—be properly

disclosed.


**H.     The Hard Rock is not exempt from complying with ILSA.**

91.     ILSA does not apply to the sale of land where the contract unconditionally

obligates the seller to complete construction within two years. 15 U.S.C. § 1702(a) (2). Here,

Plaintiff standardized Contract contemplate the completion of construction in under two years, but the above exemption does not apply because:

    a.    The standardized Contract provides an Estimated Completion Date of September 30, 2007; however, the Seller's promise to build is illusory and equivocal and does not satisfy the strict HUD guidelines which require the builder to unequivocally obligate itself to complete construction within two years. HUD requires that the "contract must not allow nonperformance by the seller at the seller's discretion," because such an obligation is "not an obligation in reality." HUD Guidelines, 61 Fed. Reg. 13596, 13606;

    b.    Pursuant to Paragraph 4.2(iii) of the Contract, Seller may cancel the Escrow and refund the Buyer's security deposit should Seller fail to obtain a Certificate of Occupancy by December 29, 2007; and

    c.    Paragraphs 4.2(i) and 4.2(ii) significantly limit buyer's remedies in case of a default. The language in the Contract includes statements such as "buyer's sole remedy" and "Buyer's Escrow Deposit…shall be refunded to Buyer." HUD Guidelines also state that "contracts that directly or indirectly waive the buyer's right to specific performance are treated as lacking a realistic obligation to construct." HUD Guidelines, 61 Fed. reg. 13596, 13603.

92.    For the foregoing reasons, the Developer Defendants were not exempt from complying with the registration and reporting obligations under ILSA in connection with their marketing and sales efforts at the Hard Rock.

**I.    Defendant took affirmative steps to conceal from Plaintiff his statutory two-year right to rescind the Contracts.**

93.     In developing and marketing the Hard Rock, no single Tarsadia entity was responsible for a particular aspect of this process. The Developer Defendants shared office space, officers and directors, where single individuals bore titles in multiple entities and decisions were made not by a single entity, but collectively by these entities operating as a single enterprise.

94.     On or before April 2006, the Developer Defendants prepared the standardized Contract to be used in connection with sales at the Hard Rock and obtained the Public report from the DRE, where these documents were purposefully drafted to conceal Plaintiff's two-year rescission rights. The Developer Defendants then provided these documents to their real estate broker, Playground.

95.     On or about May 5, 2006, Playground distributed to all or substantially all prospective buyers a publication entitled "Perspectives + Prices," which was dated May 5, 2006. In this document, Playground provided would-be buyers with drawings of the various building comprising the Hard Rock and the unit numbers and prices to give these prospective purchasers an idea where the various Units were situated within the proposed complex, what the views would be from these Units and how much each unit would cost. Interested persons were then requested to submit 'Pre-Commitment Packages" to playground by May 11, 2006 and a "Unit Selection Event" was scheduled for May 18, 2006.

96.     Playground was also the real estate broker selling Units for Defendants at the Hard Rock. In this capacity, Playground had a statutory duty to "disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties." Cal. Civ. Code § 2079.16; *see also Holmes v. Summer*, 188 Cal.App.4th 15101, 1522-23 (2010) (Where seller's broker is aware of information regarding the financial risks of the transaction and the broker is also aware that such information has not been disclosed to the buyer, the "broker has a duty to disclose this state of

affairs to the buyer, so that the buyer can inquire further and evaluate whether to risk entering into a transaction with a substantial risk of failure").

97.     Similarly, "[i]n the context of real estate transactions, it is now settled in California that where the seller knows of facts materially affecting the value of desirability of the property…and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citation.] Undisclosed facts are material if they have a significant and measurable effect on market value. [Citation.] A breach of the duty to disclose gives rise to a cause of action for rescission or damages." _Newhall land & Farming Co. v. Superior Court_, 19 Cal.App.4th 334, 349 (1993); _see also_ Cal. Civ. Code § 1572. Moreover, where a seller has made a representation that is true when made, but which is subsequently rendered false by changed circumstances or events occurring before a change of position by the purchaser, the seller has a duty to disclose the falsity of the original representation. _See_ _Southern Cal., etc. Assemblies of God v. Shepard of Hills, etc. Church_, 77 Cal.App.3d 951, 955-56 (1978).

98.     The fact that Plaintiff had an absolute two-year right to rescind materially affected the value or desirability of the property. Playground has to have known of this right as well, yet failed to disclose it to Plaintiff, or consciously chose to ignore the fact that Developer Defendants were engaged in a scheme to ensure sales of the condos at the Hard Rock could not be rescinded.

