UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BROOKS,<br>Inmate Booking No. 150014,<br><br>                                    Plaintiff,<br><br>        vs.<br><br>TARSADIA HOTELS; 5TH ROCK,<br>LLC; MKP ONE, LLC; GASLAMP<br>HOLDING, LLC; TUSHAR PATEL;<br>B.U. PATEL; GREGORY CASSERLY;<br>PLAYGROUND DESTINATION<br>PROPERTIES, INC.; DOES 1-50,<br><br>                                    Defendants. | Case No.: 3:18-cv-2290-GPC-KSC<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART TARSADIA<br>DEFENDANTS' MOTION TO<br>DISMISS AND GRANTING<br>PLAYGROUND'S MOTION TO<br>DISMISS**<br><br>**[Dkt. Nos. 26, 27.]** |

Before the Court is Defendants Tarsadia Hotels, 5th Rock LLC, MKP One, LLC, Gaslamp Holdings, LLC, Tushar Patel, B.U. Patel, and Gregory Casserly's motion to dismiss the first amended complaint. (Dkt. No. 26.) Also before the Court is Defendant Playground Destination Properties, Inc.'s motion to dismiss the first amended complaint.

1

(Dkt. No. 27.)  Plaintiff filed oppositions to both motions.  (Dkt. Nos. 31, 32.)  Replies were filed by all Defendants.  (Dkt. Nos. 33, 34.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Tarsadia Defendants' motion to dismiss with leave to amend and GRANTS Playground's motion to dismiss with leave to amend.

## Procedural Background

On September 25, 2018[1], Jason Brooks, a prisoner proceeding *pro se* and *in forma pauperis,* filed the original complaint against Defendants Tarsadia Hotels, 5th Rock, LLC, MKP One, LLC, Gaslamp Holdings, LLC, Gregory Casserly, B.U. Patel, and Tushar Patel ("Tarsadia Defendants") as well as Defendant Playground Destination Properties, Inc.  ("Playground") (collectively "Defendants").  (Dkt. No. 1.)  On March 18, 2019, Plaintiff filed the operative first amended complaint ("FAC") against Tarsadia Defendants and Playground alleging violations of the anti-fraud provision of the Interstate Land Sales Disclosure Act ("ILSA"), 15 U.S.C. §§ 1703(a)(2)(A), (B) and (C); violations of California Corporations Code sections 25401, 25501, 25504.1 and Rule 10b of the 1934 Securities Exchange Act; fraud; negligence; and violations pursuant to California Business & Professions Codes sections 17200 *et seq*.  (Dkt. No. 24.)

In May 2006, Plaintiff and Brian Thielen, as co-purchasers, entered into a Purchase Contract and Escrow Instruction ("Purchase Contract") with Defendants for the purchase of a newly constructed residential condominium unit called the Hard Rock Hotel & Condominium ("Hard Rock") located in San Diego.  (Id. ¶¶ 17, 21.)  Specifically,

_____

[1] Under the prison mailbox rule, the Court deems the Complaint filed on the date Plaintiff signed the Complaint on September 25, 2018.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule in habeas petition context); see also Douglas v. Noelle, 567 F.3d 1103, 1107–1109 (9th Cir. 2009) (applying mailbox rule to § 1983 complaint); James v. Madison St. Jail, 122 F.3d 27, 28 (9th Cir. 1997) (per curiam) (applying mailbox rule to trust-account statements filed pursuant to 28 U.S.C. § 1915(a)(2)); Caldwell v. Amend, 30 F.3d 1199, 1201 (9th Cir. 1994) (mailbox rule applied to Rule 50(b) motion); Faile v. Upjohn Co., 988 F.2d 985, 989 (9th Cir. 1993) (mailbox rule applied to discovery responses).

2

Plaintiff claims that under ILSA, Defendants failed to disclose and intentionally concealed that buyers had an absolute right to rescind their Purchase Contracts within two years of the date of signing and making affirmative misrepresentations to prevent Plaintiff from exercising his rescission rights. (Id.) He also asserts that Defendants' failure to disclose or affirmatively concealing his right to rescind within two year of the date of the Purchase Contract constitute violations of state and federal securities fraud statutes.

This case relates to two prior cases that were before the Court and are now concluded. In one case, Salameh v. Tarsadia Hotels, Case No. 09cv2739, the purported class plaintiffs representing purchasers of Hard Rock Hotel San Diego Investment Securities alleged *inter alia*, violations of federal and California securities statutes. (Case No. 09cv2739, Dkt. No. 86, SAC.) On March 22, 2011, the Court granted Defendants' motions to dismiss with prejudice. Salameh v. Tarsadia Hotels, No. 09cv2739 DMS(CAB), 2011 WL 1044129 (S.D. Cal. Mar. 22, 2011). The Court's ruling was affirmed on appeal. Salameh v. Tarsadia Hotel, 726 F.3d 1124 (9th Cir. 2013). Relevant to this case, the Ninth Circuit concluded that based on the plaintiffs' pleadings, the Purchase Contract and the subsequent Rental Management Agreement ("RMA") did not constitute a "security" under federal and state securities laws. Id. at 1132.

In the second case, Beaver v. Tarsadia Hotels, Case No. 11cv1842, the purported class action plaintiffs filed an action on behalf of persons who purchased units at the Hard Rock Hotel between May 2006 and December 2007 alleging Defendants failed to disclose and intentionally concealed the plaintiffs' right to rescind their purchase contracts within two years of the date of signing the Purchase Contracts and made affirmative misrepresentations to prevent Plaintiffs from exercising the right. (Case No. 11cv1842, Dkt. No. 69, TAC.) In Beaver, the Third Amended Complaint ("TAC") alleged, *inter alia*, violations of the anti-fraud provisions of ILSA, 15 U.S.C. §§

3

1703(a)(2)(A)-(C), fraud, negligence, and violation of California Business and Professions Code sections 17200 *et seq.* The <u>Beaver</u> case involved extensive motion practice which raised numerous novel issues. The Ninth Circuit affirmed the Court's order on reconsideration of the parties' cross-motions for summary judgment, <u>Beaver v. Tarsadia Hotels</u>, 29 F.Supp.3d 1294 (S.D. Cal. 2014). <u>Beaver v. Tarsadia Hotels</u>, 816 F.3d 1170 (9th Cir. 2016). On remand, the case settled as a class action and the Court granted Plaintiffs' motion for final approval of class action settlement and judgment on September 28, 2017, <u>Beaver v. Tarsadia Hotels</u>, Case No. 11cv1842-GPC(KSC), 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017). In its order, the Court noted that one member, Jason Brooks, who was a co-purchaser of Unit 1042, excluded himself from the Class. <u>Id.</u> at *15.

Extracting allegations from the operative complaints in the <u>Salameh</u> and <u>Beaver</u> cases, in this case, Jason Brooks alleges that around 2005 Tarsadia Defendants, through 5th Rock, began to develop a residential condominium consisting of 420 Units called the "Hard Rock Hotel & Condominium" ("Hard Rock") located at 205 Fifth Avenue in San Diego, CA. (Dkt. No. 24, FAC ¶ 16.) Defendants marketed the Units through the Internet, marketing materials, brochures and verbal statements. (<u>Id.</u>) Playground was the real estate broker for the Hard Rock. (<u>Id.</u> ¶ 20.)

