1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10
11   JASON BROOKS,                          Case No.:  3:18-cv-2290-GPC-KSC
     Inmate Booking No. 150014,
12                                          **ORDER:**
                            Plaintiff,
13                                          **1) GRANTING IN PART AND**
         vs.                                **DENYING IN PART TARSADIA**
14                                          **DEFENDANTS' MOTION TO**
     TARSADIA HOTELS; 5TH ROCK,             **DISMISS; AND**
15   LLC; MKP ONE, LLC; GASLAMP
     HOLDING, LLC; TUSHAR PATEL;            **2) GRANTING IN PART AND**
16   B.U. PATEL; GREGORY CASSERLY;          **DENYING IN PART**
     PLAYGROUND DESTINATION                 **PLAYGROUND'S MOTION TO**
17   PROPERTIES, INC.; DOES 1-50,           **DISMISS**
18                          Defendants.     **[Dkt. Nos. 48, 49.]**
19
20
21
22
23   Before the Court is Defendants Tarsadia Hotels, 5th Rock LLC, MKP One, LLC,
24   Gaslamp Holdings, LLC, Tushar Patel, B.U. Patel, and Gregory Casserly's motion to
25   dismiss the second amended complaint.  (Dkt. No. 48.)  Also before the Court is
26   Defendant Playground Destination Properties, Inc.'s motion to dismiss the second
27                                          1
28

amended complaint.  (Dkt. No. 49.)   Plaintiff filed oppositions to both motions.  (Dkt.

Nos. 51, 52.)  Replies were filed by the Defendants.  (Dkt. Nos. 53, 54.)  The Court finds

that the matter is appropriate for decision without oral argument pursuant to Local Civ. R.

7.1(d)(1).  Based on the reasoning below, the Court GRANTS in part and DENIES in part

Tarsadia Defendants' motion to dismiss and GRANTS in part and DENIES in part

Playground's motion to dismiss.

### Procedural Background

On September 25, 2018[1], Plaintiff Jason Brooks ("Plaintiff" or "Brooks"), a

prisoner proceeding *pro se* and *in forma pauperis,* filed the original complaint against

Defendants Tarsadia Hotels, 5th Rock, LLC, MKP One, LLC, Gaslamp Holdings, LLC,

Gregory Casserly, B.U. Patel, and Tushar Patel ("Tarsadia Defendants") as well as

Defendant Playground Destination Properties, Inc.  ("Playground") (collectively

"Defendants").  (Dkt. No. 1.)  On March 18, 2019, Plaintiff filed a first amended

complaint ("FAC") against Tarsadia Defendants and Playground alleging violations of

the anti-fraud provision of the Interstate Land Sales Disclosure Act ("ILSA"), 15 U.S.C.

§§ 1703(a)(2)(A), (B) and (C); violations of California Corporations Code sections

25401, 25501, 25504.1 and Rule 10b of the 1934 Securities Exchange Act; fraud;

negligence; and violations pursuant to California Business & Professions Codes sections

17200 *et seq*.  (Dkt. No. 24.)

---

[1] Under the prison mailbox rule, the Court deems the Complaint filed on the date Plaintiff signed the Complaint on September 25, 2018.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule in habeas petition context); see also Douglas v. Noelle, 567 F.3d 1103, 1107–1109 (9th Cir. 2009) (applying mailbox rule to § 1983 complaint); James v. Madison St. Jail, 122 F.3d 27, 28 (9th Cir. 1997) (per curiam) (applying mailbox rule to trust-account statements filed pursuant to 28 U.S.C. § 1915(a)(2)); Caldwell v. Amend, 30 F.3d 1199, 1201 (9th Cir. 1994) (mailbox rule applied to Rule 50(b) motion); Faile v. Upjohn Co., 988 F.2d 985, 989 (9th Cir. 1993) (mailbox rule applied to discovery responses).

On June 11, 2019, the Court granted in part and denied in part Tarsadia Defendants' motion to dismiss the FAC and granted Playground's motion to dismiss the FAC with leave to amend. (Dkt. No. 37.) On August 7, 2019, the Court denied Plaintiff's motion for reconsideration. (Dkt. No. 46.) On September 3, 2019, Plaintiff filed the operative second amended complaint, ("SAC"). (Dkt. No. 47.) Four causes of action are alleged for violations of the anti-fraud provisions of the ILSA pursuant to 15 U.S.C. §§ 1703(a)(2)(B) and (C); fraud; negligence; and violations pursuant to California Business & Professions Codes sections 17200 *et seq.* (Id.) Tarsadia Defendants and Playground filed their respective motions to dismiss the SAC, which are fully briefed. (Dkt. Nos. 48, 49, 51, 52, 53, 54.)

## Factual Background

On May 18, 2006[2], Plaintiff and Brian Thielen, as co-purchasers, entered into a Purchase Contract and Escrow Instruction ("Purchase Contract") with Defendants for the purchase of Unit 1042 at the newly constructed residential condominium unit called the Hard Rock Hotel & Condominium ("Hard Rock") located in San Diego. (Dkt. No. 47, SAC ¶ 5.) Specifically, Plaintiff claims that under ILSA, Defendants failed to disclose and intentionally concealed that buyers had an absolute right to rescind their Purchase Contracts within two years of the date of signing. (Id. ¶ 1.) He also contends that Defendants presented marketing materials containing known misstatements and omissions that inflated the desirability of the property and induced purchasers into buying their units, and "fail[ed] to obtain an exemption advisory opinion from ILSA Secretary

---

[2] In the SAC, Plaintiff claims he does not know the specific date when he signed the Purchase Contract but it was sometime after May 2006. (Dkt. No. 47, SAC ¶ 5.) This claim is in contradiction to the FAC where he alleges he signed the contract on May 18, 2006, (Dkt. No. 24, FAC ¶ 100), and incorporated by reference the Purchase Contract he signed which is dated May 18, 2006. (See Dkt. No. 17-3, Tarsadia Ds' RJN, Ex. A at 35-49.) Therefore, the Court relies on May 18, 2006 as the date that Plaintiff signed the Purchase Contact.

3

(*sic*) to fraudulently conceal their knowledge that the Hard Rock Project was subject to the mandates of the ILSA." (Id.) He claims he was falsely informed and induced to purchase the Unit because Tarsadia Defendants misrepresented they would manage the property through the Rental Management Agreement ("RMA") which he thought was voluntary, but it was not, and that Hard Rock guests would be positioned in a consistent "rotational" system that would "rent all suites equitably." (Id. ¶ 5.)

