1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   JASON BROOKS, | Case No.:  3:18-cv-02290-GPC-KSC |
| 12                              Plaintiff, | **REPORT AND** |
| 13   v. | **RECOMMENDATION RE** **TARSADIA DEFENDANTS' AND** |
| 14   TARSADIA HOTELS, 5th ROCK, LLC, | **PLAYGROUND'S MOTION TO** |
| 15   MKP ONE, LLP, TUSHAR PATEL, B.U. PATEL, GREGORY CASSERLY, | **ENFORCE SETTLEMENT** **AGREEMENT [Doc. No. 77]** |
| 16   PLAYGROUND DESTINATION PROPERTIES, INC. and DOES 1-50, | |
| 17                              Defendants. | **REDACTED COPY – ORIGINAL** **FILED UNDER SEAL** |
| 18 | |

19          Before the Court is defendants' Tarsadia Hotels, 5th Rock, LLC, MKP One, LLP,
20   and Gaslamp Holdings, LLC (collectively, the "Tarsadia Defendants") Motion to Enforce
21   Settlement (the "Motion" or "Mot.").  Doc. No. 77 (redacted, public version); 84 (sealed
22   version).  Defendant Playground Destination Properties, Inc. ("Playground," and,
23   together with the Tarsadia Defendants, "defendants") joins the Motion.  Doc. No. 75.
24   Plaintiff Jason Brooks ("plaintiff" or "Mr. Brooks") opposes the Motion (the
25   "Opposition" or "Opp.").  Doc. No. 81.
26          On August 4, 2020, the Honorable Gonzalo P. Curiel, United States District Judge,
27   referred the matter to the undersigned to prepare a report and recommendation pursuant
28   to 28 U.S.C. § 636(b)(l), and conduct an evidentiary hearing if necessary.  *See* Doc. No.

86.   For the reasons that follow, this Court **RECOMMENDS** that defendants' Motion be **GRANTED**.

## I.  BACKGROUND

This case arises out of plaintiff's purchase of a residential condominium in San Diego.  Doc. No. 47, ¶5.  Plaintiff is the sole opt-out of a class action against defendants related to the sale of similar condominium units, which settled in 2017.  *See Beaver v. Tarsadia Hotels*, No. 11cv1842-GPC(KSC), 2017 WL 4310707, at *15 (S.D. Cal. Sept. 28, 2017).  On December 5, 2019, the District Court granted in part and denied in part defendants' Motions to Dismiss plaintiff's second amended complaint in this case.  *See* Doc. No. 56.

On April 22, 2020, the parties participated over the course of several hours in an Early Neutral Evaluation ("ENE") conference, during which they reached an agreement in principle to settle the case.  Doc. No. 72.  Following the ENE conference, defendants sent plaintiff a draft settlement agreement and joint motion for dismissal.  Plaintiff refused to sign the documents.  On May 21, 2020, the Court held a follow up conference with the parties (the "Status Conference") to discuss the settlement reached, and the bases for plaintiff's refusal to sign the documents which set forth the agreed-upon terms.  On June 5, 2020, defendants filed the instant Motion.

## II.  THE SETTLEMENT

### A.  ENE Conference

The Court met telephonically with all parties at the outset of the ENE conference.[1] The Court next spoke individually with plaintiff, and then with the defendants.  At the request of the Court, plaintiff made an initial settlement demand, which the Court then communicated to defendants.  Defendants then conferred, and relayed to the Court a

---

[1] Due to the COVID-19 public health emergency, the ENE Conference was held telephonically.  *See* Order of the Chief Judge No. 18, "Suspension of Jury Trials and Other Proceedings During the COVID-19 Public Emergency," dated March 17, 2020 (available at www.casd.uscourts.gov); Doc. No. 69 (modifying procedures for the ENE conference to require telephonic attendance for all parties).

counter-proposal, which was thereafter communicated to plaintiff.  As is typical in ENE conferences, the afternoon continued with back to back consultations in this fashion as the Court conferred with each party and discussed the strengths and weaknesses of the claims and defenses advanced. [2]

After several hours of individual and joint sessions with the Court, the parties reached a settlement. ████████████████████████████████████████
███████████████████████████████[3],████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████.[4]

The following agreement was then reached between the parties, which was verbally repeated by the undersigned Magistrate Judge in the presence of all parties in joint session at close of the ENE conference:

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████;

_____

[2] The parties' communications with the Court during an ENE conference are confidential under Local Rule 16.1(c)(1)(b).  The undersigned has endeavored herein to preserve the confidentiality of that proceeding by relying on the transcript of the May 21, 2020 Status Conference and the information disclosed in the parties' filings.