99.     Due to Plaintiff's incarceration and inability to procure documents related to the purchase of Unit 1042, upon information and belief, in 2006, Plaintiff and his co-purchaser selected the Unit they eventually purchased at the Hard Rock.

100.    On or about May 18, 2006, the Plaintiff received the Public Report and entered into the respective Contract, where these documents failed to disclose Plaintiffs' two-year rights to rescind and made affirmative misrepresentations regarding their rescission rights. In fact,

Plaintiff specifically recognized the contract made it nearly impossible to rescind the contract unless the Sellers' did not complete building the Hard Rock on time. The Plaintiff believed that once the contract was signed, he ultimately was bounded by the terms of the contract and could not rescind.

101.    In addition, on or about the beginning of August 2007, Playground distributed the Closing Notices, entitled "CLOSING—IT'S TIME TO MAKE YOUR MOVE," which was dated August 2007 and included questions and answers related to the upcoming closing of escrow on Units at the Hard Rock (the FAQ). On the second page of this document, the following question and answer are included:

Q:    AM I REALLY IN JEOPARDY OF DEFAULT?

A:    If you have not completed your loan application and seen it into underwriting, yes, you have fallen behind and may be in jeopardy. [¶] The deadline for having your loan approved is the end of August, which is just 3 weeks away and it takes on average 4 weeks to get a loan approved. See the problem? [¶] **We hate to say it but if you don't close on the date to be announced by the developer, you will be in default and lose your deposit...**" (Emphasis added).

102.    Playground distributed this Closing Notice with the full knowledge and consent of the Developer Defendants. In distributing this notice, Playground perpetuated Developer Defendants scheme, and their own interest, by asserting that Plaintiff would lose his deposit if he failed to close on time, when Plaintiff had, in fact, a two-year right to walk away from the Contract.

103.    At no point did any Defendant disclose to Plaintiff that he had the rights to rescind the Contract for two-years from the date of execution. Rather, each Defendant purposefully concealed from Plaintiff the two-year right to rescind and forcefully coerced and

threatened Plaintiff to assure he closed on time or suffer the loss of his deposit.

104. In response to the Closing Notice, Plaintiffs recourse was to seek guidance from his Contract and the Public Report, which documents wantonly mislead him into believing either that his rescission rights were limited to three days from signing under the Contract or that he affirmatively had no right to rescind.

105. On or after October 2007, believing that he would lose his deposit if he did not close and that he had no other option, the Plaintiff closed escrow on his Unit 1042, with his co-purchaser.

106. By around January 2008, in the midst of Plaintiffs life collapsing around him and still being within the window to exercise his two-year right to rescind, Plaintiff felt he had no other option but to quit claim the deed of his 50% interest in the property to his co-purchaser, Brian Theilen.

107. The Defendants knowingly and willfully devised and carried out a common plan, scheme or artifice to defraud Plaintiff by purposefully omitting the two year right of rescission from both the Contract and the Public Report and instead intentionally misrepresenting in the Contract that only a three day rights of rescission existed.

108. Developer Defendants further purposefully concealed this two-year rescission right and in August 2007 Playground wrongfully led buyers to believe that they would lose their deposits if they did not close escrow, which statement waived the assumption that any rescission right existed.

109. Under applicable law, a Plaintiff demonstrates reliance on a wrongful omission or material misstatement by showing that had the information withheld been disclosed, Plaintiff would have been aware of this information and would have acted differently. Had Plaintiff known of his rescission right, he would have never even *closed on* the property, much less

unwillingly quit claimed the deed to his co-purchaser as last resort in January 2008.

**J.      Even with the exercise of reasonable diligence, Plaintiff was completely unaware of his rescission rights until he was notified that he was a class member of this case against Defendants.**

110.     Due to Plaintiffs incarceration and indigence, he could never have discovered his two-year rescission rights under ILSA or Defendants' violations of ILSA and securities fraud violations alleged herein until he was provided notice of the class action lawsuit in June 2017. Plaintiff has remained incarcerated since May 24, 2009 and is currently serving a 32 year prison term for securities fraud, based upon entering an unknowing and involuntary plea.

111.     Due to Defendants' affirmatively false statements and omissions about Plaintiffs' rescission rights, Playgrounds threats and misrepresentations, and due in part to the complexity of the ILSA and securities fraud violations alleged herein—and also being a part of California law—Plaintiff was unable to discover his rescission rights and Defendant's violations of ILSA and securities fraud statutes being a resident of the state of Colorado.