Around May 18, 2006, Plaintiff and Brian Thielen, as co-purchasers, executed a pre-printed standardized Purchase Contract and Escrow Instructions that was prepared by Defendants for the purchase of Unit 1042 at the Hard Rock. (<u>Id.</u> ¶¶ 21, 100.) He claims he was induced to purchase the Unit because he understood that Tarsadia Defendants would manage the property through the Rental Management Agreement ("RMA"). (<u>Id.</u> ¶ 21.) Plaintiff was required to sign three agreements: (1) the Contract, (2) the Unit Management and Operating Agreement ("OA") and (3) the RMA. (<u>Id.</u> ¶ 23.) Tarsadia Defendants had Playground prepare a document entitled "Tarsadia's Optional Rental

4

Management Program FAQ" where Defendants represented that investors were not required to participate in the RMA but that representation was false as the purchasers were mandated to participate in the RMA. (Id. ¶¶ 22-24.)

Plaintiff claims that the Contract, the OA and the RMA were in essence a single contract as they could not be separated due to what was required in the agreements but Defendants intentionally separated the offer of the OA/RMA and the Contract in order to avoid the securities law. (Id. ¶ 25.) Defendants furthered the fraudulent scheme by having Playground create closing materials that included misstatements by threatening Plaintiff with the loss of his deposit if he did not timely close. (Id. ¶ 26.) Plaintiff reluctantly closed escrow in the late summer or fall of 2007. (Id. ¶ 27.)

According to the FAC, ILSA was enacted to protect consumers from fraud and abuse in the sale of subdivided lots, including condominium units, and requires developers and their agents to comply with certain registration and disclosure requirements. (Id. ¶ 44.) Developers and their agents must comply with ILSA unless they fall within an exemption but no exemptions applied to the Hard Rock. (Id. ¶ 45.)

Specifically, ILSA requires a developer to register a project with the U.S. Department of Housing and Urban Development ("HUD") and to provide buyers with an ILSA property report that discloses material facts regarding the sales transaction. (Id. ¶ 46.) If a developer does not obtain an ILSA property report to be distributed to buyers before they sign the purchase contract (or in the alternative, in California, where a developer fails to provide buyers with an ILSA compliant Public Report issued by the Department of Real Estate), ILSA imposes a two-year right to rescind from the date of contract for the benefit of the buyers where the right to rescind must be disclosed in the purchase contract, 15 U.S.C. § 1703(c). (Id.)

Plaintiff claims that Defendants failed to obtain an ILSA property report from HUD and obtained a Public Report from the DRE that was not ILSA compliant. (Id. ¶

5

47, 70.)  The Public Report failed to provide buyers notice of any rescission rights and instead disclosed a three-day right to rescind.  (Id. ¶¶ 70, 71.)  Moreover, Plaintiff claims that under 15 U.S.C. § 1703(d)(2) of ILSA, a developer is required to include in the buyer default provision of the purchase contract written notice of a 20-day opportunity for the buyer to remedy default or breach of contract.  (Id. ¶¶ 48, 73-76.)  If such a notice is omitted, the buyer is entitled to an absolute two year right to rescind his purchase agreement from the date he signed it.  (Id.)  Plaintiff claims he received the "Final Subdivision Public Report, File No. 120249LA-F00" concerning the Hard Rock which was issued by the DRE on April 4, 2006 but it does not include the buyer's rescission rights under ILSA.  (Id. ¶ 49.)

Because Defendants failed to comply with their disclosure requirements under ILSA and concealed the two-year rescission rights, they engaged in a scheme to defraud in violation of § 1703(a)(2)(A) of ILSA.  (Id. ¶ 50.)  Defendants also obtained money from Plaintiff by means of omitting the two-year rescission right in the contract and the Public Report in violation of § 1703(a)(2)(B) and otherwise engaged in a practice or course of business that operated as a fraud upon Plaintiff in violation of § 1703(a)(2)(C).  Plaintiff further claims that ILSA imposed an ongoing obligation to amend the Public Report to disclose the two year right to rescind and Defendants failed to do so.  (Id. ¶ 84.)

Because he was denied the right to rescind, Plaintiff was forced to quit-claim the deed of the property to his co-purchaser, Brian Theilan, in January 2008.  (Id. ¶ 53.)  If he had known of his right to rescind he would never have closed on the Unit and was deprived the use of his $50,000 to seek legal counsel to uncover Defendants' wrongful conduct.  (Id. ¶ 114.)  He also would have used the $50,000 to continue paying his attorney to prevent a default judgment of $18 million against him in June 2008.  (Id. ¶116.)  He claims he did not respond to that lawsuit because he ran out of money to pay his attorneys at the time.  (Id.)  He further claims he would never have been sent to prison

6

and he would not be currently paying $40,800 monthly interest penalty on an "illegally induced plea". (Id.) In sum, he seeks $35 million in damages. (Id. ¶ 118.)

Plaintiff has been incarcerated in a Colorado prison since May 24, 2009 and received notice of the class action lawsuit ("Class Notice") in June 2017. (Id. ¶ 54.) Pursuant to the Class Notice, he timely opted out of the class action settlement on August 25, 2017. (Id.; Dkt. No. 17-3, Ds' RJN, Ex. D at p. 67-68.) He inadvertently filed a complaint in the District Court for the District of Colorado on December 29, 2017, and the complaint was dismissed for improper venue on September 14, 2018. (Dkt. No. 24, FAC ¶ 13; see also Dkt. No. 27-3, Tarsadia Ds' RJN[2], Ex. A.) After conducting a review of the complaint, the Colorado district court also denied the Plaintiff's motion to transfer the case to this district. (Brooks v. Tarsadia Hotels, Civ. No. 17cv3172-PAB-KMT, Dkt. Nos. 64, 68 (D. Colo.).) The Complaint in this case was filed on September 25, 2018. (Dkt. No. 1.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what

---

[2] The Court grants Tarsadia Defendants' request for judicial notice of the complaint filed in the District of Colorado as unopposed and subject to judicial notice. See Fed. R. Evid. 201; Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court may take judicial notice of court filings and other matters of public record);

the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. <u>al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992) (quoting <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. <u>See</u> <u>DeSoto</u>, 957 F.2d at 658; <u>Schreiber</u>, 806 F.2d at 1401.

**B.    Legal Standard as to Federal Rule of Civil Procedure 9(b)**

Where a plaintiff alleges fraud in the complaint, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

8

Civ. P. 9(b). Rule 9(b) requires that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation omitted). A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted). As such "[a[verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124 (citing Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003)). Thus, to satisfy the specificity requirement of Rule 9(b), a plaintiff is required "to plead evidentiary facts" and the court must "consider what inferences these facts will support—despite the pitfalls and inefficiencies of such an analysis at the pleading stage . . . ." Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (emphasis added).

**C.    Tarsadia Defendants' Motion to Dismiss**

**1.    Statute of Limitations**

On a motion to dismiss based on the statute of limitations, the Court must assess whether "the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.")). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted).

9

Tarsadia Defendants argue that the ILSA and fraud claims are barred by the three-year statute of limitations from the date of the Purchase Contract, May 18, 2006, and therefore, these causes of actions expired on May 18, 2009. They also argue that the negligence claim is barred by the Court's prior ruling in the <u>Beaver</u> case. Further, they claim that the securities fraud is barred by either the two year or five year limitations period under California Corporations Code section 25506. Finally, they assert the UCL claims are barred by the four-year statute of limitations. In response, Plaintiff argues that he did not discover the alleged failure to disclose rescission rights under ILSA until June 2017 when he received the <u>Beaver</u> Class Notice. He also contends that several tolling theories apply to his case.

### a. ILSA Anti-Fraud Statute of Limitations

Plaintiff alleges violations of the anti-fraud provisions of the ILSA, 15 U.S.C. §§ 1703(a)(2)(A), (B), (C).[3] The statute of limitations for these provision accrues from "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 1711(a)(2).

---

[3] ILSA's anti-fraud provision provides:
(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails– . . .