This case relates to a prior case that was before the Court and is now concluded. In the case, Beaver v. Tarsadia Hotels, Case No. 11cv1842-GPC(KSC), the purported class action plaintiffs filed an action on behalf of persons who purchased units at the Hard Rock Hotel between May 2006 and December 2007 alleging Defendants failed to disclose and intentionally concealed the plaintiffs' right to rescind their purchase contracts within two years of the date of signing the Purchase Contracts and made affirmative misrepresentations to prevent Plaintiffs from exercising the right. (Case No. 11cv1842, Dkt. No. 69, TAC.) In Beaver, the Third Amended Complaint ("TAC") alleged, *inter alia*, violations of the anti-fraud provisions of ILSA, 15 U.S.C. §§ 1703(a)(2)(A)-(C), fraud, negligence, and violation of California Business and Professions Code sections 17200 *et seq*. The Beaver case involved extensive motion practice which raised numerous novel issues. The Ninth Circuit affirmed the Court's order on reconsideration of the parties' cross-motions for summary judgment, Beaver v. Tarsadia Hotels, 29 F. Supp. 3d 1294 (S.D. Cal. 2014). Beaver v. Tarsadia Hotels, 816 F.3d 1170 (9th Cir. 2016). On remand, the case settled as a class action and the Court granted Plaintiffs' motion for final approval of class action settlement and judgment on September 28, 2017, Beaver v. Tarsadia Hotels, Case No. 11cv1842-GPC(KSC), 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017). In its order, the Court noted that one class member, Jason Brooks, who was a co-purchaser of Unit 1042, excluded himself from the

4

Class. Id. at *15. Brooks' SAC alleges the same causes of action and facts alleged in the Beaver case as well as newly added facts.

In the SAC, Brooks alleges that around 2005, Tarsadia Defendants, through 5th Rock, began to develop the Hard Rock, a residential condominium consisting of 420 units located at 205 Fifth Avenue in San Diego, CA. (Dkt. No. 47, SAC ¶ 35.) Defendants marketed the units through the Internet, marketing materials, brochures and verbal statements. (Id.) Playground was the real estate broker for the Hard Rock and acted as an "agent" of Tarsadia Defendants as that term is defined under the ILSA. (Id. ¶ 4.) Playground has been developing and marketing condominium-hotel units in the United States for decades and registered multiple projects with HUD and on information and belief, is well-versed in the ILSA disclosure obligations. (Id. ¶ 53.)

ILSA was enacted to protect consumers from fraud and abuse in the sale of subdivided lots, including condominium units, and requires developers and their agents to comply with certain registration and disclosure requirements. (Id. ¶ 7.) Developers and their agents must comply with ILSA unless they fall within an exemption. (Id. ¶ 8.) In this case, while Defendants understood that the Hard Rock was subject to ILSA's provisions and was not exempt, they fraudulently concealed this fact and used a false exemption declaration to cover up their scheme to shift all risk to the buyers. (Id. ¶ 8.) A buyer, despite any diligence, would never uncover whether or not the project was actually exempt from the ILSA because only the developer could obtain an advisory opinion from the ILSA Secretary under 24 C.F.R. § 1710.17. (Id. ¶ 9.)

Specifically, ILSA requires a developer to register a project with the U.S. Department of Housing and Urban Development ("HUD") and to provide buyers with an ILSA property report that discloses material facts regarding the sales transaction. (Id. ¶ 13.) If a developer does not obtain an ILSA property report to be distributed to buyers before they sign the purchase contract (or in the alternative, in California, where a

developer fails to provide buyers with an ILSA compliant Public Report issued by the Department of Real Estate ("DRE")), ILSA imposes a two-year right to rescind from the date of contract for the benefit of the buyers where the right to rescind must be disclosed in the purchase contract, 15 U.S.C. § 1703(c).  (Id.)

Plaintiff claims that Defendants failed to obtain an ILSA property report from HUD and obtained a Public Report from the DRE that was not ILSA compliant.  (Id. ¶ 14.)  The Purchase Contract failed to provide buyers notice of the two-year rescission right and instead asserted a three-day right to rescind.  (Id.)  They purposely ignored their disclosure obligations in order to avoid compliance with ILSA.  (Id.)  Moreover, Plaintiff claims that under 15 U.S.C. § 1703(d)(2) of ILSA, a developer is required to include, in the buyer default provision of the purchase contract, written notice of a 20-day opportunity for the buyer to remedy default or breach of contract.  (Id. ¶ 15.)  If such a notice is omitted, the buyer is entitled to an absolute two-year right to rescind his purchase agreement from the date he signed it.  (Id.)  Plaintiff did not receive this notice; therefore, he was entitled to an automatic two year right to rescind.  (Id.)  Plaintiff claims he received the "Final Subdivision Public Report, File No. 120249LA-F00" concerning the Hard Rock which was issued by the DRE on April 4, 2006 but it did not include the buyer's rescission rights under ILSA.  (Id. ¶ 16.)

Because Defendants failed to comply with their disclosure requirements under ILSA and concealed the two-year rescission rights, Defendants obtained money from Plaintiff by means of omitting the two-year rescission right in the contract and the Public Report in violation of 15 U.S.C. § 1703(a)(2)(B) and otherwise engaged in a practice or course of business that operated as a fraud upon Plaintiff in violation of 15 U.S.C. § 1703(a)(2)(C).  (Id. ¶ 17.)

Plaintiff additionally alleges that on June 20, 2007, David McCain, a purchaser, sought to rescind his purchase contract based on ILSA violations.  (Id. ¶¶ 9, 50.)

6

Playground's outside attorney and its representatives were all consulted before a memorandum dated July 6, 2007 was prepared to respond to McCain's letter. (Id. ¶ 50.) By submitting the response memorandum, according to Plaintiff, Defendants "affirmatively invoked ILSA exemption." (Id. ¶¶ 9, 19.) Once Defendants "invoked" the exemption under ILSA, Plaintiff claims they were required to obtain an exemption determination with the ILSA Secretary as mandated by 24 C.F.R. § 1710.15 or at a minimum, an exemption advisory opinion under 24 C.F.R. § 1710.17. (Id. ¶¶ 50, 72.) Because Defendants failed to do so, they continued to fraudulently conceal the fact that the Hard Rock was subject to the ILSA. (Id. ¶ 73.) Invoking the exemption refutes any assertion that Defendants did not know whether or not ILSA applied to the Hard Rock. (Id. ¶ 50.) Because Tarsadia Defendants understood the Hard Rock was not exempt under the ILSA, Tarsadia Defendants and Playground took deliberate action to avoid learning the truth, by even failing to obtain an advisory opinion from the ILSA Secretary under 24 C.F.R. § 1710.17. (Id. ¶ 51.) After the July 6, 2007 memorandum to Mr, McCain was drafted, Playground "carried a subjective belief that there was a high probability that the ILSA applied to the Hard Rock project and understood only the Developer Defendants could obtain confirmation of this invoked exemption; however, in order to close out their marketing of the project, prevent buyers from backing out of their purchases, thus ensuring Playgrounds success, Defendant Playground continued to make misrepresentations and omissions to buyers." (Id. ¶ 54.) The McCain letter alerted Defendants of their obligations under the ILSA but they continued to fraudulently conceal this fact by negligence, willful blindness and/or deliberate ignorance by refusing to obtain an exemption advisory opinion from the ILSA secretary under 24 C.F.R. § 1710.17. (Id. ¶ 91.) Moreover, because only a developer can obtain an exemption or advisory opinion, Plaintiff had no reason to suspect or ability to uncover that Defendants' claim of exemption was fraudulent. (Id. ¶ 19.)

7

Plaintiff was required to sign three agreements: (1) the Contract, (2) the Unit Management and Operating Agreement ("OA") and (3) the RMA. (Id. ¶ 85.) Tarsadia Defendants had Playground prepare a document entitled "Tarsadia's Optional Rental Management Program FAQ" where Defendants represented that investors were not required to participate in the RMA but that representation was false as the purchasers were mandated to participate in the RMA and this illusory option inflated the property's desirability and induced Plaintiff, in part, to buy the property. (Id. ¶ 86.)