[3] Plaintiff pled guilty to securities fraud and has been incarcerated in Colorado since May 24, 2009. Doc. No. 47 (Second Amended Complaint), ¶¶105, 115-16.  As plaintiff acknowledges in his Second Amended Complaint, he was also ordered to pay over $5,000,000 in restitution. *See id.*, ¶ 117.

[4] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████.



*See* Amended Declaration of Cathy T. Moses ("Moses Dec."), Doc. No. 77-1 (redacted), 84-1 (sealed), ¶5; *see also* Doc. No. 72.  After the undersigned recited these terms in joint session with all parties on the line, she asked each party and counsel to verbally confirm that the stated terms accurately represented the settlement reached.  All parties and counsel, including Mr. Brooks, confirmed that they accurately reflected the settlement reached.  Importantly, Mr. Brooks stated no objections to any of the settlement terms.

    After the ENE conference, the Court issued an Order confirming the parties' agreement in principle (the "ENE Order").  Doc. No. 72 at 1.  As agreed, plaintiff was to

file his motion "delineat[ing] how he believe[d] the settlement funds should be distributed based on applicable law and in consideration of any restitution order entered against him in connection with his conviction" on or before June 5, 2020. *Id.* Consistent with the above terms to which the parties agreed in the Court's presence, the Court ordered counsel for the Tarsadia Defendants to circulate a draft settlement and release agreement and joint motion for dismissal to plaintiff within one week of the conference.[5] *Id.* Plaintiff was ordered to review the settlement agreement and related documents and respond within three business days of receipt. *Id.* at 2. To monitor the parties' progress in finalizing their settlement, the Court set a follow-up telephonic status conference for May 21, 2020. Doc. No. 71.

As ordered, counsel for the Tarsadia Defendants thereafter circulated a draft settlement and release agreement to plaintiff which set forth the terms of the agreement reached, and a joint dismissal motion. The settlement documents provided to plaintiff accurately reflect the terms of the settlement reached between the parties at the ENE Conference on April 22, 2020. Plaintiff refused to sign and return the settlement papers as ordered by the Court. Instead, he stated in correspondence to Tarsadia Defendants' counsel that he wanted the settlement funds to be sent to his sister and not deposited with the Clerk of Court as was discussed and agreed to at the ENE Conference. *See* Moses Dec., ¶8. [6]

**B. May 21, 2020 Status Conference**

Upon being advised that plaintiff would not sign the settlement documents, the Court proceeded with the previously-scheduled a telephonic status conference on May

---

[5] During the ENE, the Court requested that the Tarsadia Defendants' counsel lodge a copy of all documents sent to plaintiff at the undersigned's chambers email address. Moses Dec., ¶7. On April 29, 2020, the Tarsadia defendants lodged a copy of a letter to plaintiff of the same date, a document titled "Settlement Agreement and Release of Claims," and a document titled "Joint Stipulation Dismissing Entire Action With Prejudice [F.R.C.P. 41(a)(1)(A)(ii)]." *Id.*, ¶8.

[6] This information is corroborated by the April 29, 2020 letter from the Tarsadia Defendants' counsel to plaintiff lodged with the undersigned's chambers.

21, 2020 (the "Status Conference"), which was recorded.  Doc. No. 73; *see generally* 5/21/20 Tr. (sealed). The purpose of the Status Conference was to discuss the settlement reached, and the bases for plaintiff's refusal to sign the documents which set forth the agreed-upon terms.

The Court reiterated during the Status Conference that the parties had indeed reached an agreement to settle the case at the ENE conference.  5/21/20 Tr. at 1, 5, 12, 21, 22 (sealed).  After discussing the terms of the settlement, the Court advised plaintiff "[y]ou have already agreed to those [settlement] terms.  What you are doing is reneging on the terms." *Id.* at 1-2, 12.

In response, plaintiff argued that his agreement to settle was premised on the determination that if the settlement funds did not go to him, they would go to charity. *Id.* at 3, 5-6.  Further, he stated he was under the "incorrect belief that the Prison Litigation Reform Act" applied to him, as a prisoner, but he had since determined it did not. *Id.* at 3-4, 10.  Although plaintiff's manner of explanation suggested that these considerations came to him after he had already agreed to the settlement terms,[7] the Court reiterated that the agreement reached between the parties included that the agreed-upon monetary sum was to be paid into a trust fund with the Clerk of Court, and that plaintiff would brief for the District Court how the funds were to be distributed. *Id.* at 6.  This did not appease plaintiff, as he stated he wanted the ability to appeal any determination that Judge Curiel might make, which would be precluded by proceeding with the agreed upon settlement terms. *Id*. at 17-18, 19, 17.  Plaintiff was offered additional time to submit his motion to the Court given his stated limited access to the law library, he declined this opportunity. *Id*. at 13.  Without advance assurances that Judge Curiel would order the funds to be paid / /

---

[7] As he stated, *"[b]ut then, after we ended the conversation that day*, I thought, 'Well, wait a minute.  If the diversion of the damages can be given to charity, then they … could go to me." 5/21/20 Tr. at 2 (sealed) (emphasis added).

directly to him or his sister, plaintiff refused to go forward with the settlement previously reached.  *Id.* at 18, 21.