112.     It is undisputed that Plaintiff cannot be prevented from raising all these claims, as fraud claims cannot accrue until the discovery, by the aggrieved party, of the facts constituting the fraud. Additionally, Plaintiff was a class member of an already determined [in part] case on these *exact* issues and Plaintiff opted out for the specific purpose of pursuing his own cause of action, which the Class Action Settlement Notice stated was permitted. *See* ECF Doc.17-3, pg. 69, which states, "If you don't want a payment from this settlement, *but you want to keep the right to sue Tarsadia Hotels and other defendants named in this lawsuit on your own about the legal issues in this case*, then you must take steps to get out." Plaintiff properly opted out of the Class Action Settlement in a timely and appropriate manner. As such, Plaintiff has preserved his right of a pre-existing cause of action against all the Defendants named in this case.

113.    Without Plaintiff being notified of being a class member in the *Beaver* case, the exercise of reasonable diligence could not of lead to the discovery of Plaintiffs' rescission rights or Defendants' violations of ILSA and the CCC due to Plaintiffs incarceration in Colorado and involuntary action in quite-claiming the deed to his co-purchaser.

### K.    Plaintiff has suffered damages as a result of Defendants' wrongful conduct.

114.    As a result of Defendant's wrongful conduct, Plaintiff suffered damages due to the concealment of Plaintiffs two year rescission rights and material misstatements, as the Defendants' concealment of these rights prevented Plaintiff from timely exercising rescission and seeking other legal options. If the Plaintiff had been allowed to exercise these rights, Plaintiff would not have incurred damages and would have never closed on the property. If Plaintiff was not deprived of his loss of use of $50,000 he further could have sought legal counsel to uncover Defendants wrongful conduct.

115.    Here, Plaintiff justifiably relied on the Defendants' wrongful omissions and material misstatements of Plaintiffs' two-year right to rescind by closing escrow on his unit at the Hard Rock. Had this two-year right to rescind been disclosed at any time within the two-year right to rescind, Plaintiff would have rescinded his contract and recovered his purchase monies to escape the loss of use of $50,000 and loss of interest in the property.

116.    Plaintiffs' damages include monetary losses, as well as incidental, punitive, and consequential damages. Had Plaintiff not been deprived of his use of his $50,000 deposit, he would have been able to continue paying attorney's to prevent a default judgment of $18+ million dollars being entered against him on or around June of 2008 (which was only entered because Brooks did not file a response to the lawsuit because he ran out of money to pay his attorneys at Kutek Rock), Plaintiff would not have lost his interest in the property by quit

claiming it to his co-purchaser ($50,000), Plaintiff would have never been sent to prison at all

(incalculable), and he would not be currently paying a $40,800 *monthly* interest penalty on an

illegally induced plea, possibly for the rest of his life ($20+ million).

117.    Defendant's wrongful omissions and misstatements caused the loss of use of

$50,000, which resulted in extreme financial harm to Plaintiff.

118.    The measure of damages incurred are not entirely calculable, but compensatory

damages will begin at $35 million. The exact measure will additionally include: punitive

damages, restitution, disgorgement and consequential damages, which shall be determined at

trial, as well as other remedies because of Defendants' conduct.

119.    Additionally, since this court should follow the holding from the 9th Circuit Court

of Appeals in *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1188 (9th Cir., March 10, 2016) and

"[s]ince Defendants concede that they have failed to comply with those disclosure requirements,

the district court properly granted summary judgment to Plaintiffs on his UCL claim," Plaintiff

should already prevail as a matter of law on the UCL claim and will also be able to recover

reasonable attorneys' fees, costs and other consequential damages, if Plaintiff obtains counsel

and/or incurs such cost.


**L.     Seller and its real estate broker owed Plaintiff a duty to disclose.**

120.    Finally, under California law, where the seller (5th Rock) and its real estate broker

(Playground) are aware of facts materially affecting the value or desirability of the property

which are known or accessible only to them, they are under an affirmative legal duty to disclose

such facts to the buyer. As described above, the required disclosures were never made to

Plaintiff.

121.    Playground is responsible for any misstatement of material fact that perpetuated

Developer Defendants scheme, independent of their knowledge of the truthfulness of the statement, at the time it was made, not misleading.