(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title--
    (A) to employ any device, scheme, or artifice to defraud;
    (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
    (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser

15 U.S.C. § 1703(a)(2)(A)-(C).

10

Under the discovery rule, incorporated into ILSA, "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' -- whichever comes first." Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 637 (2010). The Court in Merck held that the statute of limitations does not begin to run when the plaintiff discovers facts that put the plaintiff on "inquiry notice" when the facts "would have prompted a reasonably diligent plaintiff to begin investigating." Id. at 653. Instead, the claim accrues when the plaintiff discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." Id. "A fact is considered 'discovered' when 'a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" Rieckborn v. Jefferies LLC, 81 F. Supp. 3d 902, 915 (N.D. Cal. 2015) (quoting City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011)).

Tarsadia Defendants argue that the statute of limitations on the ILSA anti-fraud claims expired on May 18, 2009 which is three years from when Plaintiff signed the purchase contract on May 18, 2006.[4] They summarily contend that May 18, 2006 is when Plaintiff knew of or should have been able to discover by reasonable diligence all the facts that constituted the alleged ILSA violations. In response, Plaintiff argues that he did not discover the alleged violations until he received the Class Notice in June 2017.

---

[4] In his opposition, Plaintiff claims that he does not know the specific date when he signed the contract, either May 18, 2006 or December 12, 2006; therefore, his FAC cannot be dismissed as untimely, (Dkt. No. 31 at 10); however, the FAC alleges he signed the contract on May 18, 2006, (Dkt. No. 24, FAC ¶ 100), and incorporates by reference the Purchase Contract he signed which is dated May 18, 2006. (See Dkt. No. 17-3, Tarsadia Ds' RJN, Ex. A at 35-49.) Therefore, the Court concludes the Plaintiff has alleged he signed the Purchase Contract on May 18, 2006.

Because he was forced to quit-claim his deed to the Unit to his co-purchaser in January 2008, he did not receive any reports on the property. Moreover, he explains that the ILSA is complex that even if he compared the Purchase Contract and Public Report with ILSA's requirement he would not have known that Tarsadia Defendants violated any laws.

The FAC alleges that Plaintiff had no reason to suspect any of Defendants' representations in the Contract, Public Report, Closing Notice or FAQ concerning his rescission rights to be false or misleading. (Dkt. No. 24, FAC ¶ 52.) He claims that because of his incarceration and indigence, he could never have discovered his two-year rescission rights under ILSA. (Id. ¶ 110.) He also claims due to the complexity of the ILSA and securities laws, he was unable to discover his rescission rights. (Id. ¶ 111.) He only discovered the violations when he was provided with the Class Notice in June 2017. (Id. ¶ 110.) Pursuant to that Class Notice, he opted out. (Id. ¶ 112.) He asserts that any exercise of reasonable diligence would not have lead to the discovery of Plaintiff's rescission rights due to his incarceration and involuntary act of quit-claiming the deed to his co-purchaser. (Id. ¶ 113.)

Here, Plaintiff alleges that he did not discover the alleged violations until he received the Class Notice in June 2017 and reasons why discovery would not have been possible. Tarsadia Defendants merely assert that Plaintiff knew about or should have discovered by reasonable diligence all facts that constituted the alleged ILSA violations as of May 18, 2006 but do not provide any supporting facts to support their conclusion. First, Tarsadia Defendants have not carried their burden in demonstrating that Plaintiff discovered the facts or should have discovered with reasonable diligence facts to support a cause of action under ILSA on May 18, 2006. Second, the question of when Plaintiff was on notice about Tarsadia Defendants' alleged failure to disclose and intentionally concealing the buyers' two year right to rescind for purposes of applying the discovery

12

rule is a question of fact not amenable on a motion to dismiss.  See Kramas v. Security Gas & Oil Co., Inc., 672 F.2d 766, 770 (9th Cir. 1982) (fact questions are usually involved determining when a plaintiff discovered the violation); Toombs v. Leone, 777 F.2d 465, 468 n. 4 (9th Cir. 1985) (finding that unresolved fact questions precluded disposition of the section 12(2) claim on statute of limitations grounds); see also Rafton v. Rydex Series Funds, No. 10cv1171-LHK, 2011 WL 31114, at *9 (N.D. Cal. Jan. 5, 2011) ("the determination of inquiry notice is 'fact intensive' and is usually not appropriate at the pleading stage").  Therefore, the Court concludes it is not apparent from the allegations in the FAC that the ILSA anti-fraud claims are time barred.  Accordingly, at this early stage, the Court DENIES Tarsadia Defendants' motion to dismiss the anti-fraud provisions of ILSA based on the statute of limitations.

### b.    Fraud and California Securities Statute of Limitations

The FAC alleges claims of fraud and violations of California Corporations Code sections 25401, 25501, 25504.1.[5]  (Dkt. No. 24 FAC ¶¶ 134-137.)  In California, an action for fraud has a three-year statute of limitations and is "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. § 338(d).  On the state securities claims, the statute of limitations expires "five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire."  Cal. Corp. Code § 25506.  Section 25506's discovery refers to inquiry notice rather than actual notice.  Deveny v. Entropin, Inc., 139 Cal. App. 4th 408, 422-23 (2006).

---

[5] The Court notes Tarsadia Defendants do not move to dismiss the federal securities claim based on statute of limitations.

3:18-cv-2290-GPC-KSC

Tarsadia Defendants argue that the fraud cause of action is barred by the three year statute of limitations because Plaintiff knew or should have been able to discovery by reasonable diligence all the facts that constituted the ILSA violations on May 18, 2006 when he signed the Purchase Contract, and the securities fraud claims are barred by the two and five year statute of limitations because the limitations period began to run on May 18, 2006, and expired on May 18, 2009 or May 18, 2011.  Because Plaintiff filed his complaint in 2018, his claims are not timely.

Contrary to the federal discovery rule, under the California discovery rule, as it relates to the fraud causes of action, the statute of limitations begins to run when a plaintiff "suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her."  Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988); Norgart v. The Upjohn Co., 21 Cal. 4th 383, 397 (1999) ("the plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements"); see also O'Connor v. Boeing N. American, Inc., 311 F.3d 1139, 1148 (9th Cir. 2002) (noting difference between California and federal discovery rule and "reject[ing] an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim.").  In California, the statute of limitations begins once "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . ."  Jolly, 44 Cal. 3d at 1110-11 (internal citation and quotation marks omitted).  Once on inquiry, the plaintiff has an obligation to discover facts and cannot sit on his rights but must go find them himself.  Id. at 1111.

In order for the discovery rule to delay the accrual of a cause of action, a complaint must plead facts to "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (quoting McKelvey v. Boeing N. American, Inc., 74 Cal. App. 4th 151, 160 (1999)).  The plaintiff "must conduct a reasonable investigation of

14

all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." Id. at 808-09.

As to the first factor, the FAC alleges that Plaintiff discovered the alleged violations in June 2017 when he received the Class Notice but the FAC is devoid of any allegation that he conducted any investigation of potential causes of his injury prior to that time. He claims that his incarceration is an extraordinary circumstance[6] beyond his control but provides no caselaw in support. Despite his incarceration, he has not alleged he made any diligent efforts to investigate.[7] On this basis, the Court GRANTS Tarsadia Defendants' motion to dismiss for failing to allege that California's discovery rule applies to his state law causes of action for fraud and securities fraud.