The Purchase Contract and Public Report were provided to Playground by Tarsadia Defendants. (Id. ¶ 82.) Around August 2007, Playground distributed the Closing Notice that informed the purchasers that they would lose their deposits if they did not close by the end of August. (Id. ¶ 94.) Playground threatened the loss of the buyers' deposit to ensure occupancy rates of units would not diminish during the construction of the hotel and benefited from commissions on each sale by promoting the misrepresentation. (Id. ¶ 95.) Playground made a conscious decision to disseminate the Closing Notice a month after Tarsadia Defendants invoked the ILSA exemption. (Id. ¶ 96.)

In response to the Closing Notice, Plaintiff sought guidance from the Contract and the Public Report, which omitted his right to rescind. (Id. ¶ 98.) Believing he would lose his deposit, he reluctantly closed escrow in October 2007. (Id. ¶ 99.) He suffered from chronic ulcerative colitis and was placed in a medically induced coma beginning December 7, 2007. (Id. ¶ 100.) In January 2008, in the midst of his health crisis and his life collapsing around him, he quit claimed the deed of his 50% interest in the Unit to his co-purchaser in the event of his death. (Id.) Because he was denied the right to rescind, Plaintiff was forced to quit-claim the deed of the property. (Id. ¶ 17.)

Plaintiff had no reason to suspect that Defendants' representations in the Sales Agreements, Public Report, Closing Notice, FAQ and other communications concerning his rescission rights were false or misleading. (Id. ¶ 18.) Therefore, he did not know he

8

had been harmed until he received notice of the Class Action Settlement in the <u>Beaver</u> case in July 2017. (<u>Id.</u>) He could not have known that he had a complete cause of action based on just comparing the ILSA statute with the Contract and Public Report. (<u>Id.</u>) "No matter how diligent the Plaintiff was in trying to uncover the Defendants abuses – even if Plaintiff knew of the ILSA and asserted his right to recession (*sic*) prior to closing-because Defendants invoked exemption, as they had when purchaser David McCain sought to rescind his purchase contract in June 2007, Plaintiff would have no reason to suspect (or ability to uncover) that the representation made by Defendants claim of exemption under the ILSA was fraudulent." (<u>Id.</u> ¶ 19.)

Plaintiff was eventually imprisoned and has been incarcerated since May 24, 2009. (<u>Id.</u> ¶ 21.) In June 2017, Plaintiff was notified that he was a member of a class action lawsuit involving these exact claims and was unaware of being harmed by Defendants' conduct until that time. (<u>Id.</u>) He timely opted-out of the class action settlement on August 24, 2017. (<u>Id.</u> ¶ 1.)

If he had known of his right to rescind he would never have closed on the Unit and would not have lost his 50% interest in the property by quit-claiming the deed to his co-purchaser. (<u>Id.</u> ¶¶ 110, 111.) He was deprived use of the $50,000 deposit to continue paying his attorney to prevent a default judgment of $18 million against him in June 2008. (<u>Id.</u> ¶ 112.) He claims he did not respond to that lawsuit because he ran out of money to pay his attorneys at the time. (<u>Id.</u>) Therefore, he would have only incurred a $3.2 million judgment in the case instead of the $18 million judgment. (<u>Id.</u> ¶ 113.) He further claims that had Plaintiff been alerted to the ILSA after Defendants invoked the exemption in June 2007, he would have dissected the statute and learned that "scienter" has been "unconstitutionally omitted" from the Colorado Securities Act and he would never have accepted a plea in his criminal case and would have been exonerated. (<u>Id.</u> ¶ 115.) If he had been alerted to his rights under the ILSA in 2007, he would never have

been sent to prison and he would not be currently paying $50,000 monthly interest penalty on an "illegally induced plea". (Id. ¶ 117.) In sum, he seeks $35 million in damages. (Id. ¶ 118.)

Plaintiff inadvertently filed a complaint in the District Court for the District of Colorado on December 29, 2017, and the complaint was dismissed for improper venue on September 14, 2018. (Id. ¶ 34.) After conducting a review of the complaint, the Colorado district court also denied the Plaintiff's motion to transfer the case to this district. (Brooks v. Tarsadia Hotels, Civ. No. 17cv3172-PAB-KMT, Dkt. Nos. 64, 68 (D. Colo.).) The complaint in this case was filed on September 25, 2018. (Dkt. No. 1.)

## Discussion

### A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of

10

action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

**B.    Tarsadia Defendants' Motion to Dismiss**

On a motion to dismiss based on the statute of limitations, the Court must assess whether "the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.")). Because the statute of limitations is an affirmative defense, the "defendant has the burden of proving the action is time-barred." Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1020 (C.D. Cal. 2009) (citation omitted).

Tarsadia Defendants argue that the ILSA and fraud claims are barred by the three-year statute of limitations from the date of the Purchase Contract, May 18, 2006, and therefore, these causes of actions expired on May 18, 2009. They also argue that the negligence claim is barred by the three- year statute of limitations and expired on May 18, 2009. Finally, they assert the UCL claims are barred by the four-year statute of limitations which expired in October 2011. In response, Plaintiff argues that he did not and could not discover the alleged failure to disclose rescission rights under ILSA until June 2017 when he received the Beaver Class Action Settlement Notice. Therefore, certain tolling theories apply to make his claims timely.

The parties do not dispute that the statute of limitations expired on Plaintiff's causes of action either on May 18, 2009, three-year statute of limitations, or October 2011, four-year statute of limitations; however, it is Plaintiff's contention that tolling applies to save all four causes of action.

### 1. ILSA and Fraud Statute of Limitations

The SAC alleges violations of the ILSA anti-fraud provisions pursuant to 15 U.S.C. §§ 1703(a)(2)(B) and (C).[3]   The statute of limitations for these provisions accrue from "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 1711(a)(2).

The SAC also alleges a fraud claim.  (Dkt. No. 47, SAC ¶¶ 140-50.)  In California, an action for fraud has a three-year statute of limitations and is "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Civ. Proc. § 338(d).

Tarsadia Defendants argue that the statute of limitations on the ILSA anti-fraud and state law fraud claims expired on May 18, 2009 which is three years from when Plaintiff signed the purchase contract on May 18, 2006.  They argue that Plaintiff

---

[3] ILSA's anti-fraud provision provides:
(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails– . . .

(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title--
    . . .
    (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
    (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser

15 U.S.C. § 1703(a)(2)(A)-(C).

12

acknowledges he received the Public Report and the Purchase Contract; therefore, as of May 18, 2006, he had all the documents he needed to discover whether he received the required disclosures. The reasons Plaintiff offers to explain his failure to discover the bases for his claim does not warrant the application of the delayed discovery rule.[4]

In response, Plaintiff argues that he sufficiently alleged why, even with the exercise of due diligence, he never could have known he was harmed by Tarsadia Defendants' conduct, could not have discovered his rescission rights under the ILSA, could not have known Defendants affirmatively invoked an exemption under the ILSA and why circumstances outside of his control prevented discovery of their wrongdoing.