The undersigned then advised the parties that "…[I]n my judgment, a settlement was reached and our discussion today is, in essence, just an effort by Mr. Brooks to back out of a settlement which was already reached."  5/21/20 Tr. at 21-22 (sealed).  Defendants concurred, and the Court inquired whether defendants wished to proceed with filing a motion to enforce the settlement.  Responding affirmatively, defendants were ordered to file their motion within two weeks.  *Id.* at 22-23; *see also* Doc. No 80 (setting briefing schedule for plaintiff's motion).

### III.   LEGAL STANDARD

A District Court has the authority to "'enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it.'"  *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995) (citations omitted); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (same); *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (recognizing the Court's "inherent power to enforce [an] agreement in settlement of litigation before it").  This authority extends to oral agreements.  *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002); *see also Woods v. Carey*, No. 2:04-cv-1225 MCE AC P, 2015 WL 7282749, at *4 (E.D. Cal. Nov. 18, 2015), *report and recommendation adopted*, 2016 WL 11440086 (E.D. Cal. Jan. 15, 2016), *aff'd*, 715 Fed. App'x 694 (9th Cir. 2018).  Indeed, the Court is "bound to enforce" agreements reached in its presence because such agreements are "not only between the parties, but also between them and the court."  *Winn v. Potter*, No. 07cv630-NLS, 2008 WL 11338406, at *2 (S.D. Cal. Oct. 22, 2007) (further noting that "[i]t is boilerplate law that oral agreements and stipulations made in the presence of the court are enforceable") (citing 7 A.L.R.3d 1394).  The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement.  *See Olam v. Congress Mortg. Co.*, 68 F. Supp. 2d 1110, 1137 n. 19, 1140 (N.D. Cal. 1999).

/ /

7

Under federal law, two requirements must be met for the Court to enforce a settlement agreement.  First, the agreement must be complete.  *Callie*, 829 F.2d at 890. Second, all parties must have directly agreed to be bound by the terms of the settlement or have authorized their respective representatives to settle the dispute.  *Harrop v. Western Airlines*, *Inc*., 550 F.2d 1143, 1144-45 (9th Cir. 1977).  In addition to these requirements, the Court applies California law in determining whether a legally enforceable settlement agreement was reached, even where the underlying cause of action arises under federal law.  *See Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th 1989); *United Commercial Ins. Serv. v. Paymaster Corp*., 962 F.2d 853, 857 (9th Cir. 1992).

Under California law, contract formation requires (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and, (4) sufficient cause or consideration.  *Lopez v. Charles Schwab & Co*., 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004) (citing Cal. Civ. Code § 1550).  Because the facts of this case do not bring into question the issues of capacity, lawfulness, or the sufficiency of consideration, this Court will focus on the parties' consent, or the element of mutual assent.  "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror."  *Lopez*, 118 Cal. App. 4th at 1230 (citing Cal. Civ. Code §§ 1550, 1565).  The existence of mutual consent is determined by objective criteria; the "parties' outward manifestations must show that the parties all agreed upon the same thing in the same sense."  *Weddington Prod*., *Inc*., *v. Flick*, 60 Cal. 4th 793, 811 (Cal. 1998).  Furthermore, California Code of Civil Procedure, section 664.6, provides that "[i]f parties to pending litigation stipulate … orally before the court, for settlement of the case … the court, upon motion, may enter judgment pursuant to the terms of the settlement."  Cal. Civ. Proc. Code §664.6.