## FIRST CAUSE OF ACTION

### (Violation of ILSA, 15 U.S.C. § 1703(a) (2) (A), (B) and (C) Against All Defendants)

122.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 121 as if fully set forth herein.

123.    Under the HUD certification program discussed above, a developer of a California property subject to ILSA satisfies ILSA's requirements regarding both the Statement of Record and Property Report by obtaining a Final Subdivision Public Report from the DRE issued pursuant to Bus. & Prof. Code § 11018, which report shall contain "[a] true statement of the terms and condition on which it is intended to dispose of the land…" Bus. & Prof. Code §§ 11010(b) (5), 11018.

124.    Under the terms of the Agreement between HUD and the DRE, this public report must include buyers' deferral rescission rights imposed by ILSA. There are two federal rescission rights imposed by ILSA that are applicable to this case. First, pursuant to 15 U.S.C. § 1703(d) (2):

> "Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 and which does not provide…(2) that, in the event of a default or breach of the contract or agreement by the purchaser or lessee, the seller or lessor (or successor thereof) will provide the purchaser or lessee with written notice of such default or breach and of the opportunity, which shall be given such purchaser or lessee, to remedy such default or breach within twenty days after the date of the receipt of such notice…may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement."

Second, pursuant to 15 U.S.C. § 1703(c):

> "In the case of any contract or agreement for the sale or lease of a lot for which a
> property report is required by this title [15 USCS §§ 1701 et seq.] and the property report
> has not been given to the purchaser or lessee in advance of his or her signing such
> contract or agreement, such contract or agreement may be revoked at the option of the
> purchaser or lessee within two years from the date of such signing, and such contract or
> agreement shall clearly provide this right."

125.     Moreover, under 15 U.S.C. § 1703(b)-(d), a purchaser's rescission right under
ILSA must be disclosed in the purchase contract. Thus, under ILSA, if a purchase contract fails
to provide buyer with written notice of an opportunity to remedy default or breach within 20
days of receiving notice of default or breach, or where a developer fails to obtain an ILSA
property report or to obtain an ILSA-compliant Final Subdivision Public Report from the DRE
and present such a report to buyer before buyers signs a purchase contract, then buyer has the
right to rescind his contract for two years from the date of signing and this right must be
disclosed in the relevant purchase contract. Plaintiff Contracts do not disclose this two-year right
to rescind, a material omission under ILSA.

126.     In contrast, the Contracts mislead Plaintiff and include a three day right to rescind
in violation of 15 U.S.C. § 1703(b)-(c), and 24 C.F.R. § 1715.2.

127.     Defendants further purposefully mislead Plaintiff as to his two year right of
rescission and actively concealed the right from Plaintiff.

128.     By this scheme and concealment, Defendants, and each of them:

> a. employed a device, scheme or artifice to defraud Plaintiff in violation of
> 15 U.S.C. § 1703(a) (2) (A);
> b. obtained money from Plaintiff by means of omissions of material facts

necessary in order to make the statements made in the Public Report and the Contracts not misleading, in violation of 15 U.S.C. § 1703(a)(2)(B); and;

c. engaged in a practice and course of business which operated as a fraud or deceit upon Plaintiff in violation of 15 U.S.C. § 1703(a) (2) (C).

129. Defendants violated the anti-fraud obligation under § 1703(a) (2) (a)-(c) by actively concealing the two year right to rescind to protect themselves at Plaintiffs' expense.

130. The purposeful concealment of Plaintiffs' rescission rights substantially damaged Plaintiff by preventing him from timely rescinding his respective Contract had he known of his absolute right to rescind under ILSA and lead to Plaintiff quit-claiming the deed of the property to his co-purchaser.

131. Given Defendants' purposeful deception in withholding from Plaintiff this critical information for more than three years, the equities demand rescission. Pursuant to 15 U.S.C. § 1709(a), Plaintiff is entitled to bring an action in law or equity for damages, specific performance, or such other relief as the Court deems fair, just, and equitable.

132. Accordingly, Plaintiff hereby elects to rescind his perspective contracts and recover the full consideration paid for his respective Unit; or alternatively, Plaintiff seeks damages pursuant to 15 U.S.C. § 1709(a), which, pursuant to said section, should be measured by the difference between "the amount actually paid" and "the fair market value of the lot or leasehold at the time relief is determined [,]" plus other damages as alleged herein, which total sum will be determined at trail.

133. Pursuant to 15 U.S.C. § 1709 (c), in addition to rescission or damages, Plaintiff is entitled to interest, cost, and reasonable attorney's fees.