As to the five-year statute of limitations under section 25506, Plaintiff relies on California Civil Procedure Code section 352.1 that the statute of limitations is tolled for up to two years during imprisonment, Cal. Civ. Proc. Code § 352.1(a) (If a person entitled to bring an action . . . *at the time the cause of action accrued*, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.") (emphasis added), but the tolling

---

[6] Extraordinary circumstance is used to demonstrate the application of equitable tolling. For equitable tolling to apply, Plaintiff must demonstrate "some extraordinary circumstance stood in his way" and prevented timely filing. Holland v. Florida, 560 U.S. 631 (2010). In the habeas context, ignorance of the law or limited legal knowledge do not constitute extraordinary circumstances. Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (an inmates "ignorance of the law" and "lack of legal sophistication" is not an extraordinary circumstance warranting equitable tolling). However, here, the Court is considering application of the discovery rule under California law, not equitable tolling.

[7] The Court notes that the FAC alleges that "Plaintiff reluctantly closed escrow in the late summer or fall of 2007." (Dkt. No. 24, FAC ¶ 27.) It is not clear why Plaintiff was reluctant to close escrow and whether his reluctance constitutes suspicion of some wrongdoing.

15

applies only when Plaintiff was in prison at the time the cause of action accrued. Here, Plaintiff was imprisoned on May 24, 2009. If the cause of action accrued either on May 18, 2006, when the Purchase Contract was signed, as Tarsadia Defendants assert, or August 2007, when the closing documents were completed, which Plaintiff appears to assert may be the accrual date for some of his causes of action, Plaintiff was not yet incarcerated. Therefore, section 352.1 does not support Plaintiff's argument that the fraud causes of action are timely.

Furthermore, if "five years after the act or transaction constituting the violation" occurred on May 18, 2006, as Tarsadia Defendants assert, or August 2007, as Plaintiff claims, his state securities claims are barred because the five year period is a strict limit that may not be tolled. In re Verisign, Inc. v. Derivative Litig., 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (citing SEC v. Seaboard Corp., 677 F.2d 1301, 1308 (9th Cir. 1982)); KKMB, LLC v. Khader, Case No. CV 18-5170-GW(JPRx), 2018 WL 6012225, at *6 (C.D. Cal. Oct. 4, 2018) (referencing section 25506(b) as an absolute limitation period). Because section 25506 applies to whichever date expires first, based on Plaintiff's argument that he did not discover the cause of action until June 2017[8], the earliest expiration date for the statute of limitations would have been the five year absolute statute of limitations accruing in August 2007 and expiring in August 2012.

American Pipe would not save the state securities claims. In American Pipe, the United States Supreme Court held that commencement of a purported class action "tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action

---

[8] The Court questions Plaintiff's claim that he did not discover the securities claims until June 2017 when he received Class Notice of the Beaver action. The Beaver action did not involve securities fraud claims.

status." 414 U.S. 538, 553 (1974) (class action on federal statutes of Sherman Act, Clayton Act and False Claims Act). This rule was extended in <u>Crown, Cork</u> to allow tolling where plaintiffs sought to file an entirely new action and the statute of limitations is tolled for all members of the class "until class certification is denied." <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345, 354 (1983). Similarly, when certification has been granted, the statute begins running anew from the date when the class member exercises the right to opt out because before this time, the class member is deemed to be actively prosecuting her rights. <u>See</u> <u>Appleton Electric Co. v. Graves Truck Line, Inc.</u>, 635 F.2d 603, 608-10 (7th Cir. 1980), <u>cert. denied</u>, 451 U.S. 976 (1981); <u>Wood v. Combustion Engineering, Inc.</u>, 643 F.2d 339 (5th Cir. 1981). However, <u>American Pipe</u> does not apply to toll the securities causes of action when the <u>Beaver</u> action was filed on May 18, 2011, as these securities claims were not causes of action in that case. <u>See</u> <u>Johnson v. Railway Express Agency, Inc.</u>, 421 U.S. 454, 467 (1975) (tolling in <u>American Pipe</u> "depended heavily on the fact that (the prior) filings involved exactly the same cause of action subsequently asserted.").

Accordingly, based on the allegations in the FAC, the Court GRANTS Tarsadia Defendants' motion to dismiss the fraud with leave to amend and GRANTS Tarsadia Defendants' motion to dismiss the state securities causes of action as time barred.

### c.   **Negligence**

The FAC alleges a negligence per se claim based on violations of the disclosure provision of ILSA and arises from § 1703(d)(2) and § 1703(a)(1)(C). (Dkt. No. 24, FAC ¶¶ 46, 48, 56 69, 72, 73, 74, 147-153). Violations of the disclosure provisions must be brought "within three years after the signing of the contract. . . ." 15 U.S.C. §1711(a)(1) & (b).

The elements of a negligence cause of action are: (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the

3:18-cv-2290-GPC-KSC

resulting injury.  <u>Ladd v. County of San Mateo</u>, 12 Cal. 4th 913, 917 (1996).  Because the negligence cause of action is based on a violation of a federal statute, the statute or regulation may be adopted as a standard of care in a negligence action.  <u>Di Rosa v. Showa Denko K.K.</u>, 44 Cal. App. 4th 799, 808 (1996).  In this case, Plaintiffs have asserted a per se negligence theory based on Tarsadia Defendants' violation of ILSA.  Plaintiffs identify three duties that were violated: (1) a duty to disclose Plaintiffs' two-year right to rescind in the Public Report; (2) a duty to replace the language in the Contract concerning the three-day right to rescind with language disclosing this two-year right, and (3) a duty to otherwise disclose to Plaintiffs their two-year right to rescind.  (Dkt. No. 24, FAC ¶ 148.)

In the Court's prior order in <u>Beaver</u>, based on the exact same negligence allegation, it determined that the negligence per se theory of liability was dependent on an underlying statutory violation, (11cv1842, Dkt. No. 153 at 35 (the "presumption arising from the doctrine of negligence per se is dependent and requires an analysis of the underlying causes of action pursuant to 15 U.S.C. § 1703(a)(1)(c) and 15 U.S.C. § 1703(d)(2).").)  Because the plaintiffs, in the <u>Beaver</u> action conceded that the causes of action under §§ 1703(a)(1)(C) and (d)(2) were time barred, the negligence per se cause of action necessarily failed.  (<u>See</u> Case No. 11cv1842, Dkt. No. 20 at 5.)

In opposition, Plaintiff does not dispute Tarsadia Defendants' argument and it is not clear whether Plaintiff acknowledges that the claims under §§ 1703(a)(1)(C) and (d)(2) are time barred.  In any event, to the extent Plaintiff did not oppose the argument that the negligence cause of action is time barred, the Court GRANTS Tarsadia Defendants' motion to dismiss.

### d.     UCL Statute of Limitations

In this case, the UCL "unlawful prong" claim is based on violations of ILSA, the state securities laws and Rule 10b of the 1934 Securities Exchange Act.  (Dkt. No. 24,

3:18-cv-2290-GPC-KSC

FAC ¶ 156.)  The FAC also alleges claims under the "unfair" and "fraudulent" prongs of the UCL.  (Id. ¶¶ 155, 158.)

The Tarsadia Defendants argue that claims under the "unlawful" prong of the UCL for violations of ILSA, and federal and state securities laws by failing to provide the disclosures or registering the agreements as securities are barred by the four-year statute of limitations.  In Beaver, the Ninth Circuit held that the UCL cause of action has a four-year statute of limitations and is governed by common law accrual rules looking at when the harm was completed.  The plaintiffs in Beaver claimed the harm was completed in the fall of 2007 when they were required to close escrow and when they suffered cognizable financial harm.  Beaver, 816 F.3d at 1178.