Under the discovery rule, incorporated into ILSA, "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' -- whichever comes first." Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 637 (2010). The discovery rule is an exception that arose recognizing that "something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she had been defrauded." Id. at 644 (emphasis in original). Thus "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered.'" Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946).

---

[4] Defendants cite to TILA cases where the statute of limitations period is triggered once documents are signed and the required disclosures are not provided. However, those cases are distinguishable because TILA's statute of limitation states that a claim must be brought "within one year from the date of the occurrence of the violation." 15. U.S.C. § 1640(e). This is in distinct contrast to the ILSA's statute of limitations where a claim must be brought "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." See 15 U.S.C. § 1711(a)(2). The discovery rule is not contained in the TILA statute of limitations.

3:18-cv-2290-GPC-KSC

The Supreme Court noted that "inquiry notice" or "storm warnings" do not trigger the running of the statute of limitations but "may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." Merck, 559 U.S. at 653. A claim accrues when the plaintiff discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." Id.; see also DeFazio v. Hollister, Inc., 854 F. Supp. 2d 770, 783 (E.D. Cal. 2012) ("Therefore, assuming plaintiffs in this case were not reasonably diligent, they would be precluded from relying on the 'fraud or concealment' exception only if a reasonably diligent plaintiff would have discovered the misconduct").

"A fact is considered 'discovered' when 'a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" Rieckborn v. Jefferies LLC, 81 F. Supp. 3d 902, 915 (N.D. Cal. 2015) (quoting City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011)).

On a motion to dismiss, defendants seeking to demonstrate that a claim is time-barred faces an "especially high hurdle." Rafton v. Rydex Series Funds, No. 10–cv–01171–LHK, 2011 WL 31114, at *10 (N.D. Cal. Jan. 5, 2011) (applying discovery rule to misstatements or omissions in registration statements under the Securities Act). "At the pleading stage, the question is whether it is *plausible* that these disclosures were insufficient to supply a reasonably diligent plaintiff with the information necessary to plead . . . claims with sufficient detail and particularity to survive a 12(b)(6) motion." Rieckborn, 81 F. Supp. 3d at 915 (quoting Booth v. Strategic Realty Trust, Inc., Case No. 13cv4921-JST, 2014 WL 3749759, at *6 (N.D. Cal. July 29, 2011)).

Under the California discovery rule, as it relates to the fraud cause of action, the statute of limitations begins to run when a plaintiff "suspects or should suspect that her

14

injury was caused by wrongdoing, that someone has done something wrong to her." <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1110 (1988); <u>Norgart v. The Upjohn Co.</u>, 21 Cal. 4th 383, 397 (1999) ("the plaintiff discovers the cause of action when he at least suspects a factual basis . . . for its elements"); <u>see also</u> <u>O'Connor v. Boeing N. American, Inc.</u>, 311 F.3d 1139, 1148 (9th Cir. 2002) (noting difference between California and federal discovery rule and "reject[ing] an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim."). In California, the statute of limitations begins once "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . ." <u>Jolly</u>, 44 Cal. 3d at 1110-11 (internal citation and quotation marks omitted). Once on inquiry, the plaintiff has an obligation to discover facts and cannot sit on his rights but must go find them himself. <u>Id.</u> at 1111.

In order for the discovery rule to delay the accrual of a cause of action, a complaint must plead facts to "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 808 (2005) (quoting <u>McKelvey v. Boeing N. American, Inc.</u>, 74 Cal. App. 4th 151, 160 (1999)). The plaintiff "must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." <u>Id.</u> at 808-09.

The SAC alleges that Plaintiff had no way of knowing he had been harmed by Defendants' fraudulent conduct which prevented him from inquiring into the conduct. (Dkt. No. 47, SAC ¶ 103.) Next, because he quitclaimed the deed to the property in January 2008 to his co-purchaser, he did not have any legal authority or ability to obtain information about the property. (<u>Id.</u>) Alternatively, even if Plaintiff knew he was harmed and examined the ILSA statute, he could not have known whether Defendants

15

sought an improved lot exemption under the ILSA, whether the condos were considered "lots" under the ILSA, whether the ILSA actually applied to the Hard Rock because only a developer could obtain an exemption or an exemption advisory opinion to make such a determination, whether state or federal law applied to the statute of limitations and whether Plaintiff had a cause of action against Defendants by simply comparing the ILSA statute with the Purchase Contract and the Public Report. (Id.) He was unable to hire an attorney due to the loss of his $50,000 deposit. (Id.) He claims that ILSA is a very complex statute to understand. (Id. ¶ 104.) Finally, he claims his incarceration and indigence also bears on his ability to exercise due diligence. (Id. ¶ 105.) As such, he could not have discovered he was harmed by Defendants' conduct until he was provided notice of the Class Action settlement in the Beaver case in June 2017. (Id. ¶ 106.) Therefore, the statute of limitations should be tolled until 2017 when he discovered the violation making his complaint timely.

Plaintiff presents numerous reasons why he could not have discovered the alleged misrepresentations of the ILSA disclosure requirements. The most compelling reason is that he had no reason to suspect any wrongdoing until he received the Beaver Class Notice in June 2017. Tarsadia Defendants simplistically argue that Plaintiff had all the relevant documents in his possession on May 18, 2006 to determine whether Defendants had made their required disclosures. However, at the time of contract, no party knew that there was an alleged failure to disclose as Tarsadia Defendants believed the Hard Rock was exempt under the ILSA. (Case No. 11cv1842, Dkt. No. 128 at 5.) Moreover, the Court rejected Tarsadia Defendants' same argument in the Beaver case stating "Defendants' argument that everyone is presumed to know the law was expressly rejected in the conduct of the discovery rule." (Case No. 11cv1842, Dkt. No. 34 at 9.) Also, in Beaver, the Court applied the discovery rule to the negligence claim creating an implication that even the plaintiffs in the Beaver case did not discover the alleged claims

at the time of signing the Purchase Contract.  Instead, the plaintiffs alleged they did not discover any alleged wrongdoing until they began receiving their rental income statements in late 2007/early 2008.  (Case No. 11cv1182, Dkt. No. 128 at 33-34, 37.)

Based on Plaintiff's allegations, the Court concludes a reasonably diligent plaintiff would not have discovered the facts constituting the violation on May 18, 2006.   Besides Plaintiff's possession of the relevant documents in May 2006, Tarsadia Defendants do not point to any event between May 18, 2006, the date the contract was signed, and June 2017, when Plaintiff received notice of the Class Action Settlement in <u>Beaver,</u> that would have put him on inquiry notice, or otherwise, that he had been harmed.  Thus, the running of the statute of limitations is not apparent on the face of the complaint, <u>see</u> <u>Huynh</u>, 465 F.3d at 997, and the Court DENIES Tarsadia Defendants' motion to dismiss the ILSA cause of action as time barred.

As to the fraud claim, on the first <u>Fox</u> factor, the SAC alleges that Plaintiff did not discover the alleged violations until June 2017 when he received the Class Action Settlement Notice in the <u>Beaver</u> case.  (Dkt. No. 47, SAC ¶  21.)  On the second <u>Fox</u> factor, the SAC claims that even if he conducted any investigation, nobody would have been able to discover the injury.  (<u>Id.</u>  ¶¶ 18-19, 103-08.)  Under California's discovery rule, the Court concludes that Plaintiff has sufficiently alleged the application of the discovery rule on the fraud cause of action.