## IV.   DISCUSSION

Plaintiff acknowledges that he "did agree in principal [sic] to settle this case" at the ENE conference.  Opp. at 2.  In opposition to defendants' Motion, he advances several arguments to support his position that he should not be held to the agreement.  For the

reasons discussed below, the Court finds none of plaintiff's arguments provide a basis to deny defendants' Motion.[8]

**A. <u>The Court Has Jurisdiction to Enforce the Settlement</u>**

Plaintiff asserts that the Court lacks jurisdiction to enforce the parties' oral settlement agreement, citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).  Opp. at 5-6.  Plaintiff's reliance on *Kokkonen* is misplaced.  *Kokkonen* stands for the proposition that since a federal court's jurisdiction terminates upon dismissal of an action, the court has no inherent jurisdiction to enforce a settlement *post-dismissal*.  As the Ninth Circuit has explained, "*When a district court dismisses an action with prejudice*, federal jurisdiction usually ends … [citation] [and] a dispute arising under a settlement agreement is 'a separate contract dispute that requires its own independent basis for jurisdiction.'"  *Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016) (citing and quoting *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995)) (emphasis added).  This action has not been dismissed, and therefore *Kokkonen* is not controlling.  As noted, the Court's jurisdiction to enforce settlement agreements between parties in *pending* cases is well-settled in this Circuit.  *See*, *e.g.*, *Doi*, 276 F. 3d at 1136; *In re City Equities Anaheim*, *Ltd.*, 22 F.3d at 957; *accord Wilcox v. Arpaio*, 753 F.3d 872 (9th Cir. 2014) (finding no error in district court's enforcement of settlement agreement reached during mediation); *Woods*, 2015 WL 7282749, at *5 (enforcing oral settlement agreement reached with assistance of Magistrate Judge).

---

[8]  The Court is aware that plaintiff objects to defendants' Motion having been referred to the undersigned due to what he perceives as the undersigned's "conflict of interest" and bias in favor of defendants.  Doc. No. 88 at 2.  Plaintiff's allegations appear to be based on "nothing more than the undersigned's ruling in this case," which are rarely a "valid basis for a bias or partiality motion." *Woods*, 2015 WL 7282749, at *2.  Plaintiff has not articulated any objective, non-speculative basis to question the undersigned's impartiality.  *Id.* (citations omitted).  Furthermore, as discussed more fully below and as recognized by the District Court, as the judge who presided over the ENE conference, it is appropriate for the undersigned to "act as the trier of fact [in] determining whether the parties entered into a valid and binding settlement agreement" and to "consult her memory" in doing so. *Terry v. Conlan*, 131 Cal. App. 4th 1445, 1454 (Cal. Ct. App. 2005); *see also* Doc. No. 86 at 6-7.

Further, plaintiff's *pro se* status does not alter the scope of the Court's jurisdiction or permit him to "chang[e] his mind about going through with [the] settlement." Opp. at 6-7. *See Henderson v. Yard House Glendale, LLC*, 456 Fed. App'x 701, 702 (9th Cir. 2011) (affirming enforcement of a settlement agreement with *pro se* litigant); *see also Phillips v. Pilgrim Creek Estates Homeowners Ass'n*, No. 19-CV-102-AJB(WVG), 2020 WL 995862, at *4 (S.D. Cal. Mar. 2, 2020) (finding oral settlement agreement enforceable against *pro se* litigant). Nor is it significant that "no written agreement was signed" at the ENE conference. Opp. at 6. *See Doi*, 276 F.3d at 1138 ("An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing.") (citation omitted); *see also Woods*, 2015 WL 7282749, at *5 ("…parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms.") (citations omitted). Thus, contrary to plaintiff's suggestion, this Court has jurisdiction and the authority to enforce an oral settlement agreement that plaintiff "entered into … on the record in open court, but later refused to execute." *Henderson*, 456 Fed. App'x at 702.[9]

## B. The Parties Entered into an Enforceable Settlement Agreement

### 1. The Written Agreement Is Consistent with This Court's Order Following the ENE

In support of his claim that he "did not agree" to the above-specified settlement terms, plaintiff argues that "extreme contradictions exist" between the agreement reached and the ENE Order, and defendants' written settlement agreement. The Court disagrees. As set forth above, ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[9] "It is well settled that an oral settlement recited to a judge in the course of a settlement conference supervised by that judge satisfies the 'before the court' requirement." *Murphy v. Padilla*, 42 Cal.App.4th 707, 712 (Cal. Ct. App. 1996)

1   ███████████████████████████████████████████████████████████

2   ████████████████████, this Court ordered plaintiff to file a motion "delineat[ing] how

3   plaintiff believes the settlement funds should be distributed based on applicable law and

4   in consideration of any restitution order entered against him in connection with his

5   conviction."  Doc. No. 72 (ENE Order) at 2.  The ENE Order also reflects ████████████

6   ███████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████ *Id.* (providing that

8   "[t]he settlement funds will be distributed by the Clerk of Court in accordance with the

9   Court's determination").

10          Plaintiff claims the written settlement agreement drafted by defendants "excludes"

11  the provision that allows him to brief the District Court regarding the recipient of the

12  settlement funds.  Opp. at 4-5.  ███████████████████████████████████████

13  ███:

14-21  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

22          The Court finds the foregoing provisions are entirely consistent with the agreement

23  reached between the parties at the ENE Conference, as referenced in the ENE Order, and

24  are not, as plaintiff claims, "diametrically opposed" to the settlement reached.  Doc. 81,

25  Opp. at 5.  Plaintiff apparently misunderstands the foregoing language to mean he is "*not*

26  entitle[d] to brief the Court on where the settlement damages would go …."  *Id.*

27  (emphasis added).  That is not the case.  ████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████   In sum, the written settlement agreement accurately reflects the discussion that

6 took place during the ENE Conference and the terms upon which the parties ultimately

7 agreed.