### SECOND CAUSE OF ACTION

**Violation under California Corporations Code §§ 25401, 25501, 25504.1 and Rule 10b of the 1934 Securities Exchange Act Against All Defendants.**

134.    Plaintiff incorporate be reference the allegations contained in paragraphs 1 through 133 as if fully set forth herein.

135.    Defendant are persons who violated CCC §§ 25401, 25501, 25504.1 and Rule 10b of the 1934 Securities Exchange Act because they offered for sale and sold in the State of California the Sales Agreements by means of written or oral communication which included untrue statements of material facts or omitted to state a material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or materially assisted in such violation. These misstatements and omissions were knowingly and intentionally made to further Developer Defendants scheme.

136.    Plaintiff is a person who purchased the Sales Agreements from Defendants. Upon these premises, Plaintiff hereby elects to rescind his perspective Contract and recover the full consideration paid for his respective Unit; or alternatively, Plaintiff seek damages in excess of the jurisdictional threshold of this Court, which damages were caused by Defendants' wrongful conduct.

137.    The Plaintiff quit-claiming the deed to his co-purchaser and eventual incarceration made it impossible to discover any of these claims until Plaintiff was alerted to the class action lawsuit that has given rise to this lawsuit on or around July 10, 2017. Accordingly, these claims relate back to the filing of the class action case, May 18, 2011, as any other interpretation would deprive Plaintiff of a pre-existing cause of action.

### THIRD CAUSE OF ACTION

#### (Fraud Against All Defendant)

138.    Plaintiff incorporate be reference the allegations contained in paragraphs 1

through 137 as if fully set forth herein.

139.    Defendant are persons who knowingly made various misrepresentations through concealment, nondisclosure, and false representations, with intent to defraud Plaintiff to induce reliance. Such actions resulted in damages.

140.    Defendants failed to disclose to Plaintiff his two-year right to rescind in the Contract and in the Public Report, and otherwise concealed this right from Plaintiff despite the affirmative legal duty to disclose this right under ILSA.

141.    Moreover, Playground, as an agent for the Developer Defendants, made affirmative misrepresentations in the FAQ and August 2007 Closing Notices on the Developers Defendants' behalf regarding the risks Plaintiff would face if he failed to close escrow.

142.    The Defendants each knowingly and materially assisted each other in misrepresenting that the RMA was not mandatory and a not a condition of the Contract, when, in fact, it was mandatory and a condition of the collective Sales Agreements.

143.    The Defendants knowingly and materially assisted each other in misrepresenting that the Hard Rock guests would be position in a consistent "rotational" system that would "rent all suites equitably."

144.    Under applicable law, a party is held to rely on an omission where had the information wrongfully concealed been disclosed, the party would have been aware of this information and would have acted differently. Here, had Plaintiff been informed of his two-year rescission rights prior to quit claiming the deed to his co-purchaser in early 2008, he would have rescinded his Contract and recovered his purchase money.

145.    As a proximate result of Defendants' deception, Plaintiff has been damaged in sum in excess of the jurisdictional threshold of this Court, and in additional amounts to be determined at time of trail, including interest and costs. Compensatory damages will begin at a request of $35 million.

146.    The aforementioned conduct of Defendants, and each of them, involved the concealment of a material fact known to each of the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was egregious conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
### (Negligence Against All Defendants)

147.    Plaintiff incorporate by reference the allegations contained in paragraphs 1 through 146 as if fully set forth herein.

148.    Defendants had a legal duty to disclose Plaintiffs' two-year right to rescind in the Public Report, a duty to replace the language in the Contract concerning a three-day right to rescind with language disclosing  this two-year right, and a duty to otherwise disclose to Plaintiff a two-year right to rescind.

149.    Defendants breached their duties by failing to disclose in any fashion the existence of this two-year rescission right.

150.    Defendant Playground had a duty to disclose truthful information in the FAQ and Closing Notices, as described herein. In the event that any of the misrepresentations were not made intentionally, said representations were negligently made and constitute negligent misrepresentation.

151.    Plaintiff was damaged by Defendants' negligence in failing to disclose Plaintiffs' two-year rescission right and furthered this failure by marketing materials with misstatements to perpetuate Developer Defendants scheme. Had defendants fulfilled their admitted and legal disclosure obligations and provided truthful information in the marketing materials, Plaintiff would have rescinded his Contract or otherwise unwound his purchase at the Hard Rock.