The UCL statute of limitations provides, "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment."  Cal. Bus. & Prof. Code § 17208.  The discovery rule applies to the UCL.  See Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1198 (2013) ("the UCL is governed by common law accrual rules to the same extent as any other statute."); Cover v. Windsor Surry Co., No. 14-cv-5262-WHO, 2015 WL 4396215, at *3 (N.D. Cal. July 15, 2015) ("Accordingly, I am bound by Aryeh . . . and I conclude that the discovery rule is available to toll the statute of limitations on [Plaintiff's] UCL claim."); Plumlee v. Pfizer, Inc., Case No. 13cv414 LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("delayed discovery rule is available to toll the statute of limitations under the . . . UCL.").

As discussed above, to allege the application of the California discovery rule, Plaintiff must allege "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  Fox, 35 Cal. 4th at 808.  Because the Court concluded Plaintiff did not allege the second factor, that he made a reasonably

diligent effort to investigate yet was unable to make a discovery, on this basis, the Court GRANTS Tarsadia Defendants' motion to dismiss the UCL claim.

## 2. Tolling Arguments

Alternatively, Plaintiff submits several tolling theories but does not differentiate which tolling argument applies to which cause of action as some tolling theories only apply to federal claims and others apply only to state law claims. Plaintiff alleges the following theories: 1) Rule 15 relation back doctrine such that his FAC relates back to the original complaint in the <u>Beaver</u> case on May 18, 2011; 2) imprisonment tolling under California Civil Procedure Code section 352.1; 3) the class action tolling rule under <u>American Pipe</u> and <u>Crown, Cork & Seal</u> and during the time he attempted to file the same suit against Defendants in Colorado district court; 4) the continuous violation doctrine; 5) equitable tolling; and 6) equitable estoppel.

First, the Court concludes that the relation back rule under Rule 15 does not apply in this case. Rule 15(c)(1) provides that "an amendment to a pleading relates back to the date of the original pleading" when certain conditions are met. Fed. R. Civ. P. 15(c)(1). The rule allows a party to relate an amended pleading to an original pleading in the same action. Here, Plaintiff seeks relation-back of his FAC to a complaint in a different case. The Colorado District Court that considered Plaintiff's complaint held that Rule 15 does not apply to a separately filed claim. <u>See</u> <u>Brooks v. Tarsadia Hotels</u>, District of Colorado, Case No. 17cv3172-PAB, KMT, Dkt. No. 68 at p. 9-10, Mar. 11, 2019) (citing <u>Benge v. United States</u>, 17 F.3d 1286, 1288 (10th Cir. 1994) (stating that a "separately filed claim, as opposed to an amendment or supplementary pleading, does not relate back to a previously filed claim")). Plaintiff does not provide any authority to the contrary.

Second, the imprisonment tolling provision under California Civil Procedure Code section 352.1 also does not appear to apply because Plaintiff must allege that he was imprisoned at the time his state law causes of action accrued. Section 352.1 allows a

20

plaintiff to file an action if "at the time the cause of action accrued" is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years." Cal. Civ. Proc. Code § 352.1. Thus, Plaintiff must be incarcerated when his claims accrued. See Groce v. Claudat, 603 F. App'x 581, 582 (9th Cir. 2015) ("The district court correctly determined that all of [the plaintiff's] claims . . . were time-barred because [the plaintiff] was not incarcerated when his claims accrued."). To the extent Plaintiff's claims that the discovery rule tolls the statute of limitations until June 2017, section 352.1 is not applicable as his state law claims would be timely. To the extent the state law causes of action accrued prior to his imprisonment on May 24, 2009, section 352.1 is also not applicable. It appears that the relevant accrual dates would be either May 18, 2006, the date the Purchase Contract was signed, or August 2007, when Plaintiff closed escrow on the Unit. Based on these potential accrual dates, section 352.1 would be inapplicable.

The Court declines to dismiss based on equitable tolling and equitable estoppel as these theories often depend on matters outside the pleadings and they "[are] not generally amenable to resolution on a Rule 12(b)(6) motion." Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993); see Shropshire v. Fred Rappoport Co., 294 F. Supp. 2d 1085, 1097-98 (N.D. Cal. 2003) ("Because all of these [equitable estoppel] factors turn on disputed facts, it is improper for the Court, on a Rule 12(b)(6) motion—the purpose of which is test the sufficiency of the pleadings—to resolve this issue.").

As to the remaining tolling issues under American Pipe/Crown Cork & Seal, and the continuous violation doctrine, the Court declines to address them as not fully briefed. The Court notes that Tarsadia Defendants do not address the continuous violation doctrine in their reply. If the Court determines that the last act constituting the violation occurred in August 2007, then with the application of American Pipe/Crown Cork & Seal

21

tolling, Plaintiff's UCL claims may be timely. Tarsadia Defendants summarily argue that American Pipe tolling does not apply to the state law causes of action; however, California court have applied American Pipe to state law causes of action under certain circumstances. See Falk v. Children's Hospital Los Angeles, 237 Cal. App. 4th 1454 (2015) (applying American Pipe tolling to some cause of actions and not others). Because these complex and fact specific tolling issues were not fully briefed, the Court declines to consider them at this time.

Because it is not clear that Plaintiff's allegations could not be amended to show that he is entitled to certain theories of tolling, a statute of limitations dismissal would be improper. In sum, the Court GRANTS in part and DENIES in part Tarsadia Defendants' motion to dismiss based on the statute of limitations with leave to amend.

### 3. Rule 12(b)(6) - ILSA and Fraud Claims

Tarsadia Defendants contend that the ILSA and fraud claims should be dismissed based on the Court's prior decision in Beaver v. Tarsadia Hotels, 978 F. Supp. 2d 1124 (S.D. Cal. 2013) where the Court determined, on summary judgment, that the evidence did not demonstrate that Tarsadia Defendants knew the representations or affirmative representations were false when made or that Tarsadia Defendants had an intent to deceive Plaintiffs. However, the Court's ruling was on summary judgment after discovery had been completed and based on the facts alleged in the TAC of Case No. 11cv1842.

Here, on a motion to dismiss on a similar but not identical complaint, the Court looks to the allegations in the FAC to determine if Plaintiff has alleged the Tarsadia Defendants knew the representations were false when they were made or had an intent to deceive Plaintiff. Tarsadia Defendants reliance on the Court's prior summary judgment ruling in another case with different named plaintiffs is without merit and cannot be the basis for dismissal of the FAC in this case. Because Tarsadia Defendants have failed to

22

demonstrate that the allegations in the FAC are deficiently pled, the Court DENIES Tarsadia Defendants' motion to dismiss on the ILSA and fraud causes of action. While Plaintiff, with discovery, may not ultimately be able to demonstrate an issue of fact whether Tarsadia Defendants knew the representations were false at the time they were made, at this early stage of the proceeding, the Court cannot dismiss the FAC based on a summary judgment ruling in the <u>Beaver</u> case.

### 4. Rule 9(b) – Fraud, Negligence, ILSA and Securities Fraud Claims

Finally, Tarsadia Defendants argue that the claims under ILSA, securities fraud, fraud and negligence must be dismissed for failure to comply with Rule 9(b) because Plaintiff has not sufficiently pled causation, which is a necessary element of all his claims, and also justifiable reliance. Plaintiff does not address these arguments in his opposition.