Accordingly, the Court DENIES Defendants' motion to dismiss the fraud claim as time barred.

### 2.    Negligence Statute of Limitations

The SAC alleges a negligence per se claim based on violations of the disclosure provisions of ILSA that arise from § 1703(d)(2) and § 1703(a)(1)(C).  (Dkt. No. 47, SAC ¶¶ 151-160).  Violations of the disclosure provisions must be brought "within three years after the signing of the contract. . . ."  15 U.S.C. § 1711(a)(1) & (b).

1    Tarasadia Defendants argue that the Court in <u>Beaver,</u> on summary judgment,

2   dismissed the negligence per se claim as time barred based on the same allegations in the

3   instant SAC.  In <u>Beaver</u>, the Court explained that because the negligence per se claim

4   was based on a federal statute that was already time barred, that limitations period

5   applied.  <u>Beaver</u>, 29 F. Supp. 3d at 1322.  However, in this case, Plaintiff argues that even

6   if time barred, equitable tolling should apply because Defendants "fraudulently concealed

7   the ILSA statute from Plaintiff and other purchasers" and cites to paragraphs 133-136,

8   140-143, 148, 150 in the SAC.  The issue of tolling was not raised in the <u>Beaver</u> case.

9    However, the discovery rule and equitable tolling do not apply to 15 U.S.C. §§

10  1711(a)(1) & (b).  <u>Bodansky v. Fifth on Park Condo, LLC</u>, 635 F.3d 75, 82-83 (2d Cir.

11  2011) (declining to apply discovery rule to § 1711(a)(1) noting Congress' intent by

12  establishing two different statute of limitations between §§ 1711(a)(1) & (b), "three years

13  after the date of signing of the contract of sale" and § 1711(a)(2), "three years after

14  discovery of the violation or after discovery should have been made by the exercise of

15  reasonable diligence"); <u>Gendler v. Related Grp.</u>, Case No. 09-21867-CI-UNGARO, 2009

16  WL 10667887, at *7 (S.D. Fla. Dec. 2, 2009) (equitable tolling not applicable to §

17  1711(a)(1) as it omits equitable tolling language in § 1711(a)(2) which is applicable to

18  the anti-fraud provisions).

19   Plaintiff's reliance on <u>Happy Inv. Grp. v. Lakeworld Props, Inc.</u>, 396 F. Supp. 175,

20  187-88 (N.D. Cal. 1975) where the court applied tolling to an ILSA cause of action is not

21  applicable because the court applied tolling to the anti-fraud provision under §

22  1703(a)(2)(A), not the disclosure provisions of § 1703(d)(2) and § 1703(a)(1)(C).

23   Thus, the Court GRANTS Tarasadia Defendants' motion to dismiss the negligence

24  claims as time barred.

25  / / /

26  / / /

27                                      18

28

### 3. UCL Statute of Limitations

In this case, the UCL "unlawful prong" claim is based on violations of ILSA. (Dkt. No. 47, SAC ¶ 163-64.)  The FAC also alleges claims under the "unfair" and "fraudulent" prongs of the UCL.  (Id. ¶¶ 165.)

Tarsadia Defendants argue that the UCL claim fails as time barred under its four-year statute of limitations.  In Beaver, the Ninth Circuit held that the UCL cause of action has a four-year statute of limitations and is governed by common law accrual rules looking at when the harm was completed.  Beaver, 816 F.3d at 1178.  Here, Plaintiff claims he closed escrow on the unit in October 2007.  (Dkt. No. 47, SAC ¶ 99.)  Therefore, the statute of limitations expired in October 2011.  Plaintiff responds that the discovery rule saves his UCL claim.

The UCL statute of limitations provides, "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this section shall be revived by its enactment."  Cal. Bus. & Prof. Code § 17208.  The discovery rule applies to the UCL.  See Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1198 (2013) ("the UCL is governed by common law accrual rules to the same extent as any other statute."); Allen v. Similasan, 96 F. Supp. 3d 1063, 1070 (S.D. Cal. 2015) ("[C]laims under the UCL are governed by common law accrual rules, including delayed discovery."); Cover v. Windsor Surry Co., No. 14-cv-5262-WHO, 2015 WL 4396215, at *3 (N.D. Cal. July 15, 2015) ("Accordingly, I am bound by Aryeh . . . and I conclude that the discovery rule is available to toll the statute of limitations on [Plaintiff's] UCL claim."); Plumlee v. Pfizer, Inc., Case No. 13cv414 LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("delayed discovery rule is available to toll the statute of limitations under the . . . UCL.").

3:18-cv-2290-GPC-KSC

As discussed above, to allege the application of the California discovery rule, Plaintiff must allege "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." <u>Fox</u>, 35 Cal. 4th at 808. The Court determined that Plaintiff sufficiently alleged the application of the discovery rule on the fraud claim. For the same reasons, the Court DENIES Tarsadia Defendants' motion to dismiss the UCL claim as time barred.

In sum, the Court GRANTS in part and DENIES in part Tarsadia Defendants' motion to dismiss.

**C.  Playground Destination's Motion to Dismiss**

       **1.  ILSA and Fraud**

Plaintiff alleges violations of the anti-fraud provisions of ILSA pursuant to 15 U.S.C. §§ 1703(a)(2)(B), and (C) and a state law claim for fraud.

          **a.  ILSA Registration**

Playground argues that the first cause of action for ILSA fraud violations fail to state a claim because the SAC still, despite leave to amend, does not sufficiently plead Playground's knowledge of the alleged non-disclosure of the two-year rescission right. Moreover, Plaintiff's reliance on regulations are misplaced because 24 C.F.R. § 1710.17 is not mandatory and 24 C.F.R. § 1710.15 does not apply to the facts in the SAC. Plaintiff responds that scienter or knowledge of falsity is not an element of the claims under 15 U.S.C. §§ 1703(a)(2)(B), and (C).

In the <u>Beaver</u> case, the Court granted Playground's motion to dismiss with prejudice because Plaintiff's theory of knowledge as to Playground improperly imputed Tarsadia Defendants' knowledge and concealment of the buyers' right to rescind onto

Playground based on Civil Code section 2332[5]. (Case No. 11cv1842, Dkt. No. 34 at 6.) Because the FAC allegations in the present case were nearly identical to the ones in Beaver, the Court, in its prior order, concluded that Plaintiff had not sufficiently alleged Playground's knowledge as to Plaintiff's rescission rights and granted dismissal of the claim. (Dkt. No. 37 at 27.) The instant SAC allegations relating to Playground's knowledge are unchanged and similar to those in the FAC in this case and the Beaver case which was dismissed with prejudice. (Compare Beaver, Case No. 11cv1842, Dkt. No. 21, SAC ¶¶ 63-65, 67-71, 73-74 with Brooks, Case No. 18cv2290, Dkt. No. 24, FAC ¶¶ 93-95, 100-105, 107-109 and Dkt. No. 47, SAC ¶¶ 81-83, 93, 94, 97, 99, 101, 102.) Accordingly, Playground submits that Plaintiff has failed to cure the identified deficiencies and the SAC should be dismissed.