8          The court in *Woods*, *supra*, addressed the enforceability of an oral settlement

9 agreement on similar facts.  Therein, the parties participated a settlement conference with

10 a Magistrate Judge during which a settlement was reached.  *Woods*, 2015 WL 7282749 at

11 *1.  As in the present case, the defendant thereafter filed a motion to enforce the

12 settlement because plaintiff refused to sign the settlement agreement which memorialized

13 the agreed-upon terms of the oral settlement agreement.  *Id*.  The Magistrate Judge

14 thereafter held two further telephonic conferences at which the plaintiff articulated, *inter*

15 *alia*, that he no longer believed the terms of the agreement were in his best interests.  *Id*.

16 at *5.  The Court rejected plaintiff's arguments and found that he had entered into a

17 binding agreement and had done so knowingly and voluntarily.  As stated:

18                    The undersigned finds that the material terms of the settlement
19                    agreement, as placed on the record … were consented to by both
20                    parties with the intent that the oral agreement was binding and the
21                    written agreement was merely for the purpose of memorializing the
                     oral agreement.

22 *Id.* at *6.

23          Similarly, in *Richardson v. Richardson*, 180 Cal.App. 3d 91 (Cal. Ct. App. 1986),

24 a judge presided over a settlement conference without a court reporter.  *Id.* at 94.  A

25 settlement offer was communicated, and the opposing party was afforded 48 hours to

26 accept.  *Id*.  After the offer was timely accepted, the offering party endeavored to change

27 the terms of the offer.  *Id*.  The settlement judge held a hearing to address the settlement,

28 which was recorded, and thereafter granted the motion to enforce the oral settlement.  *Id*.

at 95.  The opposing party challenged the ruling, arguing, *inter alia,* there was insufficient evidence to show that he made an oral settlement offer or that an agreement to settle was reached.  *Id.* at 97.

Applying California law, the Court held that an agreement to settle a lawsuit which is reached at a judicially supervised settlement conference is enforceable if substantial evidence that a settlement was reached is found by the settlement judge, even if it was to be memorialized later by a formal writing.  *Id.*  "When parties orally agree upon all of the terms and conditions of an agreement with the mutual intention that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be prepared and signed does not alter the binding validity of the oral agreement."  *Id.* at 97 (citations omitted).

As applied herein, the parties reached a binding oral agreement with respect to all material terms at the ENE Conference, as accurately documented in the settlement agreement provided to the defendant.  *See* Moses Dec., ¶5; *see also* ENE Order.  The parties confirmed at that time that they were entering into the settlement agreement knowingly and voluntarily.  The fact that the agreement reached was to be later reduced to writing does not change the enforceability of the agreement reached.  The settlement agreement is therefore binding and enforceable.

### 2. An Evidentiary Hearing Is Unnecessary

Where the material terms of the settlement agreement are stated on the record and the parties confirm their understanding and acceptance of those terms, it is not necessary for the Court to conduct an evidentiary hearing regarding the existence of an agreement. *See Doi*, 276 F.3d at 1139-40; *see also Phillips*, 2020 WL 995862, at *8 ("When both the terms of the settlement and the parties' mutual assent thereto is clear, an evidentiary hearing is not required.").  Instead, a party's statement that he agrees to the terms recited and understands them to be correct is "the beginning and the end of the inquiry."  *VACC, Inc. v. Davis*, No. 18-cv-03454-JCS, 2019 WL 1460201, at *5 (N.D. Cal. Apr. 2, 2019). "The recollection of the judge conducting the settlement conference can also support a

finding of an enforceable agreement without an evidentiary hearing." *Woods* 2015 WL 7282749, at *2.  As one California court explained, the Court in this instance "acts as a trier of fact" to "determine whether the parties entered into a valid and binding settlement," and if the same judge making this determination presided over the settlement conference "he may avail himself of the benefit of his own recollection." *Kohn v. Jaymar-Ruby*, *Inc.*, 23 Cal. App. 4th 1530, 1533 (Cal. Ct. App. 1994).