152.     As a proximate result of Defendants' negligent conduct, Plaintiff has been damaged in a sum in excess of the jurisdictional threshold of this Court, and in additional amounts to be determined at time of trial, including interest and costs.

153.     Defendants' negligence was a substantial factor in causing Plaintiffs' harm.

## FIFTH CAUSE OF ACTION
### (Violation of UCL, Bus. & Prof. Code §§ 17200, et seq.,
### Against All Defendants)

154.     Plaintiffs incorporate be reference the allegations contained in paragraphs 1 through 153 as if fully set forth herein.

155.     The UCL prohibits anything that constitutes an unfair, unlawful or deceptive business practice. Bus. & Prof. Code § 17200. The UCL authorizes a private right of action by anyone who has suffered injury in fact and allows recovery of amounts which may be necessary to restore to any person in interest any money of property which may have been acquired by means of any practice that violates the UCL. Bus, & Prof. Code § 17203.

156.     The "unlawful prong" of the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. Here, Defendants have violated the unlawful prong of the UCL because they violated ILSA, the CCC §§ 25401, 2551, 25504.1, and Rule 10b of the 1934 Securities Exchange Act.

157.     As a result of Defendants' unlawful practices, Plaintiff has suffered injury in fact and lost money, property, and his freedom. Had Plaintiff been informed of his right to rescind he would have exercised this right and not closed on his condominium Unit and is thus entitled to restitution, as well as injunctive relief.

158.     In addition, Defendants have committed unfair and deceptive business practices in violation of the UCL in that they concealed information that Plaintiff was entitled to receive prior to closing escrow on their respective Units at the Hard Rock, including the fact that they had a

two-year rescission right. The practices described herein were deceptive in that they deceived Plaintiff about his rescission rights. They were also unfair in that the offended established anti-fraud statutes and the harm caused to Plaintiff greatly outweighs any benefits associated with these practices. As a direct and proximate result of these unfair and deceptive practices, Plaintiff has suffered injury in fact, lost money, property, his freedom, friends, and family and is thus entitled to restitution, as well as injunctive relief.

159.    In particular, Playground committed unfair and deceptive business practices in that California has a legislative policy demanding that real estate brokers and the sellers of real estate disclose all facts materially affecting the desirability or value of the property that are not known to, or within the diligent attention and observation of, the parties. Here, Plaintiff did not know about his two-year right to rescind; but Playground failed to disclose this right to Plaintiff and as such committed an unfair practice as defined in the UCL by perpetuating Developer Defendant scheme in threating Plaintiff with loss of his deposit if he did not close. Developer Defendants similarly either knew or should have known their disclosure obligations under ILSA given that the law firm that shepherded the Developer Defendants' application for the Public Report specialized in assisting developers in complying with disclosure obligations under ILSA.

160.    Plaintiff is informed and believe and based thereon allege that Defendants have derived substantial revenues from their wrongful and deceptive acts. Plaintiff has been deprived of property to which he was entitled and /or in which they have vested interest in that had Plaintiff been informed of his right to rescind he would have exercised this right and not closed on his condominium Unit. Pursuant to Business and Professions Code section 17203, Plaintiff is entitled to any money or property which may have been acquired by means of such unfair competition in connection with the sale of Units at the Hard Rock.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory damages of $35,000,000 according to proof;

2. For special damages according to proof;

3. For general damages according to proof;

4. For consequential damages according to proof;

5. For equitable and statutory rescission;

6. For restitution off all monies paid to the Defendants or their assigns, according to proof;

7. For attorneys' fees and costs according to proof;

8. For pre-judgment and post-judgment interest;

9. For punitive and/or exemplary damages; and

10. For such other and further relief as the court may deem just and proper.

Dated: _03/13/19_

## CERTIFICATE OF SERVICE

I certify that on this 13 day of March, 2019 that a true and correct copy of the above and foregoing FIRST AMENDED VERIFIED COMPLAINT FOR MONEY DAMAGES JURY TRIAL DEMANDED   was deposited in the U.S. Mail, postage pre-paid, addressed to the Court and the following:

Thomas W. McNamara
655 West Broadway, Suite 1600
San Diego, CA 92101

Frederick H. Kranz
Cathy T. Moses
3121 Michelson Drive, Suite 2000
Irvine, CA 92612

Jason Brooks #150014

Jason Brodes # 150014
Sterling Correctional Facility
P.O. Box 6000
Sterling, CO 80751







U.S. District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101