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." <u>Gil v. Bank of Am., N.A.</u>, 138 Cal. App. 4th 1371, 1381 (2006). For an ILSA fraud claim, courts apply California's fraud standard. <u>Irving v. Lennar Corp.</u>, No. Civ. S-12-290 KJM EFB, 2013 WL 1308712, at *10 (E.D. Cal. Apr. 1, 2013) (applying California fraud standard on ILSA anti-fraud claim) (citing <u>Lazar v. Superior Ct.</u>, 12 Cal. 4th 631, 638 (1996)); <u>Dexter v. Lake Creek Corp.</u>, No. 7:10-cv-226-D, 2013 WL 1898381, at *6 (May 7, 2013) (elements of state fraud cause of action applicable to ILSA's anti-fraud provision). But under ILSA, a plaintiff need not demonstrate a showing of reliance. <u>Keanneally v. Bank of Nova Scotia</u>, 711 F. Supp. 2d 1174, 1186 (S.D. Cal. 2010); <u>see also Irving</u>, 2013 WL 1308712, at *11. Under § 10(b)[9], a plaintiff must allege "(1) a

---

[9] Tarsadia Defendants do not argue that the state securities fraud claim should be dismissed under Rule 9(b). (Dkt. No. 27-1 at 22-23.)

3:18-cv-2290-GPC-KSC

material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 563 U.S. 27, 37-38 (2011) (internal quotation omitted). The elements of a negligence cause of action are: (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury. <u>Ladd v. County of San Mateo</u>, 12 Cal. 4th 913, 917 (1996).

The FAC alleges that Defendant's fraudulent concealment prevented him from timely exercising rescission rights and seeking other legal options. (Dkt. No. 24, FAC ¶ 114.) He claims that if he had been allowed to rescind, he would not have closed on the property and would not have incurred damages of his loss of $50,000 which he could have used to hire an attorney to uncover Defendants' wrongful conduct or would have been able to pay his attorney to prevent a default judgment of $18 million entered against him in June 2008, would not have been sent to prison and not be currently paying $40,800 monthly interest penalty on an illegally induced plead. (<u>Id.</u> ¶¶ 114-116.) The Court concludes these are not conclusory allegations of causation and satisfy the particularity requirement of Rule 9(b).

As for justifiable reliance, in <u>Beaver</u>, the Court held that the plaintiffs sufficiently alleged reliance by claiming "they relied on Defendants' misleading representations regarding their right to rescind, which caused them to miss the opportunity to timely exercise their right to rescind under the ILSA." (Case No. 11cv 1842, Dkt. No. 34 at 7.) Here, similarly, the FAC alleges that he relied on the material misstatements or wrongful omissions and had Plaintiff been informed of his two-year rescission rights, he would not closed on the Unit or would not have quit claimed his deed to his co-purchaser in early 2008 and would have rescinded his Contracts and recovered his purchase money. (Dkt.

No. 24, FAC ¶¶ 109, 115, 144.)  Plaintiff sufficiently alleges justifiable reliance.  The Court DENIES Defendants' motion to dismiss pursuant to Rule 9(b).

In sum, the Court GRANTS in part and DENIES in part Tarsadia Defendants' motion to dismiss on the statute of limitations grounds and DENIES Tarsadia Defendants' motion to dismiss pursuant to Rule 12(b)(6) and Rule 9.[10]

## D.    Playground Destination's Motion to Dismiss

### 1.    ILSA and Fraud

Playground argues that the first cause of action for ILSA fraud violations and third cause of action for fraud fail because the FAC does not sufficiently plead Playground's knowledge of the non-disclosure of the two-year rescission right relying on the Court's ruling in the Beaver case filed on May 12, 2012.  (Case No. 11cv1842, Dkt. No. 34.) Plaintiff argues that the facts supporting his claims differ from those in the Beaver case.

Plaintiff alleges violations of the anti-fraud provisions of ILSA, 15 U.S.C. §§ 1703(a)(2)(A), (B), and (C).  In California, a plaintiff alleging fraud must show "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage."  Ryder v. Lightstorm Entm't, Inc., 246 Cal. App. 4th 1064, 1079 (2016) (internal quotations omitted).  California's fraud standard applies to ILSA's anti-fraud statute except there is no need to demonstrate reliance for violations of the anti-fraud provisions of the ILSA.  See Irving, 2013 WL 1308712, at *10, 11 (applying

---

[10] Additionally, Tarsadia Defendants argue that the federal and state securities claims are barred by the Ninth Circuit ruling in Salameh that the transactions at issue did not constitute a "security."  726 F.3d at 1132.  While Tarsadia Defendants claim that the securities law claims in the Salameh and Brooks case are "identical" they have not claimed or demonstrated that the factual assertions to support the claims are identical.  Accordingly, the Court declines to rely on the Salameh ruling on Tarsadia Defendants' motion to dismiss.

California fraud standard on ILSA anti-fraud claim); <u>Keanneally</u>, 711 F. Supp. 2d at 1186.

The FAC alleges that Playground failed to disclose the rescission provisions in the sales documents and misled Plaintiff about his rescission rights. Playground was the real estate broker for Hard Rock acting as an agent for the Defendants. (Dkt. No. 24, FAC ¶ 20.) Playground developed marketing materials that threatened to take Plaintiff's $50,000 deposit if he did not close on his unit to further develop Tarsadia Defendants' scheme. (<u>Id.</u> ¶ 43.) Playground, as a real estate broker, is well versed in ILSA's disclosure obligations and the anti-fraud provisions of state and federal laws. (<u>Id.</u> ¶ 68.) Tarsadia Defendants provided the standardized contract and the Public Report from the DRE to Playground, their real estate broker. (<u>Id.</u> ¶ 94.) Around May 5, 2006, Playground distributed to prospective buyers a "Perspectives and Prices" publication which provided drawings of the Units and the prices. (<u>Id.</u> ¶ 95.) Playground, in its capacity as real estate broker, had a statutory duty to disclose all facts known to it that materially affects "the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties" as provided in California Civil Code section 2079.16. (<u>Id.</u> ¶ 96.) A seller has a duty to disclose to buyers any material facts affecting the value or desirability of the property. (<u>Id.</u> ¶ 97.) According to Plaintiff, Playground has to have known of this right as well, yet failed to disclose it to Plaintiff, or "consciously chose to ignore the fact that Developer Defendants were engaged in a scheme to ensure sales of the condos at the Hard Rock could not be rescinded." (<u>Id.</u> ¶ 98.) Around August 2007, Playground distributed the Closing Notices that informed the purchasers that they would lose their deposits if they did not close by the end of August. (<u>Id.</u> ¶ 101.) Playground wrongfully mislead buyers to believe they would lose their deposits if they did not close. (<u>Id.</u> ¶ 108.) Playground distributed the Closing Notice with the full knowledge and consent of Tarsadia Defendants. (<u>Id.</u> ¶ 102.)

26

By distributing the Closing Notice, Playground perpetuated Tarsadia Defendants' scheme and their own interest. (Id. ¶ 102.) The FAC then summarily alleges that "Defendants knowingly and willingly devised and carried out a common plan, scheme or artifice to defraud Plaintiff by purposefully omitting the two year right of rescission from the Contract and the Public Report and instead intentionally misrepresenting in the Contract that only a three-day right of rescission existed." (Id. ¶ 107.)

In its prior order in Beaver, based on almost identical allegations concerning knowledge, (Compare 11cv1842, Dkt. No. 21, SAC ¶¶ 63-65, 67-71, 73-74 with Dkt. No. 24, FAC ¶¶ 93-95; 100-105, 107-109), the Court concluded that the plaintiffs' theory of knowledge as to Playground was imputing Tarsadia Defendants' knowledge and concealment of the buyers' right to rescind onto Playground based on California Civil Code section 2332.[11] (Case No. 11cv1842, Dkt. No. 34 at 6.) However, the Court concluded that section 2332 only imputes the agent's knowledge to the principal and not the reverse. (Id.) Similarly, in this case, to the extent Plaintiff alleges Playground's knowledge is based on Tarsadia Defendants' knowledge, the Court concludes that Plaintiff has not sufficiently alleged Playground's knowledge as to his rescission rights.