Notwithstanding the similarities in allegations concerning Playground's knowledge, Plaintiff contends dismissal is not appropriate because scienter or knowledge of falsity is not a requirement under the ILSA provisions relied upon. Plaintiff reasons that since the ILSA disclosure provisions were modeled after Section 17(a) of the Securities Act of 1933, which does not require scienter, then 15 U.S.C. §§ 1703(a)(2)(B), and (C) do not require scienter either. Plaintiff asks the Court to establish precedent and follow the reasoning of cases interpreting the Securities Act of 1933, and hold that scienter is not an element to a cause of action under 15 U.S.C. §§ 1703(a)(2)(B) & (C). See Aaron v. SEC, 446 U.S. 680, 695–97 (1980). In reply, Playground applies state law fraud standards to ILSA anti-fraud claims in order to support its argument that knowledge is a missing element in both of Plaintiff's ILSA fraud and common law fraud claims.

---

[5] "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Cal. Civ. Code § 2332.

3:18-cv-2290-GPC-KSC

The Court previously acknowledged "that there is no Ninth Circuit authority that has applied the common law fraud standard to an ILSA anti-fraud claim but there is also no Ninth Circuit authority on what is required to plead an ILSA violation under 15 U.S.C. §§ 1703(a)(2)(A)-(C), and specifically, whether scienter is an element." (Dkt. No. 46 at 6.) Then, in its prior ruling in this case, based on the law of the case doctrine,[6] the Court relied on its prior ruling on motion to dismiss that knowledge was not sufficiently alleged. See Disimone v. Browner, 121 F.3d 1262, 1266 (9th Cir. 1997) (applying law of the case between closely related cases). Notably, the parties in the Beaver case did not dispute the elements to an ILSA claim under the three anti-fraud provisions[7] and assumed knowledge was an element.

The law of the case doctrine "promotes finality and efficiency of the judicial process by protecting against the agitation of settled issues . . . " Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (citation and internal quotation marks omitted). "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

On careful review on the issues of knowledge and scienter, the Court departs from its prior ruling on whether scienter or knowledge of falsity are elements of 15 U.S.C. §§ 1703(a)(2)(B), and (C).

---

[6] The law of the case doctrine requires that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).

[7] The Beaver case alleged violations of all three anti-fraud provision, 15 U.S.C. §§ 1703(a)(2)(A), (B) & (C). In the instant SAC, Plaintiff has only alleged violations of 15 U.S.C. §§ 1703(a)(2)(B) & (C).

"The [ILSA] is based on the full disclosure provisions and philosophy of the Securities Act of 1933." Flint Ridge Dev. Corp. v. Scenic Rivers Ass'n of Oklahoma, 426 U.S. 776, 778 (1976); Schenker v. United States, 529 F.2d 96, 97 (9th Cir. 1976) ("The original [ILSA] senate bill was modeled on the Securities Act of 1933.") As a result, courts have relied on the interpretation and application of the 1933 Securities Act to interpret the provisions of the ILSA. See Paquin v. Four Seasons of Tennessee, Inc., 519 F.2d 1105, 1109 (5th Cir. 1975) (relying on test of materiality of Securities Act of 1933 to ILSA provision because "[t]he Act closely parallels the philosophy and approach of the Securities Act of 1933."); Hester v. Hidden Valley Lakes, Inc., 495 F. Supp. 48, 53 (N.D. Miss. 1980) (looking to Securities Act of 1933 to interpret § 1709(b)(2) of ILSA); Ackmann v. Merchants Mortgage & Trust Corp., 645 P.2d 7, 16-17 (Colo. 1982) ("judicial interpretation and application of § 17(a)(3) of the Securities Act is persuasive guidance for our interpretation of [§1703(a)(2)(C)]").

Therefore, this Court must also look to cases interpreting the Securities Act of 1933 for guidance on whether scienter, i.e. knowledge of falsity, is an element under 15 U.S.C. §§ 1703(a)(2)(B), and (C). In the context of securities law, scienter has been defined by the United States Supreme Court as "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (quoting Ernst v. Hochfelder, 425 U.S. 185, 193-94 n. 12 (1976)); Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 48 (2011) (same). In distinguishing between § 17(a)(1), "to employ any device, scheme, or artifice to defraud," with §§ 17(a)(2) & (a)(3), which does not contain such language, the Court noted that Congress' use of "manipulative or deceptive" with "device, scheme, or artifice to defraud" strongly suggest that § 17(a)(1) was "intended to proscribe knowing or intentional misconduct." Aaron, 446 U.S. at 696. The language in § 17(a)(1) "'to employ any device, scheme, or

23

artifice to defraud,' plainly evinces an intent on the part of Congress to proscribe only knowing or intentional misconduct." Id.

In Aaron v. SEC, 446 U.S. 680, 695–97 (1980), after a thorough examination of the three provisions under §§ 17(a)(1)-(3) of the 1933 Securities Act, the Court held that while scienter is an element of § 17(a)(1), scienter is not an element under §§ 17(a)(2) or (3). Sections 17(a)(2) and (3)[8] are materially identical to the ILSA provisions asserted in this case, 15 U.S.C. §§ 1703(a)(2)(B), and (C). See Ackmann, 645 P. 2d at 16 (noting that section 17(a)(3) of the 1933 Securities Act is identical to 15 U.S.C. § 1703(a)(2)(C)).

In a Ninth Circuit criminal case involving a conviction under violations of ILSA, the appellant argued the district court failed to instruct the jury that specific intent was a necessary element for violation of 15 U.S.C. § 1703(a)(1). United States v. Dacus, 634 F.2d 441, 446 (9th Cir. 1980). Relying on the Securities Act of 1933 for guidance, the Ninth Circuit held that "specific intent is not a required element of mere registrations." Id. Instead, "specific intent or scienter is only required when the crime charged is based on fraudulent conduct." Id.

Similarly, here, specific intent is not an element for claims under §§ 1703(a)(2)(B), and (C), where these two sections focus on false statements in registrations and the effect

_____

[8] 15 U.S.C. § 77q(a)(2), and (3) (2) provides that it

> shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
> . . .
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

of false statements on the victim and not fraudulent conduct. Unlike § 1703(a)(1), the focus is not on the actor who employs "any device, scheme, or artifice to defraud." Aaron and Dacus support the conclusion that scienter is not an element under 15 U.S.C. §§ 1703(a)(2)(B), and (C).

The next question becomes whether knowledge of falsity is a distinct and separate element from scienter. The answer is no. Knowledge, itself, is not an element of §17(a)(1), in that it is necessarily implied in the definition of scienter. Scienter can be established by intent, knowledge, or certain levels of recklessness. SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1092 (9th Cir. 2010). In the Ninth Circuit, "[s]cienter may be established, therefore, by showing that the defendants knew their statements were false, or by showing that defendants were reckless as to the truth or falsity of their statements." Gebhart v. SEC, 595 F.3d 1034, 1041 (9th Cir. 2010); Vernazza v. SEC, 327 F.3d 851, 860 (9th Cir. 2003) (violation of § 17(a)(1) may be demonstrated by "knowing or reckless conduct" without demonstrating "willful intent to defraud."). Because knowledge of falsity is one way to demonstrate scienter, the Court concludes knowledge of falsity and scienter are not separate elements for an action under 15 U.S.C. §§ 1703(a)(2)(B), and (C). Therefore, the Court DENIES Playground's motion to dismiss the ILSA cause of action due to Plaintiff's failure to allege Playground's knowledge of the rescission rights.