As set forth above, and consistent with the undersigned's recollection, the material terms of the settlement agreement and the parties' mutual assent to those terms were confirmed before the Court at the conclusion of the ENE conference.  Accordingly, the undersigned finds that an evidentiary hearing is unnecessary.

**C. Plaintiff's Further Objections to the Settlement Agreement Are Without Merit**

In his Opposition, plaintiff asserts the parties' settlement agreement is unenforceable for several additional reasons.  Plaintiff's remaining arguments stem from his insistence that he should be able to direct the District Court to distribute the settlement funds consistent with his interpretation of the law and the restitution order. Specifically, he claims that the PLRA does not apply to this case, and that as such, he is entitled to require that the settlement proceeds be paid directly to him.  Opp. at 9. Plaintiff claims he did not understand that he had this purported authority until after the ENE conference.  Opp. at 3.  Plaintiff also argues that the restitution order entered by the Colorado District Court is unconstitutional.  Opp. at 9-13.   The undersigned considers these arguments in the context of whether they render the settlement unenforceable and finds they do not, for the reasons discussed below.

### *1.  The Settlement Agreement Cannot Be Rescinded Due to Plaintiff's Alleged "Misconception"*

While acknowledging he agreed at the ENE Conference to settle his claims, plaintiff asserts that he was operating at the time "under a misconception that the [PLRA] applied to this case." Opp. at 2.  Because of this alleged "misconception," plaintiff states he agreed to settle with the caveat that the settlement proceeds be given to charity,

because he would "'rather die'" than have any settlement proceeds distributed pursuant to his "illegal restitution order."  *Id.* at 2-3.  According to plaintiff, "only after the ENE conference did [he] come to understand" that the PLRA does not apply to this case, and that as such he could direct payment of the settlement proceeds as he saw fit – namely, to himself.  *Id.*  As plaintiff explains it, he "realized [after the ENE conference] there would be no logic in agreeing to a settlement he would not possibly benefit from ...."[10] *Id.*

Plaintiff also addressed his supposed "misconceptions" during the May 21, 2020 Status Conference.  When pressed by the Court about why he had not signed the settlement agreement, plaintiff responded:

> MR. BROOKS: Yeah. Okay. So, first off, Your Honor, my agreement was premised upon if I did brief Judge Curiel and the money wasn't going to go to me, it would go to charity.  That was my -- the main thing. So, after I agreed, that's – that's what I made clear. Under no circumstance, if the money is not going to me, I want it going -- I wanted it going to charity.
>
> But then, ***after we ended that conversation that day, I thought, "Well, wait a minute. If the diversion of the damages can be given to charity, then they don't -- then they could go to me."***
>
> ***So, it was basically like there's no way that I could say, "Oh, contingent upon if the determination is made that it doesn't go to me, it goes to charity," because then I am still determining where the money would go***.
>
> That was the first premise --
>
> THE COURT: Okay.
>
> MR. BROOKS: -- of the settlement.

---

[10] Federal Rule of Civil Procedure 11 provides that by making representations to the Court in pleadings, motions, or other documents, the litigant certifies that the facts therein (or denials of facts) are warranted on the evidence or reasonably based on belief or lack of information.  Fed. R. Civ. P. 11(b).  Plaintiff is reminded that this obligation applies equally to both attorneys and unrepresented parties. *Id.*; *see also* Civ. L.R. 83.1 (addressing consequences of a party's failure to comply with the Federal Rules of Civil Procedure).

> The second was my incorrect belief that the Prison Litigation Reform Act still applied to me, because I am a prisoner, which meant I believed that it still may have applied to this proceeding, but it doesn't. So there is no private settlement mandate of "any diversion of damage awards go to payment of my restitution." There's not a single case that I have found that says that.
>
> And it basically erodes the whole basis of private settlement because now I am going to brief this with Judge Curiel; that ruling is going to be made.... ***The main concern is there is no – there's no reason for me to settle the case if I am not going to get a benefit of the settlement.***

Doc. 5/21/20 Tr. at 3-4 (sealed) (emphasis added).

There was no "misconception" as plaintiff asserts. Rather, as he acknowledged during the Status Conference, he changed his mind. The Court and the parties engaged in lengthy discussions during the ENE conference regarding the distribution of the settlement proceeds. The undersigned informed plaintiff that he could not dictate how the settlement proceeds were to be distributed, and that the matter would instead be decided by the District Court after full briefing. *See* 5/21/20 Tr. at 7 (sealed). It was an unambiguous term of the settlement that the District Court – not plaintiff (or defendants for that matter) – would determine the proper payee of the settlement funds. ██████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████  As this Court confirmed during the Status Conference:

> THE COURT: [U]nderstand that we can't dictate how Judge Curiel may rule on any briefing that you submit regarding who the money should go to.
>
> So the settlement has to be final. The only determination that would be left up in the air would be where the moneys go as based on a determination by Judge Curiel. That's what you agreed to.
>
> MR. BROOKS: Yeah. Yeah. Yeah. I agree --

*See id.* at 10.