In opposition, Plaintiff contends that he has asserted additional misrepresentations made by Playground that were not alleged in the Beaver case and have nothing to do with rescission rights. He alleges that Defendants had Plaintiff prepare a "Tarsadia's Optional Rental Management Program FAQ" where they knowingly and materially assisted each other in representing that investors were not required to participate in the RMA and that the decision was voluntary but in fact that representation was false as investors were

---

[11] "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Cal. Civ. Code § 2332.

mandated to participate in the RMA.  (Dkt. No. 24, FAC ¶¶ 24, 142.)  They also knowingly and materially assisted each other in misrepresenting that the Hard Rock guests would be placed in a consistent rotational system that would "rent all suites equitably" but there was no way to live up to this representation, and this representation induced Plaintiff to buy the condominium.  (Id. ¶¶ 34-35, 143.)  Instead, Defendants rented the rooms that generated the most income and they had no system to ensure all units would be rented equitably.  (Id.)  He also argues that Defendants knew that the liquidated damages provision, which allowed them to retain the $50,000 deposit, was unreasonable but they still threatened purchasers with the loss of their deposit if they did not close.  (Id. ¶¶ 74, 75 101.)

First, these additional facts do not appear to be the bases of his claims under the fraud or ILSA causes of action.  Therefore, Plaintiff's arguments in opposition do not bar dismissal of the FAC for the fraud causes of action for lack of knowledge.  To the extent Plaintiff seeks to add additional allegations, he may do so in a Second Amended Complaint ("SAC").  Moreover, as noted by Playground, many of these additional allegations refer to "Defendants" generally without indicating which Defendant was involved in which misrepresentation.  If Plaintiff files a SAC, he shall indicate which Defendant made each of the alleged misrepresentations and provide sufficient facts to support a reasonable inference that Playground had knowledge about these misrepresentations.

As currently plead, the FAC fails to allege facts to permit a reasonable inference that Playground knew of the disclosure requirements of ILSA.  See Iqbal, 556 U.S. at 678.  Accordingly, the Court GRANTS Playground's motion to dismiss the first and third cause of action.

### 2.      Federal and State Securities

3:18-cv-2290-GPC-KSC

Playground argues that because Plaintiff failed to plead knowledge of the alleged misrepresentations or omissions, he cannot state a claim under Section 10(b) of the Securities Exchange Act and under California Corporations Code sections 25401, 25501, 25504.1 as these provisions require scienter as an element. Plaintiff argues that scienter is not required to plead a violation of sections 25401 and 25501.

As stated above, under § 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc., 563 U.S. at 37-38 (internal quotation omitted). Scienter is "the defendant's intention 'to deceive, manipulate, or defraud.'" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007). Corporations Code section 22504.1 also provides "any person who materially assists in any violation of Section . . . 25401, . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." Cal. Corp. Code § 25504.1. Section 25504.1 requires a showing that the defendant had an "intent to deceive or defraud." Orloff v. Allman, 819 F.2d 904, 907 (9th Cir. 1987) overruled on other grounds by Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

Plaintiff does not dispute that scienter must be alleged for a violation of § 10(b) and section 25504.1. Therefore, the Court GRANTS Playground's motion to dismiss for failing to sufficiently allege scienter on these claims.

Corporations Code section 25401 prohibits the sale of securities "by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401. Corporations Code section 25501 creates a private cause of action for violation

29

of section 25401, with exceptions for instances where the plaintiff knew about the facts of the untruth or the defendant exercised reasonable care and did not know of the untruth or omission.  Cal. Corp. Code § 25501.

In opposition, Plaintiff argues that scienter is not required to assert a violation of California securities law under sections 25401 and 25501.  Playground does not address this argument in its reply.  The Court agrees with Plaintiff that scienter is not an element of sections 25401 and 25501.  See I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC, No. C-03-1561-MMC, 2005 WL 3590984, at *27 (N.D. Cal. Dec. 30, 2005) (violations of sections 25401 and 25501 does not require proof of intent); BayStar Capital Mgmt. LLC v. Core Pacific Yamaichi Int'l (H.K.) Ltd., CV 05–1091 ABC (CWx), 2007 WL 9711373, at *4 (C.D. Cal. Apr. 16, 2007) (reliance and scienter need not be shown for section 25501).  Thus, the Court DENIES Playground's motion to dismiss the state securities claims under sections 25401 and 25501 for failing to allege scienter.

Next, Playground contends that the federal and state securities law claims also fail because the transactions do not constitute a security as the Ninth Circuit held in Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1132 (9th Cir. 2013) and any claims would be barred by the relevant statutes of repose as the Court held in its order granting the defendants' motion to dismiss the state and federal securities claims filed on March 22, 2011.  (Case No. 09cv2739, Dkt. No. 158 at 13-15.)  However, while the SAC in Salameh may be similar to the FAC in this case, they are not identical and Playground fails to point to the deficiencies in the FAC as required on a motion to dismiss.

Section 3(a)(10) of the Securities Exchange Act defines "security" as *inter alia*, a "note, stock, treasury stock, bond, [or] investment contract."  15 U.S.C. § 78c(a)(10). Congress defined "security" to be "sufficiently broad to encompass virtually any instrument that might be sold as an investment" but did not "intend to provide a broad federal remedy for all fraud."  Reves v. Ernst & Young, 494 U.S. 45, 61 (1990) (internal

quotations omitted).   Courts should look not to the form but to the "economic realities of the transaction."   United Hous. Fdn. v. Forman, 421 U.S. 837, 838 (1975).

In Howey, the Court defined whether an investment contract is a security under the Securities Act and held that an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."   SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946).   Howey's three-part test requires "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others."   SEC v. Rubera, 350 F.3d 1084, 1090 (9th Cir. 2003) (internal quotation marks omitted).

In Salameh, the Ninth Circuit, relying on its *en banc* ruling in Hocking v. Dubois, 885 F.2d 885 F.2d 1447 (9th Cir. 1989), held that the sale of the condos at the Hard Rock and the later RMA together did not constitute the sale of a security because the plaintiffs had not alleged that the Purchase Contracts and the RMAs were offered as a package.   Id. at 1131.   The Ninth Circuit noted that "Plaintiffs allege no facts showing that the Purchase Contracts and the Rental Management Agreements were offered as a package. They do not allege that the Rental Management Agreement was promoted at the time of the sale. They do not allege that Defendants told them that the Rental Management Agreement would be forthcoming. They do not allege that they were told that the Rental Management Agreement would result in investment-like profits."   Id.   They also did not allege when the respective agreements were signed.   Id.   Instead, the defendants informed the court that the RMAs were executed 8-15 months after the Purchase Contract.   Id.

Taking the Ninth Circuit ruling into consideration and attempting to cure the deficiencies noted in the opinion, Plaintiff summarily alleges that the Purchase Contract,

OA[12] and RMA were offered as a single package even though they were offered as independent documents. (Dkt. No. 24, FAC ¶ 25.) He claims that Defendants intentionally separated the OA and the RMA from the Purchase Contract in order to avoid the securities laws. (Id.) All three documents induced Plaintiff into buying the condominium. (Id.) Even though he read the disclaimer that the purchase of the Unit was not an investment, the economic and practical realities established the transaction was an investment and constituted a sale of a security. (Id. ¶ 22.) The FAC also asserts that whether the investors made money depended on the managerial efforts of Defendants. (Id. ¶ 32.) Despite Plaintiff's attempt to cure the deficiencies noted by the Ninth Circuit, the alleged facts are mere "threadbare recitals" of the elements of a "security" under <u>Howey</u> and <u>Hocking</u>, but no additional facts are presented to create a reasonable inference that the Purchase Contract, the OA, and the RMA were securities. (<u>See</u> Dkt. No. 24, FAC ¶¶ 21-25.) In addition, Plaintiff does not allege when he signed the RMA or OA. Plaintiff's facts are insufficient to allege a security. Accordingly, the Court GRANTS Playground's motion to dismiss the federal and state securities claims.