### b. Common Law Fraud

In contrast to federal law, in California, a plaintiff alleging fraud must show "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." Ryder v. Lightstorm Entm't, Inc., 246 Cal. App. 4th 1064, 1079 (2016) (internal quotations omitted). Plaintiff argues he has sufficiently alleged Playground's knowledge.

3:18-cv-2290-GPC-KSC

The allegations as to knowledge in the SAC are substantially similar to allegations in the FAC in this case and the <u>Beaver</u> case which was dismissed with prejudice. (<u>Compare</u> <u>Beaver</u>, Case No. 11cv1842, Dkt. No. 21, SAC ¶¶ 63-65, 67-71, 73-74 with <u>Brooks</u>, Case No. 18cv2290, Dkt. No. 24, FAC ¶¶ 93-95, 100-105, 107-109 and Dkt. No. 47, SAC ¶¶ 81-83, 93, 94, 97, 99, 101, 102.) On the same allegations of Playground's knowledge of the rescission right, the Court GRANTS Playground's motion to dismiss the fraud cause of action for failing to plausibly assert knowledge of falsity.

Plaintiff also presents an unpersuasive argument that Playground falls under the definition of "developer" under the ILSA and therefore cannot be separated from Tarsadia Defendants for purposes of liability. (Dkt. No. 51 at 19.) Developers and their agents are liable under ILSA's anti-fraud provisions. <u>See</u> 15 U.S.C. § 1709(a). Because Playground is an agent, which it does not dispute, (Dkt. No. 53 at 8), it is subject to the ILSA. The SAC alleges that Playground intentionally avoided knowing about the application of ILSA by failing to obtain an exemption under 24 C.F.R. § 1710.15 from the ILSA Secretary or an exemption advisory opinion from the ILSA Secretary under 24 C.F.R. § 1710.17. (Dkt. No. 47, SAC ¶ 101.) While not at all clear, it appears that Plaintiff is claiming that Playground, as a developer, failed to obtain and deliberately made a decision not to obtain an exemption advisory opinion from the ILSA Secretary and this failure demonstrates Playground had a subjective belief there was a high probability that the Hard Rock was subject to ILSA. (Dkt. No. 51 at 18.)

Section 1702 provides for three types of exemptions under the ILSA. <u>Pugliese v. Pukka Dev., Inc.</u>, 550 F.3d 1299, 1301 (11th Cir. 2008). "Section 1702(a) exempts the sale or lease of certain properties or 'lots' from all ILSA provisions [or full statutory exemption]. Section 1702(b) exempts the sale or lease of other lots from ILSA registration and disclosure requirements [partial statutory exemption]." <u>Id.</u> "Section

26

1702(c) provides for the creation of rules or regulations exempting lots from other provisions of the ILSA [partial regulatory exemptions]." Id.

Tarsadia Defendants relied on the full statutory exemption under 15 U.S.C. § 1702(a)(2) "which exempts the sale of land from ILSFDA if the sale is under a contract obligating the seller to erect a building thereon within a period of two years." Prato v. Hacienda Del Mar, LLC, No. 08cv883-FtM-29 SPA, 2011 WL 161787, at *2 (M.D. Fla. Jan. 18, 2011) (describing § 1702(a)(2) as a full exemption meaning it is exempt from all of the Act's provisions); see also Guidelines for Exemptions Available Under the Interstate Land Sales Full Disclosure Act (Guidelines), 61 Fed. Reg. 13,596 et seq. (Mar. 27, 1996). Contrary to Plaintiff's argument, Tarsadia Defendants did not assert an exemption under 24 C.F.R. § 1710.15 (2006). 24 C.F.R. § 1710.15 (2006) concerns a regulatory exemption regarding multiple site subdivisions which does not apply in this case. Furthermore, 24 C.F.R. § 1710.17 (2006) provides that a "developer may request an opinion from the Secretary as to whether an offering qualifies for an exemption or is subject to the jurisdiction of the Act." 24 C.F.R. § 1710.17 (2006). This provision is not mandatory but optional. Plaintiff incorrectly alleges that once Defendants "invoked" the exemption by sending the response memorandum to David McCain, it was required to obtain an advisory opinion. There is no language in 24 C.F.R. § 1710.17 (2006) to support Plaintiff's argument that Defendants were required to obtain an advisory opinion when the exemption is "invoked." Accordingly, Plaintiff's argument that Defendants' failure to comply with ILSA regulations provides sufficient support as to Playground's knowledge is without merit.

Finally, Plaintiff's allegations concerning Playground's knowledge about the RMA and rotational rental system are not sufficient to state a claim. Playground argues that the SAC fails to plead knowledge about the additional misrepresentations alleged concerning the RMA.

27

Plaintiff was required to sign three agreements: (1) the Contract, (2) the Unit Management and Operating Agreement ("OA") and (3) the RMA. (Dkt. No. 47, SAC ¶ 85.) The Purchase Contract and Public Report were provided to Playground by Tarsadia Defendants. (Id. ¶ 82.) Tarsadia Defendants and Playground misrepresented that the RMA was not mandatory and not a condition of ownership, when in reality, it was a mandatory condition of ownership. (Id. ¶ 85.) Tarsadia Defendants had Playground prepare a document entitled "Tarsadia's Optional Rental Management Program FAQ" where Defendants represented that investors were not required to participate in the RMA but that representation was false as the purchasers were mandated to participate in the RMA and this illusory option inflated the property's desirability and induced Plaintiff, in part, to buy the property. (Id. ¶ 86.) The SAC further summarily alleges that "Defendants each knowingly and materially assisted each other in misrepresenting that the RMA was not mandatory and a (sic) not a condition of the contract in order to induce reliance, when, in fact, it was mandatory and a condition of the collective Sales Agreements. (Id. ¶ 146.) "Defendants each knowingly and materially assisted each other in misrepresenting that the Hard Rock guests would be position in a consistent 'rotational' system that would 'rent all suites equitably,' when-in fact-there was no feasible way to live up to this representation, inducing reliance." (Id. ¶ 147.)

These allegations do not sufficiently allege knowledge as to Playground concerning the RMA and the rotational rental system. As Playground notes, Plaintiff alleges that Tarsadia Defendants, "under the control of Patel Defendants and Casserly, rented these rooms that generated the most income to the Hard Rock." (Dkt. No. 47, SAC ¶ 156.) Moreover, the allegations assert that Tarsadia Defendants provided Playground with the necessary documents or information to present to the buyers indicating that Playground did not know whether the contents of the documents were false or not. (Id. ¶¶ 82, 86.) The specific allegations concerning knowledge are general

28

threadbare recitals for a cause of action for fraud which is not sufficient to state a claim. (Id. ¶¶ 146, 147.)  Therefore, the additional arguments concerning misrepresentations about the RMA and the rotational rental system against Playground are not sufficiently alleged.