1    Regardless of plaintiff's assertions about his "misconceptions" or mistakes, under

2    California law, a party may rescind a contract even when that party's consent to the

3    contract was given by mistake.  Cal. Civ. Code § 1689(b)(1); *see also Grenall v. United*

4    *of Omaha Life Ins. Co.*, 165 Cal. App. 4th 188, 193 (Cal. Ct. App. 2008).  However, "the

5    kind of mistake which renders a contract voidable does not include 'mistakes as to

6    matters which the contracting parties had in mind as possibilities and as to the existence

7    of which they took the risk."  *Stermer v. Bd. of Dental Exam'rs*, 95 Cal. App. 4th 128,

8    134 (Cal. Ct. App. 2002) (citation omitted); *see also Amin v. Sup. Ct.*, 237 Cal. App. 4th

9    1392, 1403 (Cal. Ct. App. 2015) (noting that "rescission is warranted only when 'the

10   subject of uncertainty has not been a concern of the parties'") (citation omitted).

11   ██████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ██████████████████████.  *Stermer*, 95 Cal. App. 4th at 134.  As one California appellate

14   court explained, "[e]very time parties enter a contract, they act with incomplete

15   information" and "make judgments about the desirability of acquiring (and waiting for)

16   additional information, and of creating specific contractual provisions to handle particular

17   eventualities."  *Amin*, 237 Cal. App. 4th at 1403 (citation omitted).  That is exactly what

18   happened here.  Under California law, the settlement agreement is not voidable.  *Stermer*,

19   95 Cal. App. 4th at 134 (parties' "knowledge of the existence of doubtful matter" at the

20   time of contracting does not "render[] a contract voidable").

21   For the same reason, the parties' settlement agreement is not voidable due to

22   plaintiff's alleged "misconception" at the time of the ENE Conference that any proceeds

23   from the settlement of his case would be subject to the PLRA.  Doc. 81; Opp. at 2; *see*

24   *also* 5/21/20 Tr. at 10 (sealed) (plaintiff stating that when he agreed to the settlement he

25   "was under the presumption that the PLRA still applied to the case").  Plaintiff, citing his

26   inability to conduct legal research, states he "realized" after the ENE conference that this

27   presumption was incorrect and that no "reasonable person [would] agree to settle a

28   / /

winning case for nothing, without knowing the relevant law."[11]  Doc. 81, Opp. at 2, 3.
Even assuming, as plaintiff states, that he was "unprepared" on the issue of whether
defendants should "pay[] out any agreed-to settlement to plaintiff directly" at the ENE
Conference (Opp. at 2), that does not justify his reneging on the agreement because
plaintiff was at a minimum "aware when he made the contract that his knowledge" of the
very issue he now claims to have been mistaken about was "limited." *Amin*, 237 Cal.
App. 4th at 1403 (*quoting* Restatement (Second) of Contracts, § 154).  Plaintiff entered
into the agreement "in the face of that awareness," so he "bears the risk" of his mistake
and the contract will not be voided.  *Id.*; *see also Spitzer v. Aljoe*, No. 13-cv-05442-MEJ,
2016 WL 3279167, at *11 (N.D. Cal. June 15, 2016), *aff'd*, 734 Fed. App'x 457 (9th Cir.
2018) (enforcing settlement agreement where party "treated [its] knowledge as sufficient"
when it agreed to settlement terms).

In short, plaintiff appears to have "chang[ed] his mind about going through with
the settlement."  Opp. at 6.  But, "[o]nce a party enters into a binding settlement
agreement" – as plaintiff did here – "that party cannot unilaterally decide to back out of
the agreement." *Bland v. Badger*, No.  1:19-cv-00702-DAD-EPG (PC), 2020 WL
508874, at *3 (E.D. Cal. Jan. 31, 2020) (*citing Doi*, 276 F.3d at 1131).  Plaintiff's alleged
"misconceptions" do not provide a basis for the Court to depart from the rule that "if a
party enters into a settlement agreement knowingly and voluntarily, the agreement is
treated as a binding contract…."  *Arnold v. United States*, 816 F.2d 1306, 1309 (9th Cir.
1987) (citation omitted).