### 3. Negligence

The FAC alleges a negligence per se claim based on violations of the ILSA disclosure provisions pursuant to § 1703(d)(2) and § 1703(a)(1)(C). (Dkt. No. 24, FAC ¶¶ 46, 48, 56 69, 72, 73, 74, 147-153). These violations must be brought "within three years after the signing of the contract. . . ." 15 U.S.C. §§ 1711(a)(1) & (b).

Playground argues that because the negligence per se claim arises from the disclosure provisions of ILSA, they are time barred as the statute of limitations began to run on May 18, 2006 and expired on May 18, 2009. In response, Plaintiff does not appear to dispute Playground's argument but instead contends that his negligence per se

---

[12] The Ninth Circuit opinion did not address the OA as part of its ruling.

claims are not only based on ILSA's disclosure provisions but also Defendants' negligent misrepresentation that the RMA was not a mandatory condition of ownership, knowledge that rooms would not be placed into an equitable rotational system, and understanding that the liquidated damages provision was unreasonable. However, because Plaintiff does not dispute Playground's argument and the additional allegations he claims to support his negligence cause of action are not specifically asserted in the FAC on the negligence cause of action, the Court GRANTS Playground's motion to dismiss with leave to amend.

### 4. UCL

The UCL "unlawful prong" claim is based on violations of ILSA, the state securities laws, and Rule 10b of the 1934 Securities Exchange Act. (Dkt. No. 24, FAC ¶ 156.) The FAC also alleges claims under the "unfair" and "fraudulent" prongs of the UCL. (Id. ¶¶ 155, 158-59.)

The unlawful prong of the UCL incorporates "violations of other laws and treats them as unlawful practices." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). This prong creates an "independent action when a business practice violates some other law." Walker v. Countrywide Home Loans, Inc., 98 Cal. App. 4th 1158, 1169 (2002). A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action." Krantz v. BT Visual Images, 89 Cal. App. 4th 164, 178 (2001).

Playground argues that the unlawful prong based on violations of ILSA and federal and state securities laws fail to sufficiently allege its knowledge of the alleged omission in the Purchase Contract. Because the Court dismissed the ILSA and securities claims, the UCL cause of action based on these allegations necessarily fails, and the Court GRANTS Playground's motion to dismiss. See id.

Playground also argues that the unfair prong should also be dismissed because Plaintiff fails to allege facts to support "unfair" conduct. Plaintiff opposes.

A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 & n. 12 (1999) (applying "unfair" test to anti-competitive practices and not consumer actions). As the Court explained in the Beaver case, post-Cel-Tech, California appellate courts are divided as to which test of "unfair" applies to consumer cases. 29 F. Supp. 3d at 1314; see also Hodsdon v. Mars, Inc., 891 F.3d 857, 866 (9th Cir. 2018) (recent case noting the term "unfair" is still in flux in California courts). In Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit held that two tests, "the Cel–Tech test where the unfairness is tied to a "legislatively declared" policy, or the former balancing test under South Bay,[13] which involves balancing the harm to the consumer against the utility of the defendant's practices, would apply to consumer cases. Id. at 1315. In order to be a "legislatively declared" policy, there must be a "close nexus between the challenged act and the legislative policy." Hodsdon, 891 F.3d at 866 (citing Cel-Tech, 20 Cal. 4th at 187) (holding that for an act to be "unfair," it must "threaten[ ]" a violation of law or "violate[ ] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law").

In Beaver, the plaintiffs applied the tethering test arguing that its unfair claim is tied to Playground's violation of its statutory duty as a real estate agent to "disclose all facts known to the [it] materially affecting the value or desirability of the property that

---

[13] South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861 (1999).

are not known to, or within the diligent attention and observation of, the parties pursuant to Cal. Civ. Code § 2079.16." The Court granted Playground's motion for summary judgment concluding that the plaintiffs "do not allege or show that the failure to disclose or affirmative misrepresentation is predicated on a public policy and that the conduct threatened to violate the letter, policy, or spirit of the antitrust laws or that it harms competition. . . . Plaintiffs only argue that the unfair practices are tethered to the disclosure policies, not public policy." Id. at 1315. "Moreover, Plaintiffs have not alleged or demonstrated that such acts are against public policy, immoral, unethical, oppressive, or unscrupulous." Id. Even though the Court's order was on summary judgment, it noted that the plaintiffs did not even allege that the alleged conduct was predicated on a public policy.

Similarly, in this case, Plaintiff argues that the UCL claim is tethered to California Civil Code sections 2079.16(b) & (c) which requires Playground to act in an honest, fair dealing and good faith manner as well as disclosing all facts known to the agent that materially affects the value or desirability of the property under Civil Code section 2079.16. (Dkt. No. 32 at 11.) The FAC claims that Defendants concealed information Plaintiff was entitled to receive prior to closing, including his two year right to rescind and these actions were unfair because they offended established anti-fraud statutes and the harm Plaintiff suffered greatly outweighs any benefits associated with those practices. (Dkt. No. 24, FAC ¶ 158.) California has a legislative policy requiring that real estate brokers disclose all facts materially affecting the desirability or value of the property that are not known to, or within diligent attention and observation of the parties. (Id. ¶ 159.)

As in Beaver, Plaintiff, in this case, has not sufficiently alleged that the failure to disclose or misrepresentations are predicated on "legislatively declared" policy mandating a "close nexus between the challenged act and the legislative policy." See Hodsdon, 891 F.3d at 866. Accordingly, because Plaintiff has failed to allege facts to

35

support a claim under the "unfair" prong, the Court GRANTS Playground's motion to dismiss.

Finally, Playground contends that the FAC fails to plead a fraudulent or deceptive act because Plaintiff has not alleged Playground had a duty to disclose those undisclosed material facts. To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. Prakashpalan v. Engstrom, Lipscomb and Lack, 223 Cal. App. 4th 1105, 1134 (2014). But "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2007).

The Court agrees. Plaintiff relies on the real estate broker's duties under Civil Code section 2079.16 ("A Seller's agent . . .has the following affirmative obligations: . . . (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.") which requires knowledge of the alleged failure to disclose. Here, Plaintiff must allege that Playground knew about the ILSA disclosure provisions which the Court concluded above he has not sufficiently alleged. Accordingly, the Court GRANTS Playground's motion to dismiss the fraudulent prong of the UCL.

**E.    Leave to Amend**

Plaintiff seeks leave to amend to correct any deficiencies in the FAC. Tarsadia Defendants and Playground ask the Court to grant their motions to dismiss with prejudice without leave to amend as Plaintiff has had a couple of attempts to file a complaint without success. The Ninth Circuit has directed that "a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations." Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013). Here, as a pro per Plaintiff, the Court liberally construes the FAC, and concludes that leave to amend would

not be futile.  See Schreiber Distrib. Co., 806 F.2d at 1401.  The Court GRANTS Plaintiff leave to file a second amended complaint.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Tarsadia Defendants' motion to dismiss and GRANTS Playground's motion to dismiss.  Plaintiff is granted leave to file a second amended complaint and shall file it on or before **July 8, 2019.**

IT IS SO ORDERED.

Dated:  June 11, 2019

Hon. Gonzalo P. Curiel
United States District Judge

3:18-cv-2290-GPC-KSC