In summary, the Court DENIES Playground's motion to dismiss the ILSA cause of action and GRANTS the motion to dismiss on the fraud claim.

### 3. Negligence

As to Playground, the SAC alleges it was negligent in failing to disclose that there was no feasible way for the hotel guests to be placed in a constituent rotational system for purposes of rental purpose.  (Dkt. No. 47, SAC ¶¶ 154-155.)  This claim is based on breach of the duty under California Civil Code § 2079.16 which states that a seller's agent has a "duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties."  (Id. ¶ 154.)

Playground argues that because the negligence claim based on § 2079.16 has a two-year absolute statute of limitations, the claim is barred.  See Cal. Civ. Code § 2079.4 (two-year bar "from the date of possession, which means the date of recordation, the date of close of escrow, or the date of occupancy, whichever comes first.").  Because Plaintiff closed escrow in October 2007, his negligence claim expired in October 2009.  Plaintiff does not oppose or address Playground's argument.  Accordingly, the Court GRANTS Playground's motion to dismiss the negligence claim as unopposed.

### 4. UCL

The UCL "unlawful prong" claim is based on violations of ILSA and California Civil Code § 2079.16.  (Dkt. No. 47, SAC ¶ 163; Dkt. No. 51 at 21.)  The FAC also alleges claims under the "unfair" and "fraudulent" prongs of the UCL.  (Id. ¶¶ 165-69)

29

The unlawful prong of the UCL incorporates "violations of other laws and treats them as unlawful practices." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). This prong creates an "independent action when a business practice violates some other law." Walker v. Countrywide Home Loans, Inc., 98 Cal. App. 4th 1158, 1169 (2002). A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action." Krantz v. BT Visual Images, 89 Cal. App. 4th 164, 178 (2001).

Playground argues that the unlawful prong based on violations of ILSA fail to sufficiently allege its knowledge of the alleged omission in the Purchase Contract. Because the Court DENIES dismissal of the ILSA claim, the Court DENIES dismissal of the unlawful prong of the UCL.

Playground argues that the unfair prong should also be dismissed because despite the Court's guidance in its prior order, Plaintiff has failed to correct the deficiencies noted by the Court. In opposing, Plaintiff does not substantively oppose the argument but merely asserts "because Playground has violated the ILSA—Plaintiff can prevail under the "unfair" prong of the UCL as well as the fraudulent or deceptive acts prong." (Dkt. No. 51 at 22.)

As the Court previously, asserted, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 & n. 12 (1999) (applying "unfair" test to anti-competitive practices and not consumer actions). As the Court explained in the Beaver case, post-Cel-Tech, California appellate courts are divided as to which test of "unfair" applies to consumer cases. 29 F. Supp. 3d at 1314; see also Hodsdon v. Mars, Inc., 891 F.3d 857, 866 (9th Cir. 2018) (recent case noting the

term "unfair" is still in flux in California courts). In <u>Lozano v. AT&T Wireless Servs., Inc.</u>, 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit held that two tests, the <u>Cel–Tech</u> test where the unfairness is tied to a "legislatively declared" policy, or the former balancing test under <u>South Bay,</u>[9] which involves balancing the harm to the consumer against the utility of the defendant's practices, would apply to consumer cases. <u>Id.</u> at 1315. In order to be a "legislatively declared" policy, there must be a "close nexus between the challenged act and the legislative policy." <u>Hodsdon</u>, 891 F.3d at 866 (citing <u>Cel-Tech</u>, 20 Cal. 4th at 187) (holding that for an act to be "unfair," it must "threaten[ ]" a violation of law or "violate[ ] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law").

In <u>Beaver</u>, the plaintiffs applied the tethering test arguing that its unfair claim is tied to Playground's violation of its statutory duty as a real estate agent to "disclose all facts known to the [it] materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties pursuant to Cal. Civ. Code § 2079.16." The Court granted Playground's motion for summary judgment concluding that the plaintiffs "do not allege or show that the failure to disclose or affirmative misrepresentation is predicated on a public policy and that the conduct threatened to violate the letter, policy, or spirit of the antitrust laws or that it harms competition. . . . Plaintiffs only argue that the unfair practices are tethered to the disclosure policies, not public policy." <u>Id.</u> at 1315. "Moreover, Plaintiffs have not alleged or demonstrated that such acts are against public policy, immoral, unethical, oppressive, or unscrupulous." <u>Id.</u>

In the prior order on motion to dismiss, the Court dismissed the UCL unfair prong because Plaintiff failed to allege, or demonstrate as in <u>Beaver</u>, that the failure to disclose

---

[9] <u>South Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal. App. 4th 861 (1999).

or the misrepresentation made were predicated on "legislatively declared" policy mandating a "close nexus between the challenged act and the legislative policy." (Dkt. No. 37 at 35.)

Plaintiff presents the same assertion that California has a legislative policy requiring real estate brokers to disclose all facts materially affecting the desirability or value of the property that are not known to the parties. (Compare Dkt. No. 24, FAC ¶ 159 with Dkt. No. 47, SAC ¶ 166.) Therefore, because the deficiency was not corrected, the Court GRANTS Playground's motion to dismiss on the unfair prong of the UCL.

Plaintiff attempts to correct the deficiencies by alleging that Defendants concealed that the RMA was a mandatory condition of ownership, that rooms would not be rented equitably and the Developer Defendants were required to obtain exemption from the ILSA secretary. (Dkt. No. 47, SAC ¶ 165.) He claims these actions were unfair because they offended established anti-fraud statutes and the harm Plaintiff suffered greatly outweighs any benefits associated with those practices. (Id.) Again, Plaintiff makes a general claim and fails to assert Defendants' conduct is tied to a "legislatively declared" policy,

Accordingly, because Plaintiff has failed to allege facts to support a claim under the "unfair" prong, the Court GRANTS Playground's motion to dismiss.

Finally, Playground contends that the SAC fails to plead a fraudulent or deceptive act because Plaintiff has not alleged Playground had a duty to disclose those undisclosed material facts. To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. Prakashpalan v. Engstrom, Lipscomb and Lack, 223 Cal. App. 4th 1105, 1134 (2014). But "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." Daugherty v. American Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2007).

It appears that as before, Plaintiff relies on the real estate broker's duties under Civil Code section 2079.16 ("A Seller's agent . . .has the following affirmative obligations: . . . (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.") which requires knowledge of the alleged failure to disclose. Here, Plaintiff must allege that Playground knew about the ILSA disclosure provisions which the Court concluded above he has not sufficiently alleged on the fraud claim. Accordingly, the Court GRANTS Playground's motion to dismiss the fraudulent prong of the UCL.

## Conclusion

Based on the above, the Court GRANTS Tarsadia Defendants' motion to dismiss the negligence cause of action and DENIES Tarsadia Defendants' motion to dismiss the ILSA, fraud and UCL causes of action. The Court also GRANTS Playground's motion to dismiss the fraud, negligence and UCL claim based on the unfair and fraudulent prongs and DENIES Playground's motion to dismiss the ILSA cause of action and related "unlawful" prong of the UCL.

IT IS SO ORDERED.

Dated: December 5, 2019

Hon. Gonzalo P. Curiel
United States District Judge

3:18-cv-2290-GPC-KSC