/ /

---

[11] Plaintiff asserts that during the Status Conference he expressed "concerns" about his ability to
research the law with respect to the distribution of the settlement proceeds so that he would "know[]
exactly what he was agreeing to."  Opp. at 7.  Plaintiff's concern at the Status Conference, however,
primarily related to his inability to research and brief the motion to the District Court given his limited
access to the prison law library during the pandemic.  *See* 5/21/20 Tr. at 12-14 (sealed). The undersigned
offered plaintiff additional time to complete his briefing, but he declined.  *Id.*

3:18-cv-02290-GPC-KSC

### 2. The Settlement Is Enforceable Regardless of the Applicability of the PLRA or the Constitutionality of Plaintiff's Criminal Restitution Order

In his Opposition to the Motion, plaintiff addresses the issue of how the settlement proceeds should be distributed, asserting that the settlement should not be enforced because his case is not subject to the PLRA and that in any event the criminal restitution order to which the settlement proceeds may be subject is unconstitutional.[12]  Opp. at 7-13.  According to plaintiff, these facts warrant the Court directing payment of the settlement proceeds directly to him, "as he has requested."  *Id.* at 7.

This Court need not address plaintiff's arguments concerning the applicability of the PLRA or "whether he has made a *prima facie* showing that his current restitution obligation is invalid …" in the context of the instant Motion.  *Id.* at 8-9.   Instead, the issue is subject to determination by Judge Curiel upon the filing of a motion by plaintiff in which plaintiff can articulate his arguments regarding the lawful distribution of the settlement funds.  ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████.

In a similar case, after reaching an agreement during a court-facilitated settlement conference, an incarcerated litigant refused to sign the written settlement agreement unless a provision was made to allow the funds "to be delivered directly to a third party without any amount being applied" to the inmate's restitution obligations pursuant to Section 2085.5 of the California Penal Code.  *See Davenport v. Korik*, No. 2:14-cv-00325-TLN-DB (PC), 2016 WL 6039027, at *5 (E.D. Cal. Oct. 14, 2016).  The inmate argued both that the statute was "ambiguous" and that he "disagree[d]" with it.  *Id.*  The court in *Davenport* found, however, that "the agreement set forth on the record clearly informed [the inmate] that any restitution … would be deducted from the settlement

---

[12] Defendants take no position on plaintiff's arguments.  *See* Doc. No. 82 at 5.

3:18-cv-02290-GPC-KSC

amount and [he] would only receive money in his inmate account if any of the settlement remained …." *Id.* The court accordingly found that the inmate "knowingly and voluntarily entered into the settlement agreement" and that the settlement was enforceable. *Id.* at *6.

Here, plaintiff reasons that without knowing how the District Court will rule, he is unable to ascertain whether he will benefit from the settlement and therefore there is "no logic" in agreeing to the settlement. Opp. at 3. As in *Davenport*, however, plaintiff "knowingly and voluntarily" entered into the settlement which left the question of how the settlement proceeds would be distributed for future resolution by the District Court. *Davenport*, 2016 WL 6039027, at *6. This Court will not indulge plaintiff in his attempt to do an end-run around the parties' explicit settlement agreement.

## V. CONCLUSION

Based on the parties' moving and opposing papers, the undersigned's involvement in and knowledge of the settlement reached the April 22, 2020 Early Neutral Evaluation Conference, discussions at the May 21, 2020 Status Conference, and review of its files and transcript of the Status Conference, this Court finds that plaintiff and defendants formed a legally binding settlement agreement at the ENE Conference, that plaintiff understood and accepted the terms thereof, and that he knowingly and voluntarily entered into the agreement. As ordered by the Court, the Tarsadia Defendants' counsel prepared a written agreement and release which accurately reflects the terms of the settlement agreement reached during the ENE Conference. Plaintiff has not provided any legitimate basis to justify his refusal to sign the written settlement agreement. Accordingly, and for the reasons set forth above the Court **RECOMMENDS** that defendants' Motion to Enforce Settlement Agreement [Doc. No. 77] be **GRANTED**.

**IT IS HEREBY ORDERED** that no later than thirty (30) days from the date of this Order, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation of Magistrate Judge."

**IT IS HEREBY FURTHER ORDERED** that if any such objections are filed, any reply to those objections shall be filed with the Court and served on all parties no later than ten (10) days after the date the objections are served.

The parties are advised that failure to file objections within the specified time may result in waiver of the right to raise those objections on appeal of the Court's order.  *See Loher v. Thomas*, 825 F.3d 1003, 1121 (9th Cir. 2016).

**IT IS SO ORDERED.**

Dated:  October 1, 2020

Hon. Karen S. Crawford
United States Magistrate